Frank J. Marcone, Esquire                                  Law Office
2530 N. Providence Road                                    484 442 8305
Upper Providence, Pennsylvania 19063                       Fax 484 442 8306
attorney ID # 8967                                         frankmarcone@comcast.net

## IN THE UNITED STATES FEDERAL DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PHILADELPHIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| Plaintiff | : | No. 07-3823 |
| | : | |
| vs. | : | |
| | : | |
| DAVID HERSKOWITZ | : | |
| Defendant | : | |
| | : | |
| and | : | |
| | : | |
| PHILLIP BANKS | : | |
| Defendant | : | |
| Plaintiff/Counterclaim | : | JURY TRIAL |
| | : | |

MOTION FOR RULE 11 SANCTIONS
AGAINST THE DAVID HERSKOWITZ AND
STEPHEN SCHUTTER
and
JAY HERSKOWITZ, ESQUIRE and
KELLE A. KILLAGARIFF, ESQUIRE
and
MOTION TO DISQUALIFY JAY HERSKOWITZ, KELLE A. KILLAGARIFF, ESQUIRE
CHARLES CURLEY, ESQUIRE AND JAMES LOOTS, ESQUIRE FROM FURTHER
PARTICIPATION IN THIS CASE
and
MOTION TO REFER THE ACTIONS OF JAY HERSKOWITZ, ESQUIRE, KELLE A.
KILLAGARIFF, ESQUIRE, AND JAMES LOOTS TO THE PENNSYLVANIA
DISCIPLINARY BOARD AND THE DISCIPLINARY COMMITTEE OF THE UNITED
STATES FEDERAL DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
AND FURTHER TO REFER THE ACTIONS OF JAY HERSKOWITZ, ESQUIRE
TO THE DISCIPLINARY BOARD OF THE NEW JERSEY SUPREME COURT AND ALL

1

OTHER COURTS TO WHICH HE CLAIMS ADMISSION

Philip Banks, by his attorney, Frank J. Marcone, Esquire, files this Motion seeking Rule 11 Sanctions from David Herskowitz and Stephen Schutter, Jay Herskowitz, Esquire and Kelle A. Killagariff, Esquire and in support of the Motion avers the following:

1. As will be illustrated in the attached Memorandum of Law in Support of this multiple Motion, David Herskowitz and Stephen Schutter by their attorneys Jay Herskowitz, Esquire and Kelle A. Killagariff, Esquire have filed Pleadings which have falsely informed This Court that Frank J. Marcone, Esquire was under a disbarment order during the time he represented the Defendant, Philip Banks and therefore is unable to claim attorneys fees for the services he provided Philip Banks.

2. Further, Jay Herskowitz, Esquire, as asserted that Frank J. Marcone, Esquire, improperly and in violation of the various Rules of Civil Procedure as well as Rules of Professional Conduct, pre planned the actions of Stephen Schutter and his attorneys by causing them to file the case in the District of Columbia and thereafter by causing the case to be transferred to Philadelphia.

3 Both accusations were and remain improper and without basis.

4. Jay Herskowitz Esquire, also misinformed the Court by a false claim that there are no contract provisions providing for attorney's fees as is illustrated by the Agreement of Sale signed in December of 2005.

4. All the accusations are false and constitute false information contained in a legal pleading which all parties to the accusations knew or should have known were false and filed with a malicious purpose.  When filed. The pleadings contained intentionally false and impertinent as well as  maliciously infamous material which have been designed to disrupt the discovery and preparation for trial in the above captioned case and which have disrupted the orderly presentation of information to the Court.

5. The penalty for such a filing in law and in equity requires that the Court examine the averments of the complaining party, fully evaluate the purpose and actions to which the

2

complaint is being addressed and when found to be in violation of the Rules of This Court, to thereupon institute sanctions which are both compensatory as well as punitive.

6. Philip Banks avers the scandalous, malicious and impertinent contents of the Motions to which this Complaint is filed requires sanctions in excess of fifty thousand ($50,000) and he asserts he will illustrate the basis for such a claim in the following Memorandum of Law.

7. The actions complained of constitute violations of the Rules of Professional Conduct which have been adopted by This Court, by the Pennsylvania Supreme Court as well as the New Jersey Supreme Court.

8 The actions complained of were intentionally filed and certified by counsel and the law mandates that if the actions complained of did in fact result in an intentional and false fact provided to the Court with intent and knowledge, disbarment or at least suspension from the practice of law must be imposed as a disciplinary sanction against all lawyers, including those who by virtue of their administrative positions in the case, permitted the violations.

WHEREFORE, Philip Banks respectfully prays the Court enter an Order of Sanctions against all counsel charged, and if the evidence warrants a submission to the various disciplinary agencies who oversee the professional conduct of lawyers admitted to their Bar, that such a referral be acted upon by This Court.  Further, the Court is compelled to enter a financial Order imposing monetary sanctions which should exceed his demanded fifty thousand ($50,000.00) in penalties, both compensatory as well as punitive in nature.

Respectfully submitted,

_____
Frank J. Marcone, Esquire
Attorney for the Movant, Philip Banks

May 31, 2008

Frank J. Marcone, Esquire

2530 N. Providence Road

Upper Providence, Pennsylvania 19063

attorney ID # 8967

Law Office

484 442 8305

Fax 484 442 8306

frankmarcone@comcast.net

## IN THE UNITED STATES FEDERAL DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PHILADELPHIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| Plaintiff | : | No. 07-3823 |
| | : | |
| vs. | : | |
| | : | |
| DAVID HERSKOWITZ | : | |
| Defendant | : | |
| | : | |
| and | : | |
| | : | |
| PHILLIP BANKS | : | |
| Defendant | : | |
| Plaintiff/Counterclaim | : | JURY TRIAL |
| | : | |

MEMORANDUM OF LAW IN SUPPORT OF PHILIP BANKS'
MOTION FOR RULE 11 SANCTIONS
AGAINST THE DAVID HERSKOWITZ AND
STEPHEN SCHUTTER
and
MOTION TO DISQUALIFY JAY HERSKOWITZ, KELLE A. KILLAGARIFF, ESQUIRE
CHARLES CURLEY, ESQUIRE AND JAMES LOOTS, ESQUIRE FROM FURTHER
PARTICIPATION IN THIS CASE
and
MOTION TO REFER THE ACTIONS OF JAY HERSKOWITZ, ESQUIRE, KELLE A.
KILLAGARIFF, ESQUIRE, AND JAMES LOOTS TO THE PENNSYLVANIA
DISCIPLINARY BOARD AND THE DISCIPLINARY COMMITTEE OF THE UNITED
STATES FEDERAL DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
AND FURTHER TO REFER THE ACTIONS OF JAY HERSKOWITZ, ESQUIRE
TO THE DISCIPLINARY BOARD OF THE NEW JERSEY SUPREME COURT AND ALL
OTHER COURTS TO WHICH HE CLAIMS ADMISSION

**FACTS:**

This case involves a simple breach of an implied contract to pay for services provided to David Herskowitz, hereinafter referred to as "seller" and Stephen Schutter, hereinafter referred to as "buyer"

Philip Banks is a licensed Real Estate Broker in the Commonwealth of Pennsylvania.

In November of 2005 and thereabouts, Banks was contacted by Stephen Schutter who is and remains a resident of the District of Columbia. Schutter provided Banks with written authority to prepare an Agreement of Sale between he and Herskowitz for the purchase of a youth hostel located on Banks Street, in Philadelphia by Schutter from Herskowitz for the sum of one million and six hundred thousand dollars. ($1,600.000.00). Schutter put $100,000 in escrow with Banks and directed him to procure adequate financing to complete the transaction.

The Agreement of Sale required Schutter to complete his examination of the property and thereby assert he completed his "due diligence" before signing the Agreement of Sale.

Schutter admittedly failed to adhere to the terms of the Agreement and did not examine the building nor did he determine if the property was approved by the City of Philadelphia for 70 beds but instead executed the Agreement signifying he had complied and the building and the permits were to his approval.

Schutter claims Herskowitz had advertised the property asserting it was approved for 70 beds when in fact it was only approved for 54 beds. Herskowitz denies this while Schutter claims he has a copy of an advertisement which verifies Schutter's claims.

In January, 2006, after Banks had successfully procured three committments to financing, Schutter e-mailed Banks explaining his family had spoken to him and dissuaded him from completing the purchase. He evidenced his fear he had overreached in his offer to purchase.

Schutter had found a possible alternative purchaser named Ian from California. He introduced Ian to Banks in an effort to have Banks induce Ian to stand in for Schutter. Ian never "materialized" and Schutter asked Banks to prepare and have Herskowitz sign a release, letting Schutter out of the deal. Banks hired counsel who assisted him in preparing a release which was sent by Banks to Herskowitz. Herskowitz signed it and returned it to Banks who sent it to

5

Schutter who never returned a signed copy to Banks nor Herskowitz.

Soon thereafter, Schutter engaged Henry Gallagher, Esquire, who contacted both Banks as well as his attorney, Frank J. Marcone, Esquire, whose practice of law is limited to Federal Courts.

The Agreement of Sale provided that if a dispute arose over the escrow money, Pennsylvania Law required the Broker retain the funds until he received a final order of a court or a signed agreement between the litigants.

Mr. Gallagher informed Banks that as counsel for Schutter he considered the Agreement in breach by Herskowitz and he informed Banks to retain the escrow funds and not to release them.

By the terms of the Agreement,  if the broker was made a part of any of the litigation involving the disposition of the escrow funds, the litigant (in this case Schutter) who brought the broker into the litigation must compensate him for his attorney's fees.  There is also a clause which provides in part for indemnification by the seller. ( Herskowitz)

Banks tried to settle this by offering to accept $12,000 for his services and return the balance to Schutter.  He even drew a cashier's check for the balance of the account but after he received the letter from Gallagher, he was forced to abide by Pennsylvania law and retain the fund.

Banks tried to resolve the issues but was rejected with a claim made by Gallagher and thereafter by Loots, that the broker was due nothing.  Gallagher closed discussions with the statement suit would soon begin in Philadelphia by his client.

Then after suit was started by Schutter in the District of Columbia, which was clearly done in an effort to intimidate both Herskowitz and Banks into capitulating rather than travel to the District of Columbia to defend the claims.  Both Herskowitz as well as Banks sought and won the right to have the issues tried in the United States Federal District Court for the Eastern District of Pennsylvania.

Pursuant to that litigation David Herskowitz filed multiple pleadings in which he made statements which were blatantly false and constituted false and defamatory claims against Frank J. Marcone, Esquire, as well as repeated false and maliciously blatant misrepresentations of both the facts of this case as well as accusations without basis.

Those pleadings were filed on March 17th, 2008 and falsely informed the Court that Marcone had been disbarred and had falsely claimed he was entitled to attorney's fees.  Those Motions, joined in by Mr. Kilgarriff in behalf of all her associates have resulted in intentional false information provided to the Court in direct and blatant violations of the Rules of Professional Conduct; the Rules of Civil Procedure applicable to this case and must result in the disqualification of all the attorneys, including the senior members of the group.

Further, Banks, through Marcone seeks Rule 11 sanctions for intentionally delaying this proceeding and by refusing to offer any possible settlement with an apparent expectation that they could defend the claim by Banks for attorney's fees through the lie they have attempted to disseminate that Marcone is disbarred.

In part, the Pleadings which was the most blatant and which constitutes the maximum violation claimed by Banks, were filed on March 17, 2008 and was among the 36 separate docket entries made part of this record in March, 2008.  An examination of the two pleadings entitled Motion in Limine purport that Marcone was acting improperly and in violation of the criminal statutes. (Hence false accused Marcone of a series of criminal acts of practicing law without a license.)

The two pleadings also assert that the proof of the disbarment depended upon by the attorneys for Herskowitz and Schutter was an Opinion which is attached to the Motion filed by Herskowitz.   That Opinion is signed by Judges Joyner and Kauffman as well as Chief Judge Bartle.  The Opinion clearly and unequivocally states that Marcone has been and remained in good standing as a member of the Bar of the United States District Court for the Eastern District of Pennsylvania and further that any issue related to his ability to practice from an office in the Commonwealth of Pennsylvania had been resolved in his favor.

The most incredible element is that there was no reference to a suspension from practice during this case and the word "disbarred" never appeared in the Opinion.

2

Marcone avers this misinformation actually may have resulted in his effort to recuse Judge Brody's Office as a result of disclosures made to the judge's clerk.

Following the recitation of the law as it applies to this terrible scenario, Banks and Marcone seriously demand that opposing counsel be removed and disqualified from further participation in this case.  To deny such a request will effectively "gut" the applicable law and force Marcone to deal with attorneys who have thus far devastated him and demeaned him at the very roots of his professional reputation.   There is no excuse of what has occurred and Marcone insists the attorneys be removed as well as sanctioned and reported to the proper disciplinary administrators for their actions.

To make light of this is to not only provide the ultimate disrespect for Marcone but also for any attorneys who practice law with an intention of seriously representing their clients' interests.  There is no possible excuse for what has occurred and no apologias nor excuses will modify what has occurred.

Importantly, Marcone has had a discussion with Herskowitz who has asserted he does not understand the difference between suspensions and disbarment however most important Herskowitz has also admitted the assertion of disbarment was false.  Nonetheless, both pleadings containing the false information remain as a part of this docket and have not been removed.

Therefore, the assertion related to disbarment remains in the record and requires disqualification.

There were three Pleadings filed the same day and both stated that Frank J. Marcone, Esquire was "disbarred" and therefore incapable of billing Banks for attorney's fees.  Further, Jay Herskowitz, Esquire, accused Frank J. Marcone, Esquire, of preplaining the logistics of the law suit utilizing deceptive practices which would be in violation of the Rules of the United States District Court for the Eastern District of Pennsylvania. Kelle A. Killagariff, Esquire also made the same accusation of disbarment on March 17, 2008.

Ms. Killagariff's associates who oversee her activities in this case are by law, responsible for the violation made by her.

3

Further, the actions of intentionally lying to the Court and intentionally falsely demeaning counsel require that all counsel be prohibited from further participation in this case.

**APPLICABLE LAW:**

There are various violations of the law as well as the Rules of Professional Conduct adopted by This Court as well as the Supreme Courts of both New Jersey as well as Pennsylvania.  The Movant in an effort to be as brief as possible will attempt to address them briefly..

**I VIOLATION OF THE RULES OF PROFESSIONAL CONDUCT:**

*Pennsylvania Rules of Professional Conduct, Rule 4.1* provides in relevant part that the attorney who is guided by those Rules is required to be "truthful in statements to others.  *U.S. v. Whittaker, 201 F.R.D. 363 E.D. Pa. 2001.*

"In the course of representing a client, a lawyer shall not knowingly (a) make a statement of material fact or law to a third person."

Since the Federal District Court for the Eastern District of Pennsylvania has adopted the model disciplinary rules recommended by the American bar Association, which have also been adopted by Pennsylvania, the standards set by each court remains the same.  Since the attorneys in this case are bound by the Pennsylvania Rules of Professional Conduct, and since the Federal Courts have inherent authority to supervise the conduct of attorneys appearing before them, the Federal Courts have the authority to examine a complaint of a violation of the Rules of Professional Conduct and to determine first if a violation has occurred and secondly, what if any discipline must be imposed for the violation.

Here, Marcone is alleging he has been the subject of an abject and perhaps the most egregious violation of the Rules of Professional Conduct imposed upon attorneys.   He avers all the attorneys in this case have falsely reported to the Court that he is and has been "disbarred" and therefore is unable to practice before This Court.

Aside from the averment being blatantly false, it is so clear from the record that all the

4

attorneys who participated in this violation were not only aware what they were averring to the court was false, but in fact, their own "evidence" spoke to the contrary from their conclusion.

There is no excuse when the Opinion attached to their pleading states exactly the contrary, and the attorneys are bound by their own evidence which clearly establishes they were lying to the court and to anyone following the electronic filings open to the public.

As a part of this case we actually found another violation which goes to Mr. Banks personally.   We know Schutter at least and perhaps even Herskowitz complained to the Pennsylvania Real Estate Commission.  That complaint averred Banks had violated the law by failing to return the entire portion of the escrow fund.  In the Agreement of Sale, the terms of the Agreement as found in paragraph 23 (B) found at the top of page 4, the terms state:

> "In the event of a dispute over the entitlement to deposit monies, a broker holding
> the deposit is required by the rules and regulations of State Real Estate
> Commission (49 Pa Code § 35.327 ) to retain the monies in escrow until the
> dispute is resolved.  In the even of litigation for the return of the deposit monies, ,
> a broker will distribute the monies as directed by a final order of the court or the
> written agreement of the parties.  Buyer and Seller agree that in the event any
> broker or affiliated licensee is joined in litigation for the return of the deposit
> monies, the attorneys; fees and costs of the broker (s) and licensee (s) will be paid
> by the party joining them."

I. RULE 11 SANCTIONS:

Usually Rule 11 sanctions are imposed when a party files a pleading or motion where the contents of the pleading or motion are patently unmeritorious or frivolous.

It is well settled that a court should impose sanctions under *Rule 11* "only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988) ; see also *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir.1986) ("Rule 11 therefore is

intended to discourage pleadings that are frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith").

The mere fact that a litigant disagrees with the arguments raised by his opponent does not, of course, serve as the basis for the imposition of sanctions. Instead, sanctions are imposed only in those rare instances where the evident frivolousness of a claim or motion amounts to an "abuse[ ] of the legal system."*Doering,* 857 F.2d at 194.

The frivolousness of an argument is not judged retroactively after that argument has not prevailed, but rather, by the state of the law at the time the argument was advanced.

A contrary rule would effectively subject every losing party to penalties simply for having not prevailed, which would undermine "[t]he traditional American rule ... that each party to litigation bears its own costs ..." *Doering,* 857 F.2d at 193.

In this case however sanctions are required since both accusations asserting disbarment were designed to maliciously defame counsel and that defamation is evidenced by the attachments to the malicious pleadings and are evidenced as follows;

    1.  In the "Motion in Limine" Jay Herskowitz, Esquire, who purports to be admitted in three separate jurisdictions claimed he had researched Frank J. Marcone, Esquire and concluded Marcone was "disbarred" during the time he worked on the Banks file and therefore would be unable to make a claim for attorney's fees.

    2. In support for this absurd, malicious claim Jay Herskowitz, Esquire, attached an Opinion penned by Chief Judge Harvey Bartle, III; J. Curtis Joyner and Bruce W. Kauffman, dated July 26, 2005 and made a part of the record in This Court in Misc No. 95-71.

    3. An examination of that Opinion noted the following:

        a.) "while ...he has been suspended by this court ...he was readmitted to

6

our bar on July 17, 2001.  He has approximately a dozen cases pending before various judges of our court at the present time. (Page 2)

b.) Chief Judge Giles quite rightly noted that while this court in the interest of comity and federalism should consider the disciplinary decisions of the Pennsylvania Supreme Court, it is not bound to follow them."(page 3)

c.) This court,...restored him to membership in our bar in July 2001... Based on the record before us, there is nothing that Frank Marcone has done or left undone since July, 2001 that warrants his suspension from the practice of law before this court.  Consequently, in our view, there is no basis to deny a Certificate of Good Standing at this time."  (Page 6).

d.)  "RECOMMENDATION" The undersigned recommends that this court issue to Frank J. Marcone, Esquire a certificate of Good Standing." (Page 7)

4.  To state that the document attached by Jay Herskowitz, Esquire, which he believes supports his conclusion that Frank J. Marcone, Esquire was "disbarred" during any period in which this case proceeded, is not only ludicrous but exhibits either a completely idiotic understanding of the "kings English" as well as giving evidence of the malicious effort on the part of Jay Herskowitz, Esquire, to perjure himself in his own  pleading and to "twist" the truth to satisfy his own purposes.

There is absolutely nothing in that Opinion which could be the basis for the accusation of Frank J. Marcone, Esquire being disbarred .  The term disbarment carries with it the ultimate "sting" to an attorney and is vastly different from a suspension.

In this case, the filing of the Motion and the failure to remove it or modify it has left the Court in the position where the issue must be examined.  Marcone prepared and filed a response and now has been required to prepare and file this Motion seeking relief by disqualification as well as monetary sanctions.

This Court has awarded "damages" for Mr. Herskowitz's avered costs involved in

7

seeking and procuring more definitive answers to the Interrogatories he filed.  Rule 11 sanctions however should not be awarded simply to compensate for a motion seeking more definitive answers.  The issue should be did counsel comply and respond to the answers with responses that met the interrogatory.   Everyone could request more but damages nor costs are never awarded when responding counsel has responded and the responses were essentially in compliance.  Another Motion to reconsider will address this issue.

Nonetheless, Marcone is seeking monetary damages under the provisions of Rule 11 since the Motion he is filing addresses a purposeful, malicious, unprovoked false report to the Court.  He believes an award must include both compensatory as well as punitive damages and he seeks a monetary award of $50,000 to be assessed against all counsel as the Court decides.

Further, Marcone sought the advice of Seth Rosner, Esquire, of Saratoga, New York who is an ethics expert and who presently dedicates his practice to providing ethics advice.  He has occupied the ethics chair on the Board of Governors of the American Bar Association and upon a discussion with Mr. Rosner, he noted that this activity on the part of opposing counsel must be reported to the disciplinary boards of all the Bar Associations with whom the offending attorneys are members.   Mr. Rosner also noted that the offending violation was in fact directed to This Court since the Motion containing the false information was filed in a court pleading.  Under those circumstances, Mr. Rosner noted that the Court rather than Mr. Marcone should bring the offenses to the attention of each Bar Association.  While Mr. Marcone has an obligation to bring any offense to the attention of his Bar Association, the violation was in fact directed toward the Court and while he may be a victim of the effort, the Rule of Professional Conduct violated is that false evidence was intentionally filed with the Court.

Therefore, it is respectfully suggested that the Court is obligated to report the incident to the Bar to whom each of the attorneys is admitted for investigation and imposition of discipline.

In 1997, the Pennsylvania Supreme Court in the case of _Matter of Renfroe_, 548 Pa. 101, 695 A.2d. 401 Pa.  1997, addressed "disbarment" as an "extreme sanction which must be imposed only in the most egregious cases.  The court noted that the essential difference between suspension and disbarment is that although both sanctions involve the withdrawal of the privilege of practicing law, an attorney who is suspended may resume practice at the end of the period of suspension upon demonstration of his fitness to practice, whereas an attorney who is disbarred

8

may not apply for readmission to the bar for a period of five years, and in disbarment, he is not entitled to be readmitted without a showing of facts far greater than necessary to base reinstatement from a suspension.

In a more recent case, *In re Iulo,* 564 Pa. 205, 766 A.2d 335 Pa. 2001, the Pennsylvania Supreme Court accepted the membership of a disbarred New Jersey attorney who made an application in Pennsylvania. The opinion clarifies the vast difference given the two status' namely that in New Jersey, a disbarred lawyer is forever forbidden from practicing law again. In Pennsylvania, a disbarred lawyer is given an opportunity to convince the courts of his ability to practice law. Disciplinary actions are purported to be applied for the protection of the laymen serviced by the lawyers. In the case of Marcone, This Court has examined his professional qualifications and has accepted him as an unqualified member in good standing.

The reckless at least and the malicious, at most, assertions made by Herskowitz is unacceptable especially when he utilizes an Opinion which clarifies that Marcone has been a member in good standing in This Court since 2001. (He was admitted to This Court in 1963 and has never been cited for any infraction of the Rules of This Court. In 1989, he was suspended by Chief Judge Fullem based upon a suspension imposed by the Pennsylvania Supreme Court. That suspension was vacated in 1990 and Marcone was immediately reinstated by then Chief Judge Bechtle. In 1995 the Pennsylvania Supreme Court acknowledged Marcone had been wrongfully suspended in 1989 however on a technicality, he was once again suspended for the balance of a four year suspension. He was immediately reinstated on the exact date the Pennsylvania suspension terminated. )

In the case of *United States v. Whittaker,* 201 FRD 363, $Ed Pa. 2001 Rule of Professional Conduct 4.1 which provides in part that an attorney and his client must be truthful in statements to others. The court noted that in the course of

representing a client a lawyers shall not knowingly (a) make false statement of material fact or law to a third person.

In *Jordan v. Philadelphia Housing Authority*, 337 F. Supp. 2d 666, E.D. Pa 2004, first noting that Federal Courts have inherent authority to supervise the conduct of attorneys appearing before them, This Court next considered whether a violation of an ethics rule would warrant the penalty of disqualifying the lawyers guilty of the violation.

The Court noted that any doubts regarding the existence of a violation of an ethics rule should be construed in favor of disqualification of counsel.  While disqualification is not automatic, if the Rules of Professional Conduct have been violated, the District Courts' final step in deciding whether counsel should be disqualified must be to address whether disqualification further the purpose of the rules.  USDA. Ct. Rules, E.D. Pa. Rule 83.6 Part IV (B)

In this instance, demeaned counsel insists that all counsel who were involved in the attempted deception addressed to the court and which to him was the ultimate demeaning, slanderous and unprofessional conduct forfeited their right to practice before This Court in this case.

Marcone did nothing which could have provoked the attack and that attack is grossly personal.  To require Marcone to contend with dealing in a civil, professional manner with these persons would demean the Rule and disqualification is required and is demanded.

**SCOPE OF DISQUALIFICATION OF COUNSEL.**

In *Spencer v. Steinman,* 179 F.R.D. 484 E.D.Pa., 1998,, Judge Robreno held that a supervising attorney has an ethical obligation to establish appropriate procedures to ensure that those duties he or she delegates to the subordinates are performed properly.
(Rules of Professional Conduct, Rule, 5.3 (a)(b) , 47 Packs

Marcone therefore insists all counsel must be disqualified for Kelle A. Killgarriff, Esquire, was the subordinate of Mr. Curley and Mr. Loots who has accepted the responsibility of administering Ms. Killagariff.

Therefore, disqualification of all counsel is mandated.

In *Shade v. Great Lakes Dredge & Dock, Co.*, 72 F. Supp. 2d 518, E.D. Pa. 1999, the court enforced Rule 3.3 requiring a duty of candor toward a tribunal.  The presentation of knowingly false evidence was given the harsh penalty it deserved.

In a recent case of Office of Disciplinary Counsel v. Diangelus, 589 Pa. 1, 907 A.2d 452, 2006, wherein an attorney was found in violation of the Rules of Professional Conduct simply because he was not candid with the assistant district attorney with whom he was dealing.  The Pennsylvania Supreme Court stated that his lack of candor with his opponent constituted a lack of candor with the court before whom they were appearing.

That case has resulted in the imposition of a five year suspension from practice and if Chief Justice Cappy had not dissented Mr. Diangelus would probably have been disbarred.

## JAY HERSKOWITZ, ESQUIRE

Since it appears this conspiracy to defame and to falsely report to the court the professional status of Marcone, it appears Jay Herskowitz. Esquire,  is the primary culprit who requires investigation.  Aside from his false statement that Marcone was disbarred and therefore he should not be compensated for his legal fees, Herskowitz, in a footnote to his Motion also accused Marcone of violating the Rules regarding forum shopping and accused Marcone of an imagined effort to have this case assigned to this jurisdiction where he seemed to admit Marcone was able to practice.

Either Herskowitz is stupid, demented or an outright prevaricator, the evidence of the maliciousness of his actions lays within his own Motions.

In *Essex County Jail Nnnex Inmates v. Treffinger*, 16 F. Supp.2 418 D.N.J. 1998, the Court referred to New Jersey Rule of Professional Conduct which requires truthfulness I statements to others and which requires "scrupulous honest, particularly in dealing with adversaries and the court.  It is clear from that Opinion, that an Attorney admitted to New Jersey had a duty to represent clients zealously but that does not diminish his duty to refrain from making false statements or misleading third parties.

11

**CONCLUSION:** ("Wherefore clause")

This case should have been restrained to a resolution of the issue of what was the appropriate distribution of an escrow fund legally held by Philip Banks awaiting court direction. Instead, Stephen Schutter attempted to short circuit the proper legal channels by falsely referring a complaint that Banks was improperly withholding the fund.

That caused damage to Banks by causing his record with the Real Estate Commission to be blemished without reason. Also, it cost him valuable time and resources with counsel to defend against the blatantly false accusation.

Then, in the pleadings in this case, and without evidence or cause, opposing counsel falsely reported to This Court that counsel for Banks was disbarred and therefore Banks could not recover his attorney's fees as required by the contract between the parties.

Further, opposing counsel falsely accused Marcone of a violation of the Rules of Professional Conduct by "forum shopping" when in fact, it was Schutter's counsel who wrongly filed the suit in the District of Columbia to force capitulation. That cost Banks counsel fees and costs for which he remains uncompensated.

In the Motion filed by Herskowitz however he also stated there was no contractual obligation that Schutter nor Herskowitz pay counsel fees and costs and as stated above it is clear this is another false report to the Court.

This case has been permeated with continuous lies and false reports to the Court and is manifested by the fact neither Herskowitz nor Schutter have made an offer in a case where there is no defense other than a false defense. This Court must not countenance such actions and impose a monetary sanction in the amount of at least $50,000 and then disqualify all opposing counsel and begin this action anew.

Further, This Court must thereafter bring to the attention of each Bar Association with whom opposing counsel are admitted, the actions of counsel for disciplinary reference. In this Bar, the matter must be referred to Chief Judge Bartle for disciplinary investigation as is required

under our Rules.

Respectfully submitted,

_____

Frank J. Marcone, Esquire
Attorney for Philip Banks, Defendant
Plaintiff on the Counterclaim.

June 5, 2008

_____

EXHIBIT ONE DOCKET NUMBER 57
FILED BY JAY HERSKOWITZ, ESQUIRE

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEPHEN SCHUTTER,**<br><br>                    **Plaintiff(s),**<br>        **vs.**<br><br>**DAVID HERSKOWITZ, et al.,**<br><br>                    **Defendant(s).** | **Case No. 07-3823(AB)**<br><br>**DAVID HERSKOWITZS<br>MOTION IN LIMINE** |

**MOTION IN LIMINE**

Defendant, David Herskowitz, by and through his attorney, Jay M.Herskowitz,

hereby moves for an Order excluding certain evidence from admission at trial, and sets

forth the facts relevant to the legal issues as follows:

1.      On or about December 16, 2008, plaintiff and defendant Herskowitz entered into

        a written agreement of sale for the purchase of real estate.  A copy of that

        agreement is attached hereto as Exhibit "A.

2.      The agreement of sale was prepared by plaintiffs broker, Philip

Banks [Certification of David Herskowitz, para. 7].[1]

---

[1]

The Certification of David Herskowitz referred to was used in Herskowitzs motion for summary judgment. A copy of that certification, minus the exhibits, is attached for the convenience of the Court.

14

3.      The agreement of sale contained an integration clause, which reads as follows:

>       Buyer understands that any representations,
>       claims,  advertising, promotional activities,
>       brochures or plans of any kind by Seller, Brokers,
>       their licensees,  employees, officers, or partners
>       are not part of this Agreement unless expressly
>       incorporated or stated in this Agreement.  It is
>       further understood that this Agreement contains
>       the whole agreement between  Seller and Buyer
>       and there are no other terms,  obligations,
>       covenants, representations, statements or
>       conditions, oral or otherwise of any kind
>       whatsoever concerning this sale.  Furthermore,
>       this Agreement will not be altered, amended,
>       changed or modified except in writing executed by
>       the parties. See Exhibit "A," para. 26.(A).

4.      In or around the end of January, plaintiff discovered that the hostel business

operating on the subject premises was authorized by the City of Philadelphia to

use 54 beds.  Herskowitz had 70 beds on the premises.  [Certification of

David  Herskowitz, para. 15].[2]

5.      When plaintiff made this discovery, he called Herskowitz and requested that the

Agreement be cancelled, citing his erroneous belief that he could legally operate

a youth hostel on the subject property with 70 beds.  [Certification of David

Herskowitz, para. 16].

6.      Although Herskowitz never represented to plaintiff that he could lawfully operate

a 70 bed youth hostel, Herskowitz agreed to terminate the Agreement and

releasethe deposit monies.  Herskowitz phoned Banks shortly thereafter and told

---

[2]The Certification of David Herskowitz used in Herskowitzs motion for summary judgment is relied on here as well, and incorporated by reference. A copy of that certification, minus the exhibits, is nonetheless attached for the convenience of the Court.

him that the agreement had been cancelled, and that the escrow money was to

be released to plaintiff.  Banks insisted on preparing a formal release.

[Certification of David Herskowitz, para. 17].

7.    When plaintiff requested that his broker, defendant Philip Banks, return the

deposit monies, Banks refused, claiming by way of the release he prepared that

he was entitled to $12,000.00 in compensation for services rendered, and an

additional $600.00 for the legal services of Frank J. Marcone.  [Certification of

David Herskowitz, para. 18].

8.    In his claim for damages, plaintiff has requested compensation for "benefit of the

bargain" losses, and lost investment opportunity.

9.    In defendant Bank's counterclaim for damages against plaintiff Schutter,  Banks

demands reimbursement for the attorney fees of Frank J. Marcone, and has

cited aclause in the subject Agreement of Sale as the legal basis for this

demand.  This clause reads as follows:

> Buyer and Seller represent that the only Broker in
> this transaction are:  Philip Banks Real Estate and
> that the transaction has not been brought about by
> the efforts of anyone other than said Brokers.  It is
> agreed that if any claims for brokerage
> commissions or fees are ever made against Buyer
> or Seller in  connection with this transaction, each
> party shall pay its own legal fees and costs in
> connection with  such claims.  It is further agreed
> that Buyer and  Seller agree to indemnify and hold
> harmless each  other and the above identified
> Broker from and  against the non-performance of
> this Agreement by either party, and from any claim
> of loss or claim for brokerage commissions,

16

including all legal fees and  costs, that may be
made by any person or entity.  This paragraph
shall survive settlement.

10.    Defendant Banks attorney, Frank J. Marcone, was disbarred from the practice of

law in Pennsylvania by the Supreme Court of Pennsylvania in 1995,[3] long before

the subject real estate transaction occurred.  Orders relating to that disbarment

issued by the Pennsylvania Supreme Court forbid Mr. Marcone from providing

legal advice on state law, or holding himself out as an attorney for any matter

within Pennsylvania.  *Office of Disciplinary Counsel v. Frank J. Marcone*, 858

A.2d 588 (Pa. 2004).

11.    Frank J. Marcone was permitted by the United States District Court for the

Eastern District of Pennsylvania to practice law on matters within that Courts

jurisdiction in or around July 2005.  See Exhibit "B attached [In re:  Frank J.

Marcone (E.D.Pa 2005].

12.    Herskowitz seeks to prohibit the following categories of evidence from admission

at trial:

a)       any evidence pertaining to representations made by Herskowitz
prior to the execution of the agreement of sale;  any evidence of
communications of the parties which pertain to the terms of the executed
contract;  any observations of plaintiff or other persons about the subject
property;  any writings, brochures, internet content, or other media which
describes or makes claims about the subject property or the business
conducted there; and any representations, claims, advertising,
promotional activities,  brochures or plans of any kind by Seller, Brokers,
their licensees,  employees, officers, or partners which were not expressly
made part of the subject agreement;

---

[3]

Mr. Marcone has two disbarments in Pennsylvania. One occurred in 1989. After a reinstatement,
a second disbarment was ordered in 1995. See *ODC v. Frank J. Marcone*, supra., at fn. 2.

17

b)      any evidence pertaining to damages claimed for lost "benefit of the bargain";

c)      any evidence relating to attorney fees claimed by defendant Banks for the services of Frank J. Marcone; and,

d)      any evidence relating to compensation claimed by defendant Banks for brokers services.

13.    The attached brief provides the legal basis for these requested exclusions.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEPHEN SCHUTTER,** <br><br>                    **Plaintiff(s),** <br>       **vs.** <br><br> **DAVID HERSKOWITZ, et al.,** <br><br>                         **Defendant(s).** | **Case No. 07-3823(AB)** <br><br> **DAVID HERSKOWITZS BRIEF** <br> **IN SUPPORT OF** <br> **MOTION IN LIMINE** |

I.      PRECLUSION OF PAROL EVIDENCE

   Pennsylvania caselaw greatly respects integration clauses in contracts, and will

not admit parol evidence to explain or otherwise garner the intent of the written terms of

the executed agreement.  *Youndt v. First National Bank of Port Allegany*, 868 A.2d 539

(Pa. Super. 2005) states as follows:

>   Where the parties to an agreement adopt a writing as the
> final and complete expression of their agreement,
> alleged prior or contemporaneous oral representations or
> agreements concerning subjects that are specifically
> covered by the written contract are merged in or
> superseded  by that contract." *Blumenstock v. Gibson,*
> 811 A.2d 1029,  1037 (Pa.Super.2002).
>
>   Where the parties, without any fraud or mistake, have
> deliberately put their engagements in writing, the law
> declares the writing to be not only the best, but the only,

19

> evidence of their agreement. All preliminary negotiations,
> conversations and verbal agreements are merged in  and
> superseded by the subsequent written contract ... and
> unless fraud, accident or mistake be averred, the writing
> constitutes the agreement between the parties, and its
> terms and agreements cannot be added to nor
> subtracted from by parol evidence.  ...
>
> Once a writing is determined to be the parties' entire
> contract, the parol evidence rule applies and evidence of
> any previous oral or written negotiations or agreements
> involving the same subject matter as the contract is
> almost always inadmissible to explain or vary the terms
> of the contract.  *Yocca v. Pittsburgh Steelers Sports, Inc.,*
> 578 Pa. 479, 854 A.2d 425, 436 (2004).  *Id.* at 545-546.

The narrow exception to the above rule occurs where there is fraud in the

inducement of the contract.  Fraud in the inducement exists where "the party proffe ring

the evidence contends that he executed the agreement because he was defrauded by being

led to believe that the document contained terms that actually were omitted therefrom.

*Id.* at 546, quoting **Blumenstock**, supra., at 1036.  The court expressly rejected the

argument that a misrepresentation of fact occurring in the negotiations could be used to

prove fraud in the inducement under this narrow exception if the actual written contract

was honestly transmitted.  *Id.* at 546.  *See also* **Bardwell v. Willis**, 375 Pa. 503, 100 A.2d

102 (1953).

The Agreement of Sale under current consideration has an integration clause

which reads as follows:

> Buyer understands that any representations, claims,
> advertising, promotional activities, brochures or plans of
> any kind by Seller, Brokers, their licensees, employees,

2

officers, or partners are not part of this Agreement unless expressly incorporated or stated in this Agreement.  It is further understood that this Agreement contains the whole agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this Agreement will not be altered, amended, changed or modified except in writing executed by the parties.  See Certification of David Herskowitz, Exhibit "B," para. 26.(A).

This integration clause is consistent with the ones addressed in the above cited

cases, and actually reads more strongly than the clauses in those cases, providing more

detail in support of its intent.  Hence, under the above cited cases, statements and

communications between the parties leading up to the execution of the Agreement of Sale

cannot be considered in adjudicating the respective rights and duties of the parties.

Furthermore, there are no allegations, nor evidence, that terms of the Agreement

were hidden from the parties when they signed the Agreement of Sale.  Hence, there is no

support for a claim of "fraud in the inducement," and accordingly no alternative rea son

for introducing parol evidence.


**II.    PRECLUSION OF "BENEFIT OF THE BARGAIN DAMAGES" AND OTHER CLAIMS FOR LOST INVESTMENT OPPORTUNITY**

Plaintiff has requested damages for "benefit of the bargain."  This must be

denied

because Pennsylvania has rejected the benefit of the bargain theory of recovery.

Moreover, the facts of the case *sub judice*, which involve the *rescission* of a contract, do

not qualify for benefit of the bargain recovery—even if Pennsylvania had adopted tha t

rule.

   ***Emery v. Third National Bank of Pittsburgh***, 308 Pa. 504 (1932), which

involved a fraudulent stock sale, explained the theories of damages for deceit as
follows:

> For measuring damages arising from fraud and deceit
> there are two formulas applied in differing jurisdictions.
> There is the contract-warranty rule which allows the
> plaintiff to  recover the difference between the actual and
> represented  value of the property he purchased.  This
> rule gives the deceived plaintiff the value of his bargain. It
> is recognized  in the following cases: *Morse v. Hutchins,
> 102 Mass. 439*; *Antle v. Sexton, 137 Ill. 410*, s.c.  *27 N.E.
> 691*; *Estes v.  Odom, 91 Ga. 600*, s.c.  *18 S.E. 355*;
> *Molnar v. Beriswell,  122 Ohio St. 348*, s.c.  *171 N.E.
> 593*. The second rule called  the tort rule permits the
> plaintiff to recover only his actual loss.  This rule prevails
> in Pennsylvania.  "The measure of damages in an action
> of deceit for fraud in the sale of stock  is the difference
> between what the plaintiff was induced to  pay for the
> stock and its actual value at the time of the purchase":
> *Curtis v. Buzard, 254 Pa. 61, 64, 98 A. 777*.   "The
> measure of damages in an action for deceit in the sale of
> stock  is the difference between the real value of the
> stock at the time of the sale and the fictitious value at
> which plaintiff was induced  to  purchase it.  It's the
> money he parted with without receiving an equivalent
> therefor": *High  v. Berret, 148 Pa. 261, 23 A. 1004*.  *Id.* at
> 517-18.

   This policy was reiterated in ***Tilghman v. Dollenberg***, 418 Pa. 604 (1965), which

involved another fraudulent stock sale:

> A party who has been induced by fraud to purchase

4

> stock  may, if he does so promptly, rescind the contract
> and sue for the entire purchase price of the stock.
> Where, however,  as in the instant case, the plaintiff does
> not rescind the contract but elects to stand on it, he may
> not recover back  the entire purchase price, but only the
> difference between  the real value of the property
> purchased at the time of sale and what was paid for it, in
> an action of trespass for fraud  and deceit, rather than of
> assumpsit.  *Id.* at 610.

***Scaife v. Rockwell Standard Corporation***, 446 Pa. 280 (1971), which involved

fraud in the sale of a business, expanded the rule to allow recovery of costs incurred in

correcting problems caused by the hidden defects, in addition to the difference between

the contract price and its true market value.  However, the benefit of the bargain rule was

still rejected.

That being said, the benefit of the bargain argument, so far as this case is

concerned, is *academic*.  Plaintiff did not affirm the contract, he rescinded it.  As made

clear by the above cited cases, this only entitles plaintiff to the return of his money.

Moreover, since Herskowitz authorized the release of all deposit monies from escrow, and has otherwise done nothing to hinder the return of the escrow, Herskowitz cannot be

liable for the return of plaintiffs escrow money.

In his pretrial memo, plaintiff has also demanded damages as follows:

> Schutter has lost more than $500,000.00, including the
> $100,000.00 refundable escrow deposit, as well as the
> opportunity cost of investing the money for the two plus
> years that it has been wrongfully withheld. The method
> for valuation of the lost use of the escrow money is the
> Wall Street Journal Prime Rate of Interest +2%. In
> addition,  Plaintiff has lost revenue, a business
> opportunity, and  future profits which he would have

5

earned had the Youth Hostel been correctly represented
as to its capacity and cash flow.

As stated in the above cited cases, the law does not afford plaintiff anything
more

than what he actually laid out. The "lost opportunity claimed by plaintiff would

translate to prejudgment interest under Pennsylvania law. Pennsylvania has adopted
the

Restatement of Contracts, section 337(a) to determine if a party is entitled to
prejudgment

interest. **Black Gold Coal Corp. v. Shawville Coal Co.**, 730 F.2d 941 (3d Cir. 1984).

If the damages are not readily ascertainable in a contract action, prejudgment interest is

discretionary, based on the following criteria:

> (1) the diligence of the plaintiff in prosecuting the action;
> (2) whether the defendants have been unjustly enriched;
> (3) whether the award would be compensatory; and (4)
> whether there are countervailing equitable considerations
> which militate against an award of prejudgment interest.
> **Feather v. United Mine Workers of Am.**, 711 F.2d 530,
> 540 (3d Cir. 1983).

If, *arguendo*, defendant Herskowitz was liable for plaintiffs out-of-pocket

expenses relating to the preparation of the agreement of sale, prejudgment interest

would not be appropriate because 1) plaintiff never presented a demand for payment of

any such expenses, and 2) a clear itemization of such costs was never created.

Herskowitz should not be made liable for interest on damages he never had the

opportunity to pay.

Prejudgment interest should not apply to the escrow money either. Putting aside

the argument that Herskowitz cannot be liable for money he does not control, the

6

escrow money was placed in an interest bearing account.  Hence, return of the escrow

funds would incorporate prejudgment interest.

Accordingly, plaintiff should be precluded from introducing the escrow amount

converted by Banks as evidence of damages against Herskowitz, and should otherwise

be restricted, so far as Herskowitz is concerned, from introducing any evidence beyond

nonescrow outlays related to the preparation of the agreement of sale.

III.     PRECLUSION OF EVIDENCE FOR ATTORNEY FEES BY

IV.BANKS

Evidence of attorney fees incurred by defendant Banks must be precluded from

evidence for three reasons.  First, there is no contractual basis for payment of attorney

fees.  Second, the attorney who performed the legal work was disbarred at the time of

the services.  Third, the Court dismissed Banks Counterclaim on March 12, 2008, and

there is, accordingly, no claim for damages of any kind left to prove.

A.     There is No Contractual Basis for Attorney Fees

Ordinarily, a prevailing litigant is not entitled to collect attorney fees in

the absence of a statute or an enforceable contract.  *Alyeska Pipeline*

*Service Co. v.  Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44

L.Ed.2d 141 (1975);

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717, 87 S.Ct.

1404,  18 L.Ed.2d 475 (1967).  In a recent development, defendant Banks has cited a

clause in  the agreement of sale which, he contends, provides him the right to collect

attorney fees from the parties to the contract.  The clause reads as follows:

> Buyer and Seller represent that the only Broker in this
> transaction are:  Philip Banks Real Estate and that the
> transaction has not been brought about by the efforts of
> anyone other than said Brokers.  It is agreed that if any
> claims for brokerage commissions or fees are ever made
> against Buyer or Seller in connection with this
> transaction,  each party shall pay its own legal fees and
> costs in  connection with such claims.  It is further agreed
> that Buyer and Seller agree to indemnify and hold
> harmless each other and the above identified Broker
> from and against the nonperformance of this Agreement
> by either party, and from any claim of loss or claim for
> brokerage commissions,  including all legal fees and
> costs, that may be made by any person or entity. This
> paragraph shall survive settlement.

There are two reasons why this clause does not allow Banks to seek attorney
fees

from the parties to the contract:  1) a reasonable construction of the clause does not
allow

it, and 2) the parties rescinded the agreement terminating any rights which may have
been

conferred on Banks.

## 1.    A Reasonable Construction of the Clause
Does Not Support Indemnifying Broker for Attorney
Fees

The Pennsylvania Law Encyclopedia states that the terms of a contract must be

afforded their most reasonable construction to avoid absurd or unjust results:

> A contract must have a reasonable construction; it must
> be so construed, if possible, to avoid an interpretation
> which  will result in an absurdity, an injustice, have an

8

inequitable or unusual result, or have an unreasonable end.  The construction must be sensible and result in a meaning which reasonably intelligent men would attach thereto.

In its construction the court may assume that the parties intended a reasonable result and that they did not intend an  impossible thing to be done.

When there is a choice of constructions and strict construction would work an injustice, the contract will be construed, not by its literal terms, but according to its spirit and meaning.  The preference is for the construction which  gives a reasonable, lawful, and effective meaning to all manifestations of intentions, and which is just, and  equitable.  A construction which makes a contract fair,  customary or prudent is preferred to that which makes it unusual, inequitable or imprudent; and the court will adopt that interpretation which under all the circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.  *PLE, Section 153*.   See also: *Unit Vending Corp. v. Lacas*, *410 Pa. 614, 190 A.2d 298  (1963); Pocono Manor Ass'n v. Allen, 337 Pa. 442, 12  A.2d 32 (1940); Mowry v. McWherter, 365 Pa. 232, 74  A.2d 154 (1950); Block v. Mylish, 351 Pa. 611, 41 A.2d  731 (1945); Crispin Co. v. Delaware Steel Co., 283 F.  Supp. 574 (E.D. Pa. 1968); Galvin v. Occidental Life Ins.  Co., 206 Pa. Super. 61, 211 A.2d 120 (1965); Bingell v.  Royal Ins. Co., 240 Pa. 412, 87 A. 955 (1913); Rothstein v. Jefferson Ice Mfg. Co., 137 Pa. Super. 298, 9 A.2d 149 (1939); Percy A. Brown & Co. v. Raub, 357 Pa. 271, 54 A.2d 35 (1947); Girdler Corp. v. Charles Eneu Johnson & Co., 95 F. Supp. 713 (D. Pa. 1951),* aff'd, *194 F.2d 533 (3d  Cir. Pa. 1952); Consolidated Tile & Slate Co. v. Fox, 410  Pa. 336, 189 A.2d 228 (1963).*

Furthermore, Pennsylvania requires that the terms of a contract are to be read most strongly against the party who drafted them:

It is fundamental that where the language of a written

9

> document is ambiguous or its meaning doubtful, that in
> determining the intention of the parties, the writing must
> be construed most strongly against the party drafting it
> and the interpretation which makes a rational and
> probable agreement must be preferred: ***Vending Corp.***
> ***v. Lacas***,  supra., at 617, citing ***Wilkes-Barre Township***
> ***School Dist.***
> ***v. Corgan***, *403 Pa. 383, 170 A.2d 97 (1961)*; ***Heidt***
> ***v.  Aughenbaugh Coal Co.***, *406 Pa. 188, 176 A.2d*
> *400  (1962).*

The most rational construction of the clause *sub judice* is that it is intended to

protect the broker, and the parties, against lawsuits from undisclosed third-parties

asserting a right to a commission.  The paragraph opens with a warranty from both

seller and purchaser that the only broker to the transaction is Philip Banks:

> Buyer and Seller represent that the only Broker in this
> transaction are:  Philip Banks Real Estate and that
> the transaction has not been brought about by the
> efforts of anyone other than said Brokers.

The rest of the paragraph, so far as it relates to suit for brokerage fees, must be

read in light of this fundamental warranty, i.e., if any party has an undisclosed

brokerage agreement with another person or entity, the penalty will be liability for the

defense and indemnification of everyone else in the transaction.

The specific language relied on by Banks reads:

> It is further agreed that Buyer and Seller agree to
> indemnify and hold harmless each other and the above
> identified  Broker from and against the non-performance
> of this Agreement by either party, and from any claim of
> loss or claim for brokerage commissions, including all
> legal fees and costs, that may be made by any person or
> entity.

The first part of this sentence, which relates to non-performance of the

10

agreement,

does not apply because the parties mutually agreed to rescind the agreement. Hence, there was nothing either party was obligated to perform. This "non-performanc e portion of the sentence reasonably anticipates either the buyer or seller refusing to honor his obligations under the contract, and the broker being dragged into a lawsuit between them simply because he is holding the deposit money. Indemnifying the broker in such circumstances is reasonable because he would be an innocent bystander. However, this language cannot be fairly read to require payment of the brokers legal fees whe re the broker is actively asserting rights, and especially where those rights do not derive from the agreement of sale, but a separate agency agreement between broker and buyer.

The current lawsuit is essentially an action for brokers fees. Although t he action was not filed by the broker, it was instigated by the brokers passive assertion of a commission by refusing to return buyers escrow money, thereby putting the actual onus of filing a lawsuit on the buyer. But for the assertion of the right to fees, this lawsuit would not exist. Hence, the "non-performance portion of the clause is not applicable, leaving only the last part of the clause, which relates to suits for commissions.

This last part bears repeating here:

> It is further agreed that Buyer and Seller agree to indemnify and hold harmless each other and the above identified Broker . . . from any claim of loss or claim for brokerage commissions, including all legal fees and costs, that may be made by any person or entity.

11

As stated in the beginning of this argument, this language must be read in light of

the warranty language which opens the section.  This warranty language is designed to

protect innocent parties from the rights of undisclosed brokers.  Read in this context,

the final part of the paragraph makes perfect sense.  It expressly grants the innocent
parties, including the broker, indemnification for attorney fees.

The clause does not, as Banks maintains, require the other parties to fund a

lawsuit for his own brokerage fees.  Not only is this reading inconsistent with the overall

purpose of the paragraph, i.e., to protect innocent bystanders, but it would produce

absurd and unfair results:  1) it would allow Banks to collect legal fees regardless of the

merits of his action, and 2) it would require innocent bystanders to contribute to the

fees.

Banks prepared the agreement of sale.  As recited above, the law demands that

the writing must be construed most strongly against the party drafting it  and the

interpretation which makes a rational and probable agreement must be preferred.

*Vending Corp. v. Lacas*, supra.[4]If Banks had wanted the parties to pay his legal fees

for *any* legal action, even if instituted by him for his own fees, he should have written

that in clearly.  For instance, he could have at least modified the end of the above cited

language to read:

> . . . from any claim of loss or claim for brokerage

---

[4]In *Vending Corp. v. Lacas*, it was held that obligations under a cigarette vending machine license terminated upon the death of the licensee where the licensor, who drafted the license, did not insert terms addressing contingencies for licensees death.

12

> commissions, including all legal fees and costs, that may
> be made by any person or entity ***including the Broker
> to this transaction, Philip Banks***.  (Bolded, italicized
> language is the suggested addition).

Mr. Banks did not do this.[5]

Finally, the provision addresses claims for "brokerage commissions."  The

evidence does not support a claim for brokerage commissions because Banks did not

introduce plaintiff to the property, and there was no written agreement authorizing a

commission.[6]  Banks was hired to draft the agreement of sale and help procure

financing,

as indicated in his agency agreement with plaintiff.  Strictly construing the language

against Banks, who drafted it, the provision is inapplicable.

### 2. Banks has No Rights as a Third-Party Beneficiary

If Banks has any right to performance from either of the parties to the
agreement,

it would be as a third party beneficiary.  Pennsylvania has adopted the Restatement of

Contracts, section 133, in defining the categories and rights of third-party beneficiaries.

*See **Hilbrook Apartments v. Nyce Crete Company***, 237 Pa. Super. 565 (1975).  A
donee beneficiary is created where the purpose of the promisee in obtaining the
promise is to  confer a benefit on the beneficiary, or to give the beneficiary a right
against the promisor.   A creditor beneficiary is created when the promisee obtains a
promise from the promisor to assume responsibility for a claim alleged by the

---

[5]

Even if he had, the agreement would be unconscionable if it was not conditioned on the merit of
his claims, and only held accountable the party against whom his claim was made.

[6]In Herskowitzs Motion for Summary Judgment, th e Court was asked to adjudicate Banks right to a
commission. Obviously, an adjudication of that issue is a prerequisite to deciding the one presented here.

beneficiary against the promisee. An incidental beneficiary is any beneficiary who is neither a donee nor a creditor beneficiary. Only donee and creditor beneficiaries have rights against the promisor. Incidental beneficiaries have no rights. *Id.* at 570-71.

The application of the Restatement by Pennsylvania courts has resulted in a very restrictive policy on the rights of third party beneficiaries. The tendency of the courts is to deny third party rights in the absence of a purely donative intent manifested by both parties to the contract. See Comment, ***Barriers to Recovery in Pennsylvania Third Party Beneficiary Law***, 82 Dick. L. Rev. 144 (1077-78). When used in business agreements, they are uniformly struck down as lacking the requisite beneficial intent, the rational being that the promisors sole intent is to benefit himself with the promisors consideration, not to benefit the beneficiary. *Id.* at 159. *See*, ***Burke v. North Huntington Tp. Mun. Auth.***, 390 Pa. 588 (1957); ***Mowrer v. Poirier & McLane Corp.***, 382 Pa. 2 (1955); ***Spires v. Hanover Fire Insurance Co.***, 364 Pa. 52 (1950); ***Pennsylvania Liquor Control Board v. Rapistan, Inc.***, 14 Pa. Commw. Ct. 501 (1974).

It must also be considered that Banks, as is common practice with brokers, slipped in the indemnification provision to protect his own interests. The provision is boilerplate, and there is no evidence that it was independently negotiated, or even discussed for that matter. The likelihood is that neither party even knew it was there.

Under these circumstances, it cannot be said that the parties were motivated or intended

to confer a benefit on the broker.

Even if Banks was a valid third-party beneficiary, he is subject to the validity and

enforceability of the agreement from which he obtains his benefit:

> There can be no donee beneficiary or creditor beneficiary
> unless a contract has been formed between a promisor
> and  promisee; and if a contract is conditional, voidable,
> or unenforceable at the time of its formation, or
> subsequently ceases to be binding in whole or in part
> because of impossibility, illegality or the present or
> prospective failure of the promisee to perform a return
> promise which was the consideration for the promisor's
> promise, the right of a donee beneficiary or creditor
> beneficiary under the contract is subject to the same
> limitation." ***Williams v. Paxson Coal Company***, 346 Pa.
> 468, 471-72 (1943), *quoting* section 140  of Restatement,
> Contracts.

Assuming Banks was conferred rights as a third-party beneficiary, those rights

were lost when the parties rescinded their agreement.

### B.      Most of the Legal Services for Which Banks Seeks Reimbursement Were Provided by a Disbarred Attorney Who Cannot Charge Fees

Frank J. Marcone has been disbarred by the Supreme Court of Pennsylvania
from

the practice of law since 1995.  ***Office of Disciplinary Counsel v. Frank J. Marcone***,

858 A.2d 588 (Pa. 2004).  The Pennsylvania Supreme Court disbarment prohibits Mr.

Marcone from practicing law in the Commonwealth of Pennsylvania, whether it involves

a federal or state matter.  The U.S. District Court for the Eastern District of

Pennsylvania has allowed Mr. Marcone to practice before it in matters under its

jurisdiction, creating an

irreconcilable conflict between the two orders.  See Exhibit "B," ***In re Frank Marcone***

(E.D.Pa. 2005).

Putting aside the conflict between these two positions, there are clearly services for which Mr. Marcone seeks attorney fees which fall outside even the federal parameters.  In his counterclaim, he seeks attorney fees in Count II for defending his client in the U.S. District Court for the District of Columbia, and in Count III for defending his client in front of the Pennsylvania Real Estate Commission.  Neither category of services is within the jurisdiction of the Eastern District of Pennsylvania. Additionally, $600.00 of Banks original bill to Schutter was for Mr. Marcones draft ing of two releases.  This work also fell outside the federal purview.  Mr. Marcone is without legal authority to charge for any of these services, and cannot therefore introduce evidence in support of them.

This leaves only the services provided for this lawsuit.  Assuming, *arguendo*, there existed a right to attorney fees, it would be the moving partys position that only legal services performed on federal land, i.e., the Federal Courthouse, should be compensable, if at all.  This is especially true in matters such as this one, a diversity jurisdiction case, where the subject matter of the suit involves state law, and requires Mr. Marcone to give advice on and litigate state issues to clients living within the state. Allowing him to do this at his house, or anywhere within the territorial jurisdiction of Pennsylvania, mocks the efforts of the state to regulate the practice of law within its borders.[7] The above cited decision by the Pennsylvania Supreme Court makes these

---

[7]The refusal of Mr. Banks to return the undisputed amount of the security deposit may well have been designed to make this matter eligible for diversity jurisdiction for the benefit of his attorney. The original claim for brokerage services was only $12,000.00, far short of the necessary $75,000.00. Mr. Marcone

arguments quite persuasively, and nothing further stated here can really add to its

position.

### C.    The Court Dismissed Banks Counterclaim Thereby Precluding His Claim for Attorney Fees

On March 12, 2008, at a status conference, the Court granted plaintiffs Motion to

Dismiss Banks Counterclaim, thereby eliminating the legal underpinning of his c laim for

*any* damages, including attorney fees.  The Counterclaim having been dismissed,

Herskowitz requests that Banks be precluded from introducing any evidence relating to

attorney fees.

## IV.    PRECLUSION OF BANKS CLAIMS FOR BROKERS FEES

Again referring to the Courts dismissal of Banks Counterclaim, there is  no legal

basis for Banks claims for a brokers commission or other fees related to the subje ct

transaction.  Accordingly, Herskowitz requests that Banks be precluded form

introducing any evidence relating to brokers fees or commission.

3/15/08

_

**s/ Jay Herskwitz**_____ Jay M. Herskowitz, Esquire 181 Cypress Court Marlton, NJ
08053  Ph. 856-985-8357  Fax  856-267-5671  jherskowitz1@comcast.net
Attorney for Defendant,  David Herskowitz

---

has asserted specious claims for attorney fees as an escrow lien, thereby using the unauthorized practice
of law to procure a forum where such misconduct might bear fruit. It is hard to imagine that the Court
would reward or condone such strategy.

20

**UNITED STATES DISRTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEPHEN SCHUTTER,**<br><br>                    **Plaintiff(s),**<br>          **vs.**<br><br>**DAVID HERSKOWITZ, et al.,**<br><br>                    **Defendant(s).** | **Case No. 07-3823(AB)**<br><br>**ORDER** |

IT IS on this         day of                     , 2008, ORDERED that

defendant David Herskowitzs Motion in Limine is GRANTED.   The following

categories o f evidence are precluded from introduction at trial:

a)      any evidence pertaining to representations made by Herskowitz

        prior to the execution of the agreement of sale;  any evidence of

        communications of the parties which pertain to the terms of the

        executed contract;  any observations of plaintiff or other

        persons about the subject property;  any writings, brochures,

        internet content, or other media which describes or makes

        claims about the subject property or the business conducted

        there;  and any representations, claims, advertising, promotional

        activities,  brochures or plans of any kind by Seller, Brokers,

        their licensees,  employees, officers, or partners which were not

        expressly made

22

part of the subject agreement;

b)      any evidence pertaining to damages claimed for lost "benefit of the

bargain";

c)      any evidence relating to attorney fees claimed by defendant

Banks for the services of Frank J. Marcone; and,

d)      any evidence relating to compensation claimed by defendant

Banks for brokers services.

BY THE COURT

_____

## CERTIFICATION OF SERVICE

The undersigned certifies that all parties of record are represented by

ECF registered counsel, and that all parties have been served with the foregoing

Motion *In  Limine* through the ECF system.

3/17/0
8

**_s/ Jay M.
Herskowitz_____** Jay M.
Herskowitz, Esquire 181
Cypress Court Marlton, NJ
08053  Ph. 856-985-8357  Fax
856-267-5671
jherskowitz1@comcast.net

Attorney for
Defendant,  David
Herskowitz

24

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEPHEN SCHUTTER,**<br><br>　　　　　　**Plaintiff(s),**<br>　　**vs.**<br><br>**DAVID HERSKOWITZ, et al.,**<br><br>　　　　　　**Defendant(s).** | **Case No. 07-3823(AB)**<br><br>**CERTIFICATION OF DAVID HERSKOWITZ IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT** |

Defendant, David Herskowitz, being of full age, does hereby certify as follows:

1.　　My first contact with the plaintiff, Stephen Schutter, was by phone sometime in November 2005.  Plaintiff called me at my home in Vermont.

2.　　Plaintiff stated that he had seen a sign on a building owned by me at 32-42 Bank Street in Philadelphia advertising that the building was for sale.

3.　　I operated a youth hostel on the subject premises.

4.　　Plaintiff informed me in his phone call that he had owned a youth hostel in the Washington D.C. area, that it had burned down, and that he wanted to operate another one.  I informed plaintiff that the sale price of the building was $1.6 million dollars.  Plaintiff did not inquire any further about the details of the building, or the business which I operated there.  More specifically, there was no discussion about the number of beds used in the business, nor any indication that the bed capacity was critical to

1

plaintiffs decision to purchase the propert y.

5.      Some additional phone calls were made to me by plaintiff.  These conversations primarily concerned how an agreement of sale could be prepared.  Again, plaintiff

did not request any details about the subject building or the business which I

operated there.  Moreover, at no time did plaintiff indicate that the amount of

beds used by the business was important to him.  No face to face meeting ever

took  place between plaintiff and me.  From the excitement plaintiff generated

about running a youth hostel again, it was my impression that plaintiff only cared

that the property was set up for a youth hostel.

6.      Plaintiff ultimately procured Philip Banks, a broker at Philip Banks Real Estate, to represent him in the purchase of the building.

7.      Plaintiff and Banks entered into an agreement on November 30, 2005 authorizing Banks to prepare an Agreement of Sale, among other things necessary to bring about the transaction.  The agreement between plaintiff and Banks does not mention a commission.  The agreement does, however, require Banks to procure a property which could be used as a Youth Hostel with 70 beds.  A copy of this document is attached hereto as Exhibit "A.

8.      I was not provided a copy of the representation agreement between plaintiff and Banks, and as already stated, I was not otherwise made aware that plaintiff required a certain minimum number of useable beds as a condition of entering into the sale.

9.      I had a few phone conversations with Mr. Banks prior to the execution of the Agreement of Sale.  The purpose and substance of those conversations was

2

to  provide information necessary to complete the blank spaces on the

pre-printed  Agreement of Sale which Mr. Banks was filling out.  At no time did

Mr. Banks inquire about the number of beds in the building, nor did he at any

time indicate

      that the amount of beds allowed to be used by the business operating

      on the premises was of any concern to him or his principal.

10.    Philip Banks prepared an Agreement of Sale, which was fully executed by the

parties as of December 16, 2005.  A copy of the Agreement is attached as Exhibit B.

11.    Under the Agreement of Sale, I was selling real property and some

personal assets.

12.    Plaintiff placed deposit monies in the amount of $100,000.00 into an

escrow account held by his broker, defendant Philip Banks, as part of his

obligations under the Agreement of Sale.

13.    As evidenced by paragraph 10 of the Agreement of Sale, plaintiffs primary

zoning concern was that the property be suitable for use as a rooming house, as

this was the only specific condition plaintiff required seller to verify.

14.    The property was, in fact, verified as zoned for use as a rooming house.

15.    In or around the end of January, plaintiff discovered that the hostel

business operating on the subject premises was authorized by the City of

Philadelphia to  have 54 beds.  I had 70 beds on the premises.

16.    When he made this discovery, plaintiff called me and requested that the

Agreement be cancelled, citing his erroneous belief that he could legally operate a

youth hostel on the subject property with 70 beds.

17.     Although I never represented to plaintiff that he could lawfully operate a 70 bed youth hostel, I agreed to terminate the Agreement, and authorized the release of the deposit monies.  I phoned Banks shortly thereafter and told him that plaintiff

and I had cancelled the agreement, and that the escrow money was to be released  to plaintiff.  Banks insisted on preparing a formal release.

18.     When plaintiff requested that his broker, defendant Philip Banks, return the deposit monies, Banks refused, claiming that he was entitled to $12,000.00 in  compensation for services rendered, and an additional $600.00 for the legal services of Frank J. Marcone, who had prepared two release forms.

Mr. Banks has never provided an itemization of the time he expended under his agreement with plaintiff.

## CERTIFICATE OF SERVICE

Frank J. Marcone, Esquire, attorney for Philip Banks does hereby certify that he has served a true and correct copy of the attached Motion seeking Sanctions and disqualification against opposing counsel upon the following by electronic filing, by facisimile and regular mail, postage prepaid:

Charles Curley, Esquire
ccurley@halcur.com
Kellie A. Kilgarriff, Esquire
1100 E. Hector Street
Suite 425
Conshohocken, PA 19428
Fax(610) 824 8819
Kkilgarriff@halcur.com

Jay Herskowitz, Esquire
181 Cypress Court
Marlton, NJ 08053
Fax (856 ) 267 5671
Herskowitz1@comcast.net

James M. Loots, Esquire
236 Massachusetts Avenue, N.E.
Washington, D.C. 20002
Fax 202 315 3515
jloots@lootslaw.com

*S/Frank J. Marcone*

_____
Frank J. Marcone, Esquire
Attorney for Philip Banks

``

June 5, 2008

3