IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN SCHUTTER                    :          CIVIL ACTION
                                    :
                    Plaintiff       :
                                    :
        v.                          :          NO.  07-3823
                                    :
DAVID HERSKOWITZ and                :
PHILIP BANKS                        :
                                    :
                    Defendants      :

<u>**MEMORANDUM OPINION**</u>

DAVID R. STRAWBRIDGE                                June       23, 2008
UNITED STATES MAGISTRATE JUDGE

## I.      Introduction

Plaintiff Stephen Schutter (alternatively "Schutter" or "Plaintiff") brought this action against

Defendants David Herskowitz ("Herskowitz") and Philip Banks ("Banks").  The complaint was

originally filed in the United States District Court for the District of Columbia but on July 5, 2007

was transferred to this District pursuant to 18 U.S.C. § 1404(a) and (c) and assigned to the Honorable

Anita B. Brody.[1]  On April 17, 2008, the parties consented to Magistrate Judge jurisdiction and the

matter was transferred to this Court.  (Doc. 75).  We accordingly acquired jurisdiction over all

outstanding motions.

By his complaint, Schutter, as a prospective buyer of a property in Philadelphia, alleges

breach of contract against the prospective seller, Herskowitz (Count I); fraudulent inducement to

---

[1]  Subject matter in this case is predicated upon diversity of citizenship under 28 U.S.C. §
1332.  Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court must apply the
substantive laws of its forum state in diversity actions.  *See Borse v. Piece Goods Shop, Inc.*, 963
F.2d 611, 614 (3d Cir. 1992).  Accordingly, we apply Pennsylvania law in deciding all
substantive legal issues pertaining to this case.

contract against Herskowitz and Banks, a broker whose services were retained by Schutter (Count II); breach of fiduciary duty against Banks alone (Count III); unjust enrichment against both Herskowitz and Banks (Count IV); and fraud and misrepresentation also against both Herskowitz and Banks (Count V).

Herskowitz now files this motion (Doc. 36) pursuant to Fed. R. Civ. P. 56(b) asserting that he is entitled to judgment as a matter of law on all of the counts that Schutter brings against him. For the reasons set out below, we dismiss by the consent of Schutter the breach of contract claim (Count I) and we grant Herskowitz's motion with respect to Counts II, IV and V.[2]

## II.     Factual Background[3]

This matter arises out of an abandoned property transaction.  In November 2005, Schutter contacted Herskowitz regarding the advertised offer to sell the Bank Street Hostel (the "Hostel") located at 32 Bank Street in Philadelphia, Pennsylvania.  (Doc. 36-2 at 1, Doc. 61 at 2).  During the conversation, Schutter informed Herskowitz that he had previously owned a youth hostel in the Washington, D.C. area, that it had burned down, and that he was interested in operating another one. (Doc. 36-2 at 1, Doc. 61 at Ex. G).  Schutter, apparently due to information contained within both a February 8, 2006 Washington Post article and a link on the Hostel's website, came to understand at some point that the Hostel operated with a capacity of 70 beds.  (Doc. 61 at 2-3; Doc 61 Exs. A & B).  Schutter does not allege, however, that Herskowitz ever made any representations directly to

---

[2] We do not address the Herskowitz discussion of Count III in that that claim is set out against Banks alone.

[3] The recitation of facts contained in this section is comprised of both undisputed facts and Plaintiff's factual allegations.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (instructing court to view all facts and inferences in light most favorable to nonmoving party).

him regarding the bed capacity or that he ever made any direct inquiry about the Hostel's bed capacity prior to any agreement to purchase the Hostel.  (Doc. 36-2 at 1-2; Doc. 61 at 2-4).

Schutter nonetheless, and after some further negotiations with Herskowitz, decided to purchase the Hostel, apparently based on his understanding as to the 70 bed capacity.  (Doc. 36-2 at 2; Doc. 61 at 2-3).  Schutter then engaged Banks, a broker at Philip Banks Real Estate (Doc. 36-2 at 2; Doc. 61 at 3), and on November 30, 2005 signed a document (the "Authorization") authorizing Banks to represent him in the purchase of the Bank Street Hostel and to draft a corresponding agreement of sale.  (*See* Doc. 61 at 3 & Ex. E).  The Authorization was silent on the question of whether Banks was to be paid for this service and if so, under what terms.  (*See* Doc. 61 at Ex. E).  It did, however, state that the "transfer [of the Hostel premises] shall include . . . any and all regulatory authorities having jurisdiction for the property, necessary to conduct business for a seventy bed Hostel. (70)."  (*See* Doc. 61 at Ex. E).  Schutter does not allege that he ever provided a copy of the Authorization to Herskowitz.  (*See* Doc. 61 at 2-4).  Herskowitz asserts that he never saw it.  (Doc. 36-2 at 2-3).

Banks then drafted an Agreement of Sale (the "Agreement") which was signed by Schutter on December 7, 2005 and by Herskowitz on December 15, 2005.  (Doc. 36-2 at 3; Doc. 61 at Ex. F).  It specified a purchase price of $1.6 million and required that Schutter place an initial deposit of $100,000 into an escrow account maintained by Banks at the Bryn Mawr Trust Company.  (Doc. 36-2 at 3; Doc. 61 at 3 & Ex. F ¶ 3(B)).  Schutter delivered the $100,000 escrow funds to Banks for deposit into the account later in December 2005.  (Doc. 61 at 3-4; Doc. 36-2 at 3).

In January 2006, Schutter discovered for the first time that the Hostel's "certificate of occupancy" issued by the City of Philadelphia authorized the usage of only 54 beds, not the 70 that

3

Herskowitz in fact had on the premises.  (Doc. 61 at Ex. D at 3; Doc. 36-2 at 4).  Schutter then

telephoned Herskowitz and sought to cancel the Agreement.  (Doc. 61 at Ex. D at 3; Doc. 36-2 at

4).  Herskowitz agreed and took steps to have the escrow funds released back to Schutter.  (Doc 61

at 3; Doc. 36-2 at 4).

    Schutter next contacted Banks, informed him of the termination of the Agreement and the

mutually agreed release of the escrow funds.  (Doc. 61 at Ex. D at 3; Doc. 36-2 at 4).  Banks

responded by preparing a formal release which memorialized the parties' intention to both cancel

the Agreement and to release the escrow funds.  (Doc. 61 at Ex. G at 4 & Ex. H; Doc. 36-2 at 4). The

release document, however, specified that Banks was entitled to a fee of $12,000 in compensation

for services rendered together with $600 in attorneys fees.  (Doc. 61 at Ex. H; Doc. 36-2 at 4).

Plaintiff did not agree and Banks, in turn, refused to release any portion of the $100,000 funds.

(Doc. 61 at3-4; Doc. 36-2 at 4).  This action eventually followed.

## III.    Legal Standard

    Under Fed.R.Civ.P. 56(c), summary judgment is appropriate where "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law."  The moving

party bears the initial burden of demonstrating the absence of a genuine issue of any material fact.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has done so, the

party opposing the motion "must do more than simply show that there is some metaphysical doubt

as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (citation omitted).  Rather, the responding party must "set out specific facts showing a

genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).  "Where the record taken as a whole could not lead

4

a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (internal quotation omitted). Finally, only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Factual disputes which are "irrelevant or unnecessary" to a proper consideration of the case under applicable law are insufficient to preclude a grant of summary judgment. *See id.*

IV.    **Discussion**

    A.    **Count I - Breach of Contract Claim**

In his response to this motion for summary judgment, Schutter has conceded that there is, in fact, no proper cause of action against Herskowitz for breach of contract. He has further specifically consented to the dismissal of this count of his complaint as to Herskowitz. This count will therefore be dismissed with prejudice.

    B.    **Counts II and V regarding fraud, misrepresentation or fraudulent inducement**

Plaintiff has alleged, in Counts II and V, claims regarding fraud, misrepresentation and fraudulent inducement against Herskowitz based upon an alleged affirmative misrepresentation and upon a failure to disclose a material fact. Plaintiff argues that there remain factual disputes precluding summary judgment both with regard to the question of whether a fraudulent representation was made by Herskowitz to Plaintiff regarding the hostel bed capacity and whether the bed capacity was a fact material to the transaction at hand. While Plaintiff's complaint is somewhat imprecise, we construe both counts as implicating two distinct, yet related, principles. Therefore, to resolve the motion as to Counts II and V, we first consider whether there was any

5

affirmative representation that could be deemed a fraudulent misrepresentation and then consider
whether any omission of a material fact could support these claims.

### 1. Misrepresentation

In Count II of his complaint, Plaintiff alleges that by certain statements, acts and omissions,
Herskowitz made material misrepresentations to Plaintiff regarding the bed capacity for the purpose
of inducing him into entering into the Agreement.  Similarly, in Count V of his complaint, Plaintiff
alleges that Herskowitz falsely induced him to tender the escrow funds through false and fraudulent
misrepresentations regarding the bed capacity.

To establish a claim for fraudulent misrepresentation in Pennsylvania, a plaintiff must prove:

> (1) a representation; (2) which is material to the transaction at hand;
> (3) made falsely, with knowledge of its falsity or recklessness as to
> whether it is true or false; (4) with the intent of misleading another
> into relying on it; (5) justifiable reliance on the misrepresentation; and
> (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).  In his opposition to Herskowitz's motion, Plaintiff
argues[4] that there is a genuine issue of material fact as to whether Herskowitz represented that the
Hostel was certified to operate with a 70 bed capacity.  Plaintiff asserts that Herskowitz advertised
the property as a 70 bed hostel and that an article in the Washington Post similarly referred to the
Hostel as having a 70 bed capacity.  The article, however, was dated February 8, 2006 and thus
actually post-dated the date that Schutter entered into his written agreement to purchase.  (*See* Doc.
61 at 2-3 & Ex. A).  Moreover, it did not even contain a representation made by Herskowitz: it was
nothing more than a general circulation piece about youth hostels in the mid-Atlantic region.  (*See*

---

[4] We note that Plaintiff, as the party opposing the motion for summary judgment, has
failed to present any affidavits in support of his allegation regarding an affirmative
misrepresentation.  *See* Fed.R.Civ.P. 56(e)(2).

Doc. 69 at 2-3). The second document he points to in opposing summary judgment appears to be a page on the Hostel's website designed for prospective guests that, in its brief description of the facility, mentions that the Hostel had 70 beds. (*See* Doc. 61 at 2-3 & Ex. B).[5] This reference does not appear on its face to be associated in any way with an offer to sell the property to Schutter or anyone else.

Most importantly, however, the Agreement that Schutter signed on December 7, 2005 contained an integration clause which expressly confirmed that all agreed terms between the parties were set out in the contract and that any modifications or changes had to be contained in a writing signed by both parties. Specifically, the language in Paragraph 26(A) reads:

> Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. It is further understood that this Agreement contains the whole agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(Doc. 36 at 6; Doc. 36-6 at 4). The Agreement does not address the specific issue as to the number of permitted beds. The only related reference concerning the usage of the property appears in Paragraph 10, entitled "Zoning Contingency," which provides that the "proposed use of the Property as **Rooming House** is permitted." (Doc. 36-6 at 2).[6]

---

[5] We note additionally that Plaintiff, as the party opposing the motion for summary judgment, has failed to present any affidavits in support of his allegation regarding an affirmative misrepresentation. *See* Fed.R.Civ.P. 56(e)(2).

[6] The reference to "Rooming House" stands out, as it has been typed in what otherwise
(continued...)

7

Herskowitz argues persuasively that the integration clause precludes Plaintiff from offering any extrinsic evidence as to any further representations. In support, he points us to *Youndt v. First Nat'l Bank*, 868 A.2d 539 (Pa. Super. Ct. 2005), where a plaintiff was precluded from offering evidence of misrepresentation prior to formation of the contract due to express contractual language strikingly similar to the language in the Agreement in this case. The contract at issue in *Youndt* stated in pertinent part that the buyers had inspected the premises or, alternatively, had waived the right to do so, and that they had not purchased the property in reliance upon any representations by the sellers. Further, the contract contained an integration clause specifying that the written contract "was the parties' whole agreement." *Id.* at 548-49.[7] In considering this language, the *Youndt* court

---

[6](...continued)
appears to be a standardized pre-printed form.

[7] More specifically, the contract there provided:

> It is understood that Buyer has inspected the property, or hereby waives the right to do so and has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representation made by the Seller or any other officer, partner or employee of Seller, or by any Agent, Subagent, their salespeople and employees, officers and/or partners.

*Youndt*, 868 A.2d at 543.

It concluded with the following integration clause:

> It is further understood that this agreement contains the whole agreement between the Seller and the Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this agreement shall not be altered, amended, changed or modified except in writing executed by the parties.

*Id.*

stated that:

> "Where the parties to an agreement adopt a writing as the final and complete expression of their agreement, alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically covered by the written contract are merged in or superseded by that contract." *Blumenstock v. Gibson*, 811 A.2d 1029, 1037 (Pa. Super. 2002).
>
> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract … and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.
> …
> Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).

*Id.* at 545-46.

Plaintiff does not challenge this statement of the law, and does not dispute the obvious similarity between the two integration clauses, but rather attempts to factually distinguish the contract at issue there from the Agreement here. Specifically, Plaintiff argues that because the claims raised here "arise from the representations as to the legality of the business operation and not to the physical characteristics of the real property itself," the parol evidence rule should not apply to preclude him from offering evidence of any misrepresentation. (Doc. 61 at 7). *Youndt* does not support this distinction. Furthermore, the plain language of the Agreement made clear that "Buyer [Schutter] understands that any representations [or] advertising . . . of any kind . . . are not a part of

this Agreement unless expressly incorporated or stated in this Agreement.  (Doc. 36 at 6; Doc. 36-6 at 4).

Accordingly, we find that Plaintiff is indeed precluded by the parol evidence rule from offering extrinsic evidence of misrepresentation.[8]  Without such evidence, Plaintiff is unable to establish the elements necessary to prevail on a claim for fraudulent misrepresentation.  Accordingly, Herskowitz is entitled to judgment as a matter of law as to this aspect of Plaintiff's claims.[9]

### 2.      Material omission of fact

Plaintiff also alleges in Counts II and V that Herskowitz fraudulently and falsely induced him into entering into the Agreement through certain omissions regarding the bed capacity.  Herskowitz argues that summary judgment is appropriate with regard to Counts II and V to the extent that they are predicated upon such a material omission of fact.  (Doc. 36 at 7).

The parties appear to agree that in Pennsylvania, to prevail on a claim for non-disclosure of fact, a plaintiff must satisfy the following elements:

> (1) One who fails to disclose to another a fact that he knows may
> justifiably induce the other to act or refrain from acting in a business

---

[8] We observe that even if Plaintiff were not precluded by the parol evidence rule from proffering evidence of prior negotiations, the two representations purportedly made by Herskowitz regarding the hostel's 70-bed capacity (the Washington Post article and the facilities description on the Hostel's website) would likely not meet the above stated elements of fraudulent misrepresentation.  (See *infra* at 6).

[9] We recognize that "fraud in the inducement" exists as a narrow exception to the rule barring parol evidence when an integration clause exists.  This exception may be invoked where the party proffering the extrinsic evidence contends that he executed the agreement because he was led to believe that the document contained terms that actually were omitted.  *See*, *e.g.,* *Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002)).  Herskowitz argues that this exception does not apply.  Plaintiff attempts to distinguish the facts here from those in *Blumenstock*, but fails to actually argue that this exception would apply.  (See Doc. 61 at 7-8).  Accordingly, there is no reason for us to believe that it does, and we do not so find.

transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Youndt*, 868 A.2d at 550 (citing § 551 of the Restatement (Second) Torts (1977)).  Whether a party has a duty to disclose a fact is a question of law that we must resolve.  *See id.* at 550-51.

The parties do not agree about whether the undisclosed fact at issue here, the Hostel's bed capacity, is a fact "basic to the transaction" under element (e) and thus a fact that Herskowitz had a duty to disclose.  The parties do agree, however, that our analysis must be guided by the decision in *Youndt,* which states:

> A basic fact is a fact that is assumed by the parties as a basis for the transaction itself.  It is a fact that goes to the basis, or essence, of the transaction, and is an important part of the substance of what is bargained for or dealt with.  Other facts may serve as important and

11

> persuasive inducements to enter into the transaction, but [do] not go
> to its essence.  These facts may be material, but they are not basic.  If
> the parties expressly or impliedly place the risk as to the existence of
> a fact on one party or if the law places it there by custom or otherwise
> the other party has no duty of disclosure.

*Id.* at 551 (citing of the Restatement (Second) Torts § 551 comment J (1977)) (emphasis omitted).

In support of his assertion that the bed capacity was a basic fact, Plaintiff first argues that Herskowitz agreed to terminate the Agreement because of the mistaken bed capacity and that this circumstance precludes Herskowitz from now denying that the bed capacity was indeed a "basic fact." Plaintiff also cites conversations and negotiations that took place prior to the drafting of the Agreement in which he told Herskowitz that "he had owned a youth hostel in Washington, D.C. which had burned down, and that he wanted to buy another youth hostel." (Doc. 61 at 9) (citing Exs. D, G, I).  Plaintiff concludes that these conversations should have revealed to Herskowitz that "making money was a concern" to Plaintiff and that an understanding of the need for sufficient bed capacity would have been necessary or "basic."  (Doc. 61 at 9).

Herskowitz, on the other hand, points to the integration clause and notes that no reference to bed capacity appears anywhere in the Agreement.  (*See* Doc. 36 at 9; Doc. 69 at 5).  Additionally, to the extent that we could consider such extrinsic evidence, he argues that:

> No discussion about the capacity, or any other details, occurred.
> Nothing was stated or questioned which indicated that the number of
> allowable beds mattered.  Even the broker, Defendant Phillip Banks,
> who was Plaintiff's own agent, and a professional in real estate
> transactions, failed to question the bed capacity."

(Doc. 36 at 9 n. 1).

Plaintiff nowhere disputes this statement, and he provides nothing which could plausibly lead us to find that any mention of bed capacity was made to Herskowitz as to put him on notice as to the

importance of the bed capacity issue.  Plaintiff, rather, points only to the fact that he made known

his desire to purchase a building that had been operated as a youth hostel and that he wished to

continue to operate this property as a hostel.  This evidence is simply far too tenuous to support a

finding that, as a matter of law, the bed capacity was a "fact[] basic to the transaction."  *Youndt*, 868

A.2d at 551.[10]  We conclude, therefore, that Herskowitz could not have been under a duty to disclose

---

[10]     Herskowitz points us to Paragraph 26(B) of the Agreement where Schutter represented that:

> It is understood that Buyer [Schutter] has inspected the Property
> before signing this Agreement (including fixtures and any personal
> property specifically scheduled herein), or has waived the right to
> do so, and has agreed to purchase it in its present condition unless
> otherwise stated in this Agreement.  Buyer acknowledges that
> Brokers, their licensees, employers, officers or partners have not
> made an independent examination or determination of the
> structural soundness of the Property, the age or condition of the
> components, environmental conditions, the permitted uses, or of
> conditions existing in the locale where the property is situated; nor
> have they made a mechanical inspection of any of the systems
> contained herein.

(Doc. 36 at 10-11).
       Herskowitz also points to Paragraph 32 of the Agreement, which provides as follows:

> Buyer and Seller acknowledge that Brokers have advised them to
> consult and retain experts concerning the legal and tax effects of
> this Agreement and the completion of the sale, as well as the
> condition and/or legality of the property, including, but not limited
> to, the Property's improvements, equipment, soil, tenancies, title
> and environmental aspects.

(Doc. 36 at 10-11).
       We agree with Herskowitz that through these bargained provisions, Plaintiff clearly
assumed the risk of any legal limitations encumbering the property or its use and that Herskowitz
had no duty to disclose information regarding the bed capacity.  *See Youndt*, 868 A.2d at 551
(finding plaintiff purchasers to have assumed risk of existence of a basic fact as result of similar
contractual language).

13

this fact as the parties entered into the Agreement and Schutter tendered the deposit.  We grant Herskowitz's motion for summary judgment on this claim.

### C.    Count IV - Unjust enrichment

In Count IV, Plaintiff asserted a claim that Herskowitz was unjustly enriched by Banks's retention of the $100,000 escrow funds.  To establish a claim of unjust enrichment, Plaintiff must prove that a "benefit [was] conferred on the defendant by the plaintiff, appreciation of such benefit by the defendant, and acceptance and retention of such benefit under circumstances that would create an inequity if defendant retained the benefit without payment." *J. F. Walker Co. Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1273 (Pa. Super. Ct. 2002).   For Plaintiff to prevail on this claim he must demonstrate that a benefit was conferred upon Herskowitz by Banks's retention of the escrow funds.  We conclude that Plaintiff cannot prevail in that there is no genuine issue of material fact which might demonstrate that any benefit was conferred upon Herskowitz by virtue of Banks's retention of the funds or that Herskowitz bears any lawful responsibility for that retention.

There is no dispute that Banks was engaged by Schutter and that he prepared the Agreement as Schutter's agent.  (*See* Doc. 61 at 3, 11).  There is also no dispute that Banks accepted the $100,000 escrow from Schutter and deposited those funds into his escrow account.  (*See, e.g.*, Doc. 10 at 4 ¶ 23, 8 ¶ 43; Doc. 61 at 10).  There is also no dispute that Herskowitz agreed to a termination of the Agreement and a release of the deposit as requested by Schutter.  (*See* Doc 61 at 2-3; Doc. 105-2 at 3 & Ex. D; Doc. 36-2 at 4).  Schutter has come forward with no evidence from which a finder of fact could reasonably conclude that Herskowitz controled these funds or that he in any way benefitted by Banks's continued control of these funds.  Schutter likewise presents us with no evidence from which it could be concluded that any benefit was conferred upon Herskowitz, whether

14

directly or indirectly, through Banks's continued retention of the funds. Accordingly, it cannot be said that any genuine issue of material fact exists with respect to the question of whether Herskowitz was enriched, unjustly or otherwise.

Plaintiff, however, asserts that Banks became an agent of Herskowitz with respect to the transaction and seems to infer that Banks's continued possession of the funds could thus be imputed to Herskowitz and, in turn, that a genuine issue of material fact exists as to whether a benefit was conferred upon Herskowitz. (Doc. 61 at 10). We disagree. While it is well-settled in Pennsylvania that a depositary in an escrow agreement "is generally considered to be an agent (or trustee) for both parties," *Paul v. Kennedy*, 102 A.2d 158, 159 (Pa. 1954), it is equally well-settled that "where one of two innocent persons must suffer because of the [misconduct] of a third, . . . the loss should be borne by him who put the [alleged] wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong." *Rothman v. Fillette*, 469 A.2d 543, 545 (Pa. 1983) (citing *Keller v. N.J. Fidelity and Plate Glass Insurance Co.*, 159 A. 40 (Pa. 1932); *Mundorff v. Wickersham*, 63 Pa. 87 (1869); and quoting *Rykaczewski v. Kerry Homes, Inc.*, 161 A.2d 924, 926 (Pa. Super. Ct. 1960)).

Here, there is no dispute that Schutter is the party who introduced Banks into the aborted property transaction and was thus the party "who put the [alleged] wrongdoer in a position of trust and confidence" and, in turn, was the party who enabled Banks to perpetrate the alleged wrong. *Rothman*, 469 A.2d at 545. Indeed, Schutter himself concedes this much in his response to Herskowitz's motion. (*See* Doc. 61 at 3) ("To effect the transaction, Schutter contacted [Banks], who represented himself as an experienced real estate and business broker. Schutter and Banks entered into an agreement whereby Banks was to facilitate the purchase of a 70-bed Youth Hostel . . . ."). Thus, to the extent that the existence of an agency relationship has a bearing upon our

analysis, it is the case that as between Schutter and Herskowitz, it is Schutter who must bear the loss

of any wrongdoing on the part of Banks.  We thus reject the argument that Herskowitz bears any

legal responsibility for the retention of the funds and will grant Herskowitz's motion on this count.

An appropriate Order follows.[11]

_____

[11] We recognize that, pursuant to our Scheduling Order entered on May 14, 2008 (Doc. 85), Herskowitz filed a second motion seeking summary judgment as to certain damage elements of Plaintiff's claims (Doc. 103).  Plaintiff filed a response on June 16, 2008, which asserted that the arguments in Herskowitz's second motion indeed "go only to the nature and extent of damages, not to the issue of legal liability or the fact of injury."  (Doc. 110 at 3).  Herskowitz filed a reply on June 17, 2008.  (Doc. 115).  We agree with Plaintiff and, as such, the points contained in Herskowitz's second motion did not inform our disposition of his first motion.  Our disposition of the first motion moots the second.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO.  07-3823 |
| | : | |
| DAVID HERSKOWITZ and | : | |
| PHILIP BANKS | : | |
| | : | |
| Defendants | : | |

## ORDER

AND NOW, this 23rd day of June, 2008, upon consideration of Defendant Herskowitz's "Motion for Summary Judgment" dated March 3, 2008 (Doc. 36), Plaintiff Stephen Schutter's response thereto (Doc. 61), and Herskowitz's reply brief (Doc. 69), along with Defendant Herskowitz's "Second Motion for Summary Judgment" dated June 9, 2008 (Doc. 101), Plaintiff's response thereto (Doc. 110), and Herskowitz's reply brief (Doc. 115) **IT IS HEREBY ORDERED THAT:**

1. Defendant Herskowitz's "Motion for Summary Judgment" (Doc. 36) is **GRANTED** and **JUDGMENT BE ENTERED** in Defendant Herskowitz's favor and against Plaintiff; and

2. Defendant Herskowitz's "Second Motion for Summary Judgment" (Doc. 101) is **DENIED AS MOOT**.

BY THE COURT:


 /s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE