IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN SCHUTTER                         :        CIVIL ACTION
                                         :
              Plaintiff                  :
                                         :
      v.                                 :        NO.  07-3823
                                         :
DAVID HERSKOWITZ and                     :
PHILIP BANKS                             :
                                         :
              Defendants                 :

### MEMORANDUM OPINION

DAVID R. STRAWBRIDGE                                    June      30, 2008
UNITED STATES MAGISTRATE JUDGE

## I.    Introduction

      Plaintiff Stephen Schutter (alternatively "Schutter" or "Plaintiff") brought this action against

Defendants David Herskowitz ("Herskowitz") and Philip Banks ("Banks").  The complaint was

originally filed in the United States District Court for the District of Columbia, but on July 5, 2007

was transferred to this District pursuant to 18 U.S.C. § 1404(a) and (c) and assigned to the Honorable

Anita B. Brody.[1]  On April 17, 2008, the parties consented to Magistrate Judge jurisdiction and the

matter was transferred to this court.  (Doc. 75).

      On November 20, 2007, Banks filed an answer to the complaint and a counterclaim asserting

claims for services rendered, attorneys fees, libel and slander, and punitive damages.  (Doc. 10).

Plaintiff, on February 5, 2008, filed a motion to dismiss Counts Two through Five asserted in

---

[1] Subject matter in this case is predicated upon diversity of citizenship under 28 U.S.C. §
1332.  Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court must apply the
substantive laws of its forum state in diversity actions.  *See Borse v. Piece Goods Shop, Inc.*, 963
F.2d 611, 614 (3d Cir. 1992).  Accordingly, we apply Pennsylvania law in deciding all
substantive legal issues pertaining to this case.

Banks's counterclaim. (Doc. 22). Banks's response to this motion was due on February 22, 2008, but on March 12, 2008, noting that no response had been filed, Judge Brody informed the parties that she considered the motion unopposed and would grant it on that basis. (*See* Doc. 68 at 3; Doc. 72 at 2; Doc. 65). She entered an Order to that effect on March 18, 2008. (Doc. 62). Banks then filed a "Motion to Vacate" that order on March 25, 2008 (Doc. 68), which we denied on June 6, 2008 (Doc. 99). Accordingly, only Count One of Banks's counterclaim, asserting a claim for "a commission as acting as an agent" and reimbursement for hiring counsel "for the purposes of preparing and procuring releases" (Doc. 10 at p. 13, ¶¶ 24, 25) remains before this Court.

Plaintiff now files this motion (Doc. 105) pursuant to Fed. R. Civ. P. 56(b) asserting that he is entitled to judgment as a matter of law on this remaining count of Banks's counterclaim. Banks has failed to respond. The motion is ripe for our review.

## II.    Factual Background[2]

This matter arises out of an abandoned property transaction. The first contact between the parties was in November 2005, when Schutter contacted Herskowitz regarding the potential sale of the Bank Street Hostel (the "Hostel"), a property located at 32 Bank Street in Philadelphia, Pennsylvania, that was owned by Herskowitz and had been advertised for sale. (Doc. 105-2 at 1; Doc. 10 at 10-11). Schutter at some point came to understand that the Hostel operated with a

---

[2] In that Banks has failed to respond to this motion or provide us with his version of the facts, he obviously has failed to provide anything other than allegations and denials contained within his own pleadings as required by Fed.R.Civ.P. 56(e)(2). Nonetheless, the recitation of facts contained in this section is comprised of both undisputed facts and facts distilled from Banks's answer, counterclaim, and responses to Herskowitz's interrogatories. *See Godshalk v. Borough of Bangor*, No. Civ.A. 03-1465, 2004 WL 999546, *1 n.1 (E.D.Pa. May 5, 2004) ("When considering a motion for summary judgment, a court must view all facts and inferences in a light most favorable to the nonmoving party.") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

capacity of 70 beds.  (Doc. 90 at 4; Doc. 105-2 at 1-2).  Apparently based on this understanding and after some further discussion with Herskowitz, Schutter decided to purchase the Hostel.  (Doc. 10 at 10-11; Doc. 90 at 4; Doc. 105-2 at 1-2;).

To facilitate the sale, Schutter procured the services of Banks, a real estate broker licensed in the Commonwealth of Pennsylvania and trading as Philip Banks Real Estate.  (Doc. 10 at 3, 5, 10; Doc. 105-2 at 1-2).  By a document signed on November 30, 2005 (the "Authorization"), Schutter authorized Banks to represent him in the purchase of the Hostel and engaged him to "draft an agreement of sale for the premises and such other professional services as shall be necessary attendant (sic) to the above transaction."  (Doc. 10 at 3; Doc. 90 at 2; Doc. 105-2 at 1-2 & Ex. B).  Although the Authorization further specified that the transaction was to include "any and all regulatory authorities having jurisdiction for the property, necessary to conduct business for a seventy bed Hostel.  (70)," it was silent on the issue of any fees or commission to be paid by Schutter to Banks for his services.  (*See* Doc. 105-2 at Ex. B;  *see* also Doc. 10 at p. 2 ¶ 12 & p. 9 ¶ 47 (citing contents of document and quoting language therein); Doc. 90 at 2 (same)).  The parties disagree about the substance of any unwritten agreement between them as to any such fees or commission.  (*Compare* Doc. 10 at p. 3 ¶¶ 13, 14 *with* Doc. 105-2 at 2).

Banks then drafted an Agreement of Sale (the "Agreement").  It was signed by Schutter on December 7, 2005 and by Herskowitz on December 15, 2005.  (Doc. 10 at 9; Doc. 90 at 2-3; Doc. 105-2 at Ex. C).  It specified that the purchase price was to be $1.6 million and that Schutter was to place an initial deposit of $100,000 into an escrow account maintained by Banks at Bryn Mawr Trust Company.  (Doc. 10 at 10; Doc. 105-2 at 2 & Ex. C ¶ 3(B)).  Schutter paid the $100,000 to Banks for deposit in a timely manner.  (Doc. 10 at 10; Doc. 105-2 at 2).

3

Sometime after that payment was made, in or around January 2006, Schutter discovered, allegedly for the first time, that the Hostel's "certificate of occupancy" issued by the City of Philadelphia authorized the usage of only 54 beds as opposed to the 70 beds as were being used by Herskowitz. (Doc. 90 at 4; Doc. 10 at 11; Doc. 105-2 at 3). Upon discovering this information, Schutter sought to cancel the Agreement. Herskowitz agreed. (Doc. 10 at 11; Doc 105-2 at 3). They memorialized this agreement in a document entitled "Termination Agreement" which instructed that "all escrow monies held by Philip Banks shall be released immediately to the Buyer [Schutter]." (Doc. 10 at 4 (admitting complaint ¶ 22, which pleaded the contents of Termination Agreement, "as stated"); Doc. 105-2 at Ex. D).

Schutter then contacted Banks and informed him of the Termination Agreement and the agreed release of the escrow funds. (Doc. 10 at 11; Doc 105-2 at 3). Banks, however, did not release the funds, but rather prepared a different release document purporting to memorialize the parties' intention with respect to cancelling the Agreement and releasing the escrow funds with permission granted to Banks to retain $12,000 of the funds for his services and to remit $600 to Attorney Frank J. Marcone for his legal services. (Doc. 10 at 11; Doc. 90 at 5; Doc. 105-2 at 11-12 & Exs. E & F).[3] Banks asserts that Schutter requested that Banks draft this second release form (Doc. 10 at 11); Schutter denies this and on the other hand asserts that Banks drafted the second release on his own initiative (Doc. 105-2 at 3). In any event, Schutter did not agree to these fees and Banks, in turn,

---

[3] As Exhibit E of his motion, Plaintiff attaches a document that purports to be Banks's draft release. Banks does not dispute the authenticity of this document. In this document, Banks asserts that he is entitled to $12,000 as "remuneration of his services" along with $600 for the legal services of Frank J. Marcone. In his answer and counterclaim, however, Banks asserts that he actually billed Schutter $14,000 "for the services he rendered" along with $2,600 in legal fees. (Doc. 10 at 11-12 ¶ 13). The reason for this discrepancy is unclear.

refused to release any portion of the escrow funds.  (Doc. 10 at 12; Doc. 105-2 at 3).  This action followed.

## III.    Legal Standard

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of demonstrating the absence of a genuine issue of any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has done so, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  Rather, the responding party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate.  *Matsushita*, 475 U.S. at 587 (citation omitted).  Finally, only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted).  Factual disputes which are "irrelevant or unnecessary" to a proper consideration of the case under applicable law are insufficient to preclude a grant of summary judgment.  *See id.*

## IV.    Discussion

In support of his motion, Schutter argues that there is no contractual or legal basis upon which Banks would be entitled to a fee or commission for services he rendered or to reimbursement

for the asserted $600 fee for the legal services of Attorney Frank J. Marcone.  We address these two claims separately and in turn.

### A.    Commission for Services Performed

Banks has asserted in Count One of his counterclaim that Schutter "is indebted to Banks for a commission" as a result of services performed by Banks pursuant to the Authorization.  (Doc. 10 at 13).  Plaintiff, however, argues that Banks's entitlement to such a fee is precluded under Pennsylvania law, which requires that any agreement between a licensed broker and his principal as to fees and services be contained in a form of writing not present here.  Plaintiff argues that because there was no such writing, he is entitled to judgment as a matter of law.

In support of his assertion, Plaintiff points to several statutory authorities.  He first notes that 63 P.S. § 455.606a provides, in pertinent part:

> § 455.606a. Duties of licensee[4] generally
> . . . .
> (b) (1) A licensee may not perform a service for a consumer of real estate services for a fee, commission or other valuable consideration paid by or on behalf of the consumer unless the nature of the service and the fee to be charged are set forth in a written agreement between the broker and the consumer that is signed by the consumer.  This paragraph shall not prohibit a licensee from performing services before such an agreement is signed, but the licensee is not entitled to recover a fee, commission or other valuable consideration in the absence of such a signed agreement.

The plain language of this statutory provision is elaborated upon by 63 P.S. § 455.608a, which specifies in pertinent part:

---

[4] Under 63 P.S. § 455.201 of the Real estate Licensing and Registration Act, a licensee is defined as "[a] person who holds a standard or reciprocal license."  Given that Banks admits that he "is a licensed Real Estate Broker, licensed in the Commonwealth of Pennsylvania" (Doc. 10 at 10), we find this provision to apply to him.

> § 455.608a. Written agreement with broker
> An agreement between a broker and a principal, or any agreement
> between a broker and a consumer whereby the consumer is or may be
> committed to pay a fee, commission or other valuable consideration,
> that is required to be in writing by section 606.1 [63 P.S. §
> 455.606a.], shall be signed by the consumer and shall identify the
> services to be provided and the fee to be paid, if any.  The agreement
> shall also contain the following information which shall be disclosed
> in the manner and method the [State Real Estate Commission] shall
> establish by regulation:

Pursuant to this statutory authority, the State Real Estate Commission has, in turn,

promulgated the following provisions regarding written agreements:

> 49 Pa. Code § 35.281. Putting contracts, commitments and
> agreements in writing.
> (a) All contracts, commitments and agreements between a broker, or
> a licensee employed by the broker, and a principal or a consumer who
> is required to pay a fee, commission or other valuable consideration
> shall be in writing and contain the information specified in § 35.331
> [relating to written agreements generally].
> . . . .
>
> § 35.331. Written agreements generally.
> (a) A written agreement between a broker and a principal or between
> a broker and a consumer whereby the consumer is or may be
> committed to pay a fee, commission or other valuable consideration
> shall contain the following:

These provisions, taken as a whole, make it unmistakably clear that a real estate broker

licensed in Pennsylvania is required to obtain a written agreement, signed by the consumer and

specifying the services to be performed along with an assurance that the agreement as to the fees and

services was "the result of negotiations" between the broker and the customer.  *See* 63 P.S. §§

455.606a, 455.608a; 49 Pa. Code §§ 35.281, 35.331.  Accordingly, where there is no such signed

written agreement, a broker may not recoup any "fee, commission or other valuable consideration."

*See id.*

7

The writing upon which Banks relies in making his claim, and the only writing that deals with the relationship between Schutter and Banks, is the November 30, 2005 Authorization which provides, in full, as follows:

> I, Stephen Schutter, hereby authorize Philip Banks Real Estate to represent me in the purchase of the property known and numbered as 32 Bank Street, City of Philadelphia, State of Pennsylvania. I request that you draft an agreement of sale for the premises and such other professional services as shall be necessary attendant [sic] to the above transaction. The agreement shall include transfer of all existing telephone numbers associated with "The Bank Street Hostel". Further included with the above transaction will be the Internet listing(web site) www.BankStreetHostel.com, or any variant of such listing relating to the property. Transfer shall include all licenses associated with 32 Bank Street, together with a clear, unrestricted Certification of Operation, from the City of Philadelphia, as well as any and all regulatory authorities having jurisdiction for the property, necessary to conduct business for a seventy bed Hostel. (70).

(Doc. 105-2 at Ex. B; *see* Doc. 10 at p. 2 ¶ 12 & p. 9 ¶ 47 (citing contents of document and quoting language therein); Doc. 90 at 2 (same)). It is clear on the face of the document that the Authorization, although written, signed, and containing a description of the general service to be performed by Banks, contains no provision purporting to specify whether Banks would be entitled to a fee or commission as a result of the services performed or how any such fee or commission would be determined, or whether any such fee or commission was the product of a negotiated agreement between Banks and Schutter. Accordingly, there is no genuine issue of material fact as to whether there was a signed written agreement which comported with applicable Pennsylvania law. Quite simply, there was not.

Further, while the parties may disagree about the substance of any unwritten agreement between them as to any fee or commission (*compare* Doc. 10 at 3 ¶¶ 13, 14 *with* Doc. 105-2 at 2),

8

it is clear that any unwritten understanding would not satisfy the strict requirement that any such agreement be contained in a detailed signed writing.  This factual dispute is thus not one "that might affect the outcome of the suit under the governing law" and is, in turn, both "irrelevant" and "unnecessary" to our consideration of this motion.  *Anderson*, 477 U.S. at 248.  Accordingly, Schutter is entitled to judgment on this claim as a matter of law, and we shall **GRANT** his motion as to this aspect of Count I of Banks's counterclaim.

> B.     **Entitlement to Legal Fees Incurred in Preparing the Agreement of Sale and Release Document**

In his counterclaim, Banks asserts that he was instructed by Schutter "to procure a release of all claims from seller" in January 2006 after Schutter notified him that "he had decided not to complete the transaction" given what he had learned about the number of beds approved for the property.  (Doc. 10 at 11).  According to Banks, he then "retained the services of counsel and procured a Release of All [sic] claims from the seller and delivered the same to Schutter."  (*Id.*).  Banks states that he then billed Schutter for his services "plus two thousand and six hundred ($2,600) dollars for legal fees incurred in following the instructions of Schutter."  (Doc. 10 at pp. 11-12).

While the counterclaim does not identify the name of the attorney who was to be the recipient of these legal fees, the summary judgment record contains an invoice from Frank J. Marcone, Esquire dated January 30, 2006 reflecting a "Bill for Services: . . . $600" related to the cancellation of Agreement, the preparation of a release from obligations under the Agreement and the preparation of a release of agency obligations and distribution of escrow funds.  (*See* Doc. 105-2 at Ex. F; *see also* Doc. 90 at 17).

9

Schutter asserts that those fees are not compensable because they were performed in violation of a September 10, 2004 order of the Pennsylvania Supreme Court suspending Mr. Marcone from the bar of the Commonwealth for five years.  *See Office of Disciplinary Counsel v. Marcone*, 579 Pa. 650, 858 A.2d 533 (2004).   Banks identifies those fees as having been earned for services "following the instructions of Schutter" and pertaining to the termination of the Agreement.   They include the $600 invoice and time referred to in undated entries identified in Banks's supplemental answers to interrogatories (Doc. 90) clearly associated with the early 2006 time period.   The entries involved are:

> Original interview of Philip re: how he will get paid . . . 2.5 hours
>
> Preparation of and review of Agreement . . . 1.0 hour
>
> Consultation with Philip re: how to address the issue of returning the deposit money . . . 1.5 hours

(Doc. 90 at 17).  At the $450 rate which was charged by Mr. Marcone, this comes to $2,250 which, when added to the $600 January 30 invoice, comes to $2,850, slightly in excess of the $2,600 legal fees referred to in Count One of the counterclaim.

In the same supplemental answers to interrogatories, Banks also references Mr. Marcone on three entries in February and March 2006 in response to interrogatory no. 1 which calls for Banks to "set forth in detail every communication which you had with any party to this action . . . or with any other person on behalf of a party or for the benefit of a party relative to the subject matter of this litigation."  (Doc. 90 at 1).  The entries refer to a February 7, 2006 e-mail from Banks to Schutter where Banks advised that "he had no problem dealing with Gallagher [Schutter's lawyer]" and that "if there was any problem, please have Gallagher call Marcone who represented him."  (Doc. 90 at

5).  Banks further states in the same answers that "after repeated efforts by Banks and Marcone to resolve the issues, on March 10, 2006, Gallagher e-mailed Banks asking him to tell Marcone that he would be out of the office with the winter flu and he would contact them."  (Doc. 90 at 6).  The answers further state that on "March 29, 2006, Gallagher responded to a letter sent to him by Marcone on March 21, 2006."  (Doc. 90 at 6).

We accept that Mr. Marcone, despite his suspension from the bar of the Commonwealth, has been, during the relevant time periods, permitted to practice before this Court.  *See In Re Frank J. Marcone*, 95-Misc.-71 (E.D. Pa. Oct. 20, 2005) (Letter dated September 19, 2005 from Chief Judge James T. Giles to Mr. Marcone stating that ". . . you have heretofore been permitted by Order to practice in this court and that Order has neither been revoked or modified.").

What Banks is unable to establish, however, is that the professional services rendered by Mr. Marcone in January through March of 2006 can be said to be permissible practice before the United States District Court for the Eastern District of Pennsylvania.  There was no litigation ongoing in this or any other court pertaining to this matter until October 2006 when Schutter initiated this suit against both Herskowitz and Banks in the United States District Court for the District of Columbia. More importantly, this matter was not lodged with our Court until September 13, 2007 upon its transfer from the District of Columbia.  It is apparent that the activity engaged in by Mr. Marcone related to this matter in the first three months of 2006 cannot be said to be permissible practice before this Court.

Under the Pennsylvania Rules of Disciplinary Enforcement, which cover all attorneys admitted to practice in Pennsylvania, Mr. Marcone is considered a "formerly admitted attorney" to the extent that he is under suspension.  Pa. R.D.E. 102.  As such, he is prohibited from "engaging

in any form of law related activities . . . ." Pa. R.D.E. 217(j).  More specifically, Pa. R.D.E. 217(j)(4)

precludes him from:

> (v) having any contact any with clients either in person, by telephone
> or in writing except as provided in paragraph (3) [not applicable];
>
> (vi) rendering legal consultation or advice to a client.

We conclude that the activities for which Mr. Banks seeks payment from Schutter are precluded

activities and that he was prohibited from performing these tasks under Pennsylvania law.

It follows that he is therefore prohibited from recovering any fees for the performance of

these services.  It is well established under Pennsylvania law that "the Courts will not lend their aid

to the enforcement of unlawful contracts which are founded upon transactions in violation of a public

policy declared by the legislature."  *F.F. Bollinger Co. v. Widmann Brewing Corp.*, 339 Pa. 289

(1940).  *See also Davis v. Pittsburgh Nat'l Bank,* 548 A.2d 1326, 1329 (Pa. Commw. 1988) (citing

*F.F. Bollinger Co.* for same proposition); *Brickman Group v. Cgu Ins. Co.*, 56 Pa. D. & C.4th 491,

501 (2002) (same).  Similarly, we will not aid the enforcement of a contract for services prohibited

by the promulgation of the disciplinary rules enacted by the Pennsylvania Supreme Court.  Schutter's

motion for summary judgment as to this aspect of Banks' claim is **GRANTED**.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN SCHUTTER                    :        CIVIL ACTION
                                    :
            Plaintiff               :
                                    :
      v.                            :        NO.  07-3823
                                    :
DAVID HERSKOWITZ and                :
PHILIP BANKS                        :
                                    :
            Defendants              :

## **ORDER**

AND NOW, this 30th  day of June, 2008, upon consideration of Plaintiff's "Motion for

Summary Judgment as to Count One of Counterclaim of Defendant Phillip [sic] Banks" dated June

9, 2008 (Doc. 105) and with no response thereto from Defendant Philip Banks's, **IT IS HEREBY**

**ORDERED THAT** Plaintiff's motion is **GRANTED** and **JUDGMENT BE ENTERED** in

Plaintiff's favor and against Defendant Banks as to Defendant Banks's counterclaim.


                        BY THE COURT:



                         /s/ David R. Strawbridge
                        DAVID R. STRAWBRIDGE
                        UNITED STATES MAGISTRATE JUDGE