IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO.  07-3823 |
| | : | |
| DAVID HERSKOWITZ and | : | |
| PHILIP BANKS | : | |
| | : | |
| Defendants | : | |

FILED JUL 11 2008

### <u>MEMORANDUM OPINION</u>

DAVID R. STRAWBRIDGE                                                July 11, 2008
UNITED STATES MAGISTRATE JUDGE

On July 1, 2008, this Court entered an order (Doc. 131) denying a "Motion to File a [First]

Amended Counterclaim" (the "Motion for Leave") filed by Defendant Philip Banks ("Banks") (Doc.

112) and granting a "Motion In Limine to Exclude Certain Documentary and Testimonial Evidence"

(the "Motion to Exclude") filed by Plaintiff Stephen Schutter (alternatively "Schutter" or "Plaintiff")

(Doc. 59).  We now provide our analysis pertinent to that order and to the accompanying order for

trial of the same date.

ENTERED

JUL 11 2008

CLERK OF COURT

### I.        Introduction

Schutter brought this action against Banks and Defendant David Herskowitz ("Herskowitz").

The complaint was originally filed in the United States District Court for the District of Columbia,

but on July 5, 2007 was transferred to this District pursuant to 18 U.S.C.  § 1404(a) and (c) and

assigned to the Honorable Anita B. Brody.[1]  On April 17, 2008, the parties consented to Magistrate

---

[1]  Subject matter in this case is predicated upon diversity of citizenship under 28 U.S.C. §
1332.  Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court must apply the
substantive laws of its forum state in diversity actions.  *See Borse v. Piece Goods Shop, Inc.*, 963
(continued...)

Judge jurisdiction and the matter was transferred to this court. (Doc. 75).

By his complaint, Schutter, as a prospective buyer of a property in Philadelphia, alleged breach of contract against the prospective seller, Herskowitz (Count I); fraudulent inducement to contract against Herskowitz and Banks, a broker whose services were retained by Schutter (Count II); breach of fiduciary duty against Banks alone (Count III); unjust enrichment against both Herskowitz and Banks (Count IV); and fraud and misrepresentation also against both Herskowitz and Banks (Count V). In pursuit of these claims, Plaintiff served Interrogatories and Requests for Production on Banks on January 18, 2008, a month before Judge Brody's February 18, 2008 discovery deadline. (Doc. 44 at 2). On March 4, 2008, having received no responses from Banks, Plaintiff filed a "Motion to Compel Responses to Discovery Requests and for Sanctions" (Doc. 44). Banks did not respond. On March 17, 2008, the date of Judge Brody's deadline for motions *in limine* (*see* Doc. 11), Plaintiff filed his Motion to Exclude (Doc. 59). Again, Banks did not respond.

Following upon a telephone conference with the parties held on April 28, 2008 (*see* Doc. 79) and without yet ruling on Schutter's Motion to Exclude, we entered an order on May 7, 2008 directing that Banks provide discovery responses within 10 days. (Doc. 81). Plaintiff has informed us that, as of his June 6th filing (Doc. 97), Banks had failed to comply with the Court's order and has never responded to Plaintiff's discovery requests. Banks has not contradicted this assertion. Noting this persistent lack of compliance and the rapidly approaching trial date, we granted Plaintiff's motion by our order issued on July 1, 2008. (Doc. 131).

Our July 1 order also disposed of Bank's Motion for Leave. By this motion, Banks sought

---

[1](...continued)
F.2d 611, 614 (3d Cir. 1992). Accordingly, we apply Pennsylvania law in deciding all substantive legal issues pertaining to this case.

to re-assert the same five counts set out in his original counterclaim and add for the first time a *quantum meruit* claim as part of his first Count, along with a new Count Six setting out a claim for attorneys fees with the same bases as Counts Two and Three.  The original counterclaim, filed with his answer to the complaint on November 20, 2007, set out claims for services rendered, attorneys fees, libel and slander, and punitive damages.  (Doc. 10).  On February 5, 2008, Plaintiff filed a motion to dismiss Counts Two through Five of this counterclaim.  (Doc. 22).  Banks's response to this motion was due on February 22, 2008, but on March 12, 2008, upon advice that no response had been filed, Judge Brody informed the parties that she considered the motion unopposed and would grant it on that basis.  (*See* Doc. 68 at 3; Doc. 72 at 2; Doc. 65).  She entered her Order to that effect on March 18, 2008.  (Doc. 62).  On March 25, 2008, Banks filed a "Motion to Vacate" (Doc. 68) that order, which we denied on June 6, 2008 (Doc. 99).  The only remaining count, Count One which asserted a claim for "a commission as acting as an agent" and reimbursement for hiring counsel "for the purposes of preparing and procuring releases" (Doc. 10 at p. 13, ¶¶ 24, 25), was disposed of by our grant of Plaintiff's motion for summary judgment on June 30, 2008.  (Doc. 129).  By our order of July 1, 2008 (Doc. 131), we refused to permit Banks the opportunity to revive these claims.  We set out our analysis below.

## II.    Factual Background[2]

This matter arises out of an abandoned property transaction.  The first contact between the parties was in November 2005, when Schutter contacted Herskowitz regarding the potential sale of the Bank Street Hostel (the "Hostel"), a property located at 32 Bank Street in Philadelphia that was

---

[2] The recitation of facts contained in this section is comprised of undisputed facts as found in the various pleadings and dispositive motions which have already been disposed of.

3

owned by Herskowitz.  (Doc. 105-2 at 1; Doc. 10 at 10-11).  Schutter at some point came to

understand that the Hostel operated with a capacity of 70 beds.  (Doc. 90 at 4; Doc. 105-2 at 1-2).

Apparently based on this understanding and after some further discussion with Herskowitz, Schutter

decided to purchase the Hostel.  (Doc. 10 at 10-11; Doc. 90 at 4; Doc. 105-2 at 1-2;).

To facilitate the sale, Schutter procured the services of Banks, a real estate broker licensed

in the Commonwealth of Pennsylvania and trading as Philip Banks Real Estate.  (Doc. 10 at 3, 5, 10;

Doc. 105-2 at 1-2).  By a document signed on November 30, 2005 (the "Authorization"), Schutter

authorized Banks to represent him in the purchase of the Hostel and engaged him to "draft an

agreement of sale for the premises and such other professional services as shall be necessary

attendant [sic] to the above transaction."  (Doc. 10 at 3; Doc. 90 at 2; Doc. 105-2 at 1-2 & Ex. B).

Although the Authorization further specified that the transaction was to include "any and all

regulatory authorities having jurisdiction for the property, necessary to conduct business for a

seventy bed Hostel. (70)," it was silent on the issue of any fees or commission to be paid by Schutter

to Banks for his services.  (*See* Doc. 105-2 at Ex. B;  *see also* Doc. 10 at p. 2 ¶ 12 & p. 9 ¶ 47 (citing

contents of document and certain specific language); Doc. 90 at 2 (same)).  The parties disagree

about the substance of any unwritten agreement between them as to any such fees or commission.

(*Compare* Doc. 10 at p. 3 ¶¶ 13, 14 *with* Doc. 105-2 at 2).

Banks then drafted an Agreement of Sale (the "Agreement").  It was signed by Schutter on

December 7, 2005 and by Herskowitz on December 15, 2005.  (Doc. 10 at 9; Doc. 90 at 2-3; Doc.

105-2 at Ex. C).  It specified that the purchase price was to be $1.6 million and that Schutter was to

place an initial deposit of $100,000 into an escrow account maintained by Banks at Bryn Mawr Trust

Company.  (Doc. 10 at 10; Doc. 105-2 at 2 & Ex. C ¶ 3(B)).  Schutter paid the $100,000 to Banks

4

for deposit in a timely manner. (Doc. 10 at 10; Doc. 105-2 at 2).

Sometime after that payment was made, in or around January 2006, Schutter discovered, allegedly for the first time, that the Hostel's "certificate of occupancy" issued by the City of Philadelphia authorized the usage of only 54 beds as opposed to the 70 beds as were being used by Herskowitz. (Doc. 90 at 4; Doc. 10 at 11; Doc. 105-2 at 3). Upon discovering this information, Schutter sought to cancel the Agreement. Herskowitz agreed. (Doc. 10 at 11; Doc 105-2 at 3). They memorialized this agreement in a document entitled "Termination Agreement" which instructed that "all escrow monies held by Philip Banks shall be released immediately to the Buyer [Schutter]." (Doc. 10 at 4 (admitting complaint ¶ 22, which pleaded the contents of Termination Agreement, "as stated"); Doc. 105-2 at Ex. D).

Schutter then contacted Banks and informed him of the Termination Agreement and the agreed release of the escrow funds. (Doc. 10 at 11; Doc 105-2 at 3). Banks, however, prepared a release document purporting to memorialize the parties' intent to cancel the Agreement and release the escrow funds with permission granted to Banks to retain $12,000 of the fund for his professional services and to remit $600 to Attorney Frank J. Marcone for his legal services. (Doc. 10 at 11; Doc. 90 at 5; Doc. 105-2 at 11-12 & Exs. E & F).[3] Schutter did not agree to these fees and Banks, in turn, refused to release any portion of the escrow funds. (Doc. 10 at 12; Doc. 105-2 at 3). This action followed.

---

[3] As Exhibit E of his motion, Plaintiff attaches a document that purports to be Banks's draft release. Banks does not dispute the authenticity of this document. In this document, Banks asserts that he is entitled to $12,000 as "remuneration of his services" along with $600 for the legal services of Frank J. Marcone. In his answer and counterclaim, however, Banks asserts that he actually billed Schutter $14,000 "for the services he rendered" along with $2,600 in legal fees. (Doc. 10 at 11-12 ¶ 13). The reason for this discrepancy is unclear.

III.   **Relevant Procedural History**

A consideration of both Banks's Motion for Leave and Schutter's Motion to Exclude must

be undertaken against the backdrop of this case's difficult procedural history, and the repeated

failures on the part of Banks and his counsel to respond to discovery requests and motions, to comply

with the Local and Federal Rules of Civil Procedure, to adhere to filing deadlines, and to comply

with direct court orders imposing sanctions.   A summary of dates and deadlines pertinent to the

motions follows:

1.   On October 27, 2006, Plaintiff initiates this action in the United States District
Court for the District of Columbia. (Case No. 06-1846, Doc. 1).

2.   On September 13, 2007, this Court's clerk's office receives the certified record
upon the order transferring the matter to this district.  (Doc. 1).

3.   On November 19, 2007, Judge Brody holds a Rule 16 conference. (Doc. 13).

4.   On November 20, 2007, Herskowitz serves Banks with discovery requests.
(*See* Doc. 19).

5.   On November 20, 2007, Banks files an answer, counterclaim against Schutter,
and crossclaim against Herskowitz.  (Doc. 10).

6.   On November 29, 2007, Judge Brody enters her scheduling order (Doc. 11)
setting out:
a February 18, 2008, discovery deadline;
a March 3, 2008, dispositive motion deadline;
a March 3, 2008, Plaintiff pretrial memo deadline;
a March 17, 2008, motion *in limine* deadline;
a March 17, 2008, Defendant pretrial memo deadline; and
a April 3, 2008, trial pool date.

7.   On December 24, 2007, Banks's responses to Herskowitz's discovery requests
are due.  (*See* Doc. 19).  They are not served.

8.   On January 16, 2008, Herskowitz files and serves Banks with a first "Motion
to Compel Discovery." (Doc. 19).

9.  On January 18, 2008, Schutter serves Banks with discovery requests. (*See* Doc. 44).

10. On February 3, 2008, Banks's response to Herskowitz's motion to compel discovery is due. None is filed.

11. On February 5, 2008, Schutter files a motion to dismiss Counts II-V of Banks's counterclaim. (Doc. 22).

12. On February 6, 2008, Judge Brody orders Banks to show cause by February 19, 2008 why she should not grant Herskowitz's motion to compel discovery. (Doc. 24).

13. On February 18, 2008, discovery closes. (*See* Doc. 11).

14. On February 19, 2008, Banks's response to Judge Brody's show cause order (Doc. 24) is due.  No response is filed.

15. On February 20, 2008, Banks's responses to Schutter's discovery requests are due. (*See* Doc. 44).  They are not served.

16. On February 21, 2008, Banks's response to Schutter's motion to dismiss Counts II-V of Banks's counterclaim is due. No response is filed.

17. On February 25, 2008, Judge Brody grants Herskowitz's motion to compel discovery as to Banks due to Banks's failure to respond by February 19, 2008. (Doc. 28).

18. On February 28, 2008, Banks files a response to Herskowitz's interrogatories. Both the response and the certificate of service are unsigned in violation of Fed.R.Civ.P. 26(g). It is dated February 20 and filed on February 28. (Doc. 32). Schutter receives these responses on February 27, 2008. (Doc. 44).

19. March 3, 2008: deadline for dispositive motions under Judge Brody's scheduling order.

20. On March 4, 2008, having received no response to his discovery requests, Schutter files a motion to compel Banks to comply with discovery requests and seeks monetary sanctions. (Doc. 44).

21. On March 10, 2008, Herskowitz files a motion for sanctions against Banks for failure to comply with court order of February 25, 2008 compelling answers to interrogatories and responses to requests for production of documents. (*See*

Doc. 47 for itemization of deficiencies).

22.   On March 11, 2008, Banks responds to the joint motion filed by Schutter and Herskowitz on March 5, 2008 to strike Docs. 30-35 which had been filed on February 27-28, 2008. (Doc. 49). The main document of his response is unsigned in violation of Fed.R.Civ.P. 11(a) and Local Rule of Civ.P. 5.1.2.

23.   On March 12, 2008, Banks files a motion for summary judgment against Schutter and Herskowitz. It is filed nine days after Judge Brody's deadline for filing of dispositive motions. It is unsigned in violation of Fed.R.Civ.P. 11(a) and Local Rule of Civ.P. 5.1.2. (Doc. 50).

24.   On March 12, 2008, a status conference is held before Judge Brody where she informs the parties she will grant Schutter's motion to dismiss Banks's counterclaim Counts II-V.

25.   On March 13, 2008, Banks files a response to Schutter's motion to dismiss Counts II-V of Banks's counterclaim. It is twenty-two days late. It is unsigned in violation of Fed.R.Civ.P. 11(a) and Local Rule of Civ.P. 5.1.2. (Doc. 51).

26.   On March 17, 2008, both Herskowitz (Doc. 58) and Schutter (Doc. 60) file motions to disqualify Banks's counsel as trial counsel. (Doc. 58). The issue raised concerns Banks's counsel's role as a potential fact witness. These motions are denied on June 9, 2008. (Doc. 107).

27.   On March 17, 2008, both Herskowitz (Doc. 57) and Schutter (Doc. 59) file motions *in limine* to exclude evidence.

28.   On March 17, 2008, confirming her statements at the March 12, 2008 status conference, Judge Brody enters an order granting Schutter's motion to dismiss Counts II-V of Banks's counterclaim. In a footnote, Judge Brody notes the motion is granted because Banks failed to respond. (Doc. 62).

29.   March 17, 2008: Deadline for motions in limine and defendants' pretrial memos. Banks files no limine motions and fails to file his pretrial memo.

30.   March 21, 2008: Deadline for response to Schutter's motion to compel Banks to comply with discovery requests. (Doc. 44). None is filed.

31.   On March 21, 2008, Schutter and Herskowitz file a joint motion to strike Banks's motion for summary judgment in his favor. They assert that Banks's motion was filed nine days after the deadline, and that, in light of the subsequent dismissal of Counts II-IV, Banks was seeking judgment on claims

that no longer existed.  (Doc. 64).

32.   On March 24, 2008, Banks files a motion to recuse Judge Brody and remand to another judge.  The motion is unsigned in violation of Fed.R.Civ.P. 11(a) and Local Rule of Civ.P. 5.1.2, but the memo in support of the motion is signed.  (Doc. 66).

33.   On March 25, 2008, Banks files a "Motion to Vacate" the order granting as unopposed Schutter's motion to dismiss Counts II-V of the counterclaim. Both motion and memorandum of law are unsigned in violation of Fed.R.Civ.P. 11(a) and Local Rule of Civ.P. 5.1.2.  (Doc. 68).

34.   April 3, 2008: Deadline for Banks to respond to Motions to Exclude.  None is filed.

35.   On April 8, 2008, Banks files a motion seeking extension of the discovery period and time to file dispositive motions.  (Doc. 73).  The motion is unsigned in violation of Fed.R.Civ.P. 11(a) and Local Rule of Civ.P. 5.1.2.

36.   On May 6, 2008, this Court denies as moot Banks's motion (Doc. 66) for Judge Brody's recusal and remand.  (Doc. 80).

37.   On May 7, 2008, we grant Schutter's motion to compel discovery (Doc. 44) and grant sanctions directing that by May 17, 2008, Banks must answer Schutter's interrogatories and produce all documents responsive to Schutter's requests for production of documents; Banks must compensate Schutter for the reasonable fees incurred in seeking the order; and Schutter must provide the Court with an appropriate hourly rate and the number of hours he has expended in seeking the order.  (Doc. 81).

38.   On May 13, 2008, in a memorandum opinion granting Herskowitz's motion for sanctions and denying in part and granting in part Banks's motion seeking an extension of deadlines, we advised the parties to undertake their "obligations under Fed.R.Civ.P. 26(e) to update their Fed.R.Civ.P. 26(a) disclosures (including those referred to in Fed.R.Civ.P. 26(a)(3)) as well as all other discovery responses."  We also advise Banks that should he fail to comply with the Court's order in a satisfactory manner, Fed.R.Civ.P. 37(b)(2)(A) sanctions may be imposed.  (Doc. 86).

39.   On May 14, 2008, following a telephone conference with all counsel held on May 13, 2008, a scheduling order dated May 13, 2008 is docketed.  (Doc. 85).  The order sets out that by:
        June 2, 2008, Pre-trial disclosures are due;

9

June 9, 2008, dispositive motions, are due;
June 9, 2008, any motions *in limine* are due;
June 16, 2008, objections to pre-trial disclosures are due;
June 16, 2008, objections to any dispositive motions are due;
June 16, 2008, all responses to motions *in limine* are due; and
July 16, 2008, trial by jury shall commence.

40. On May 20, 2008, pursuant to this Court's May 7, 2008 order (Doc. 81), Banks's answers to Schutter's Interrogatories and production of all documents responsive to Schutter's Requests for Production of Documents are due. No responses are served.

41. On May 29, 2008, this Court enters an order directing Banks to pay Schutter $796.90 in attorneys' fees and expenses by June 13, 2008. (Doc. 89).

42. On June 2, 2008, Banks files supplemental responses to Herskowitz's interrogatories. The responses are signed by Philip Banks, but not by counsel, in violation of Fed.R.Civ.P. 26(g). (Doc. 90).

43. June 2, 2008: Updated Fed.R.Civ.P. 26(a)(3) disclosures are due per the Court's May 17, 2008 order.

44. On June 3, 2008, Banks files his Fed.R.Civ.P. 26(a)(3) disclosures. They are one day late.

45. On June 5, 2008, Banks files a motion for Rule 11 sanctions against Herskowitz, Schutter, and all of their counsel, seeking disqualification of counsel and reference to the appropriate state disciplinary boards. (Doc. 95). The motion is unsigned in violation of Fed.R.Civ.P. 11(a) and Local Rule of Civ.P. 5.1.2.

46. On June 5, 2008, Schutter files objections to witnesses and documents identified in Banks's pretrial memorandum. (Doc. 96.)

47. On June 6, 2008, Schutter files a motion (Doc. 97) for order to show cause why Banks should not be held in contempt for failure to comply with our order compelling his discovery responses (Doc. 81). These responses were due May 20, 2008, but Banks did not supply them. On May 13, 2008, during a telephone conference, counsel for Banks had stated his responses would be served that day. Schutter's motion filed on June 6, 2008 (Doc. 97) represents that responses had not yet been served.

48. On June 6, 2008, Schutter files a motion to strike Banks's motion for Rule 11

sanctions. (Doc. 98).

49.   On June 6, 2008, this court denies Banks's motion to vacate Judge Brody's dismissal of counterclaim Counts II-V. (Doc. 99).

50.   On June 9, 2008, Herskowitz files a second motion for sanctions against Banks asserting that Banks again provided deficient discovery responses and failed to provide an attorney signature as required by Fed.R.Civ.P. 26(g). (Doc. 103).

51.   June 9, 2008: Deadline for the filing of dispositive motions and motions *in limine* under our order of May 13, 2008. (Doc. 85).

52.   On June 10, 2008, this court grants as unopposed Schutter's and Herskowitz's joint motion to strike Banks's motion for summary judgment against Schutter and Herskowitz on the claims for attorney's fees and costs. (Doc. 109). No response to this motion had been filed as of the entry of our July 1, 2008 order.

53.   June 13, 2008: Deadline for Banks to comply with this Court's order of May 29, 2008 (Doc. 89) to pay Schutter $796.90 in attorneys' fees and expenses. (Doc. 89). Banks had not complied with the order.

54.   On June 16, 2008, Schutter files a motion for order to show cause why Banks should not be held in contempt for failure to comply with court order to pay attorneys' fees and costs by June 13, 2008. (Doc. 111).

55.   On June 16, 2008, Banks files a motion for leave to file first amended counterclaim. The motion, memo, and proposed amended counterclaim are all unsigned in violation of Fed.R.Civ.P. 11(a) and Local Rule of Civ.P. 5.1.2. (Doc. 112).

56.   June 16, 2008: Deadline for objections to 26(a) disclosures under our order of May 13, 2008. (Doc. 85).

57.   On June 17, 2008, Banks files motions *in limine* seeking to prohibit reference to criminal records and seeking to limit the scope of Judge Brody's dismissal of his counterclaims. (Docs. 116, 118). These motions were filed eight days late.

58.   On June 18, 2008, Banks files a response (Doc. 119) in opposition to Schutter's motion for order to show cause (Doc. 111) on the contempt issue. Banks asserts for the first time that any sanctions directed against him flow

11

automatically to Schutter via the "attorneys fee" language in Paragraph 21(B) of the Agreement. He does not address his failure to provide discovery. (Doc. 119).

59.   June 23, 2008: Deadline for response to Schutter's motion (Doc. 98) to strike Banks's motion for Rule 11 sanctions (Doc. 95). None is filed.

60.   June 26, 2008: Deadline for response to Schutter's motion for summary judgment (Doc. 105) on the remaining counterclaim count and partial summary judgment as to Count III of his complaint. None is filed.

It was upon consideration of this procedural history, together with the papers filed by the parties that we entered our order of July 1, 2008 (Doc. 131). We now proceed with our analysis.

## IV.   Denial of Leave to Amend

### A.   Legal Standards

Under Fed.R.Civ.P. 15(a)(1), a party may amend its pleading once as a matter of course prior to being served with a responsive pleading. Where a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed.R.Civ.P. 15(a)(2). A court reviewing a motion for leave is to "freely give leave when justice so requires." *Id.*

Nonetheless, a court is not required to grant leave to amend in every instance where leave is sought. The decision to grant or deny an opportunity to amend, rather, "is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Court has specified that in determining whether "justice so requires," a district court should weigh various factors such as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." before denying a litigant leave to amend. *Id.* We proceed to discuss bad faith and prejudice but find it appropriate

to do so only after addressing the question of futility.

**B.      Futility**

In determining whether a sought amendment is or may be "futile," the Third Circuit has specified that, generally, "[f]utility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). An amendment is also futile where the claim or claims would not withstand a motion for summary judgment. *See, e.g., Naluan v. Purfield*, No. 05-6186, 2006 U.S. Dist. LEXIS 80654, *6-7 (E.D. Pa. Nov. 2, 2006) (citing *Wilson v. American Trans Air*, 874 F.2d 386, 392 (7th Cir. 1989)); *Sabatini v. Reinstein*, No. 99-2393, 2001 U.S. Dist. LEXIS 11008, *10 (E.D. Pa. July 10, 2001) (same); *Borkon v. Saidel*, No. 95-582, 1995 U.S. Dist. LEXIS 11707, *7 (E.D. Pa. July 10, 2001) (same); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001) (Court may "deny the amendment as futile when the evidence in support of the [movant's] proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed. R. Civ. P. 56(c)."). Where amendment of a pleading would prove futile, a district court need not provide a litigant leave to do so. *See, e.g., Panton v. B.O.P.*, No. 07-4752, 2008 U.S. App. LEXIS 12376, *6 (3d Cir. June 10, 2008).

In that the proposed amended counterclaims have been the subject of prior adjudications on the merits and would not survive summary judgment in any event, we conclude that permitting the amendment to go forward would be futile.

**1.      Prior Adjudication on the Merits**

Banks asserts that Judge Brody's order of March 18, 2008 dismissing Counts Two through Five of his counterclaim, which did not specify whether the dismissal was with or without prejudice

13

(*See* Doc. 62), is governed by Fed.R.Civ.P. 41(a)(2), which provides that, absent a statement from the court to the contrary, "a dismissal under this paragraph (2) is without prejudice." (*See* Doc. 112 at 2). We note, however, that Fed.R.Civ.P. 41(a) applies only to a "voluntary dismissal." Judge Brody's order, however, did not reflect a voluntary dismissal. Rather, it granted a motion to dismiss (Doc. 22) filed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. A dismissal pursuant to that rule "is a judgment on the merits" and is claim preclusive as to Counts Two through Five of Banks's counterclaim. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 299 n.3 (1981); *Johnsrud v. Carter*, 620 F.3d 29, 32-33 (3d Cir. 1980); *see also 2 Moore's Federal Practice* § 12.34[6][a] (Matthew Bender 3d ed.). Banks, therefore, is barred from refiling those claims and his attempt to re-assert them in the proposed Amended Counterclaim would be futile, even absent an examination of whatever merit they may otherwise possess. Nonetheless, in an abundance of caution, and recognizing that Banks may be said to be asserting at least one new theory of recovery, we proceed to address the merits of the various counts contained within Banks's counterclaim in turn. We do so without taking into account that certain evidence which Banks believes may support these claims may be excluded.

### 2.      Count One: "Commission for Acting as an Agent for the Plaintiff"

Banks seeks to assert in Count One of his proposed Amended Counterclaim that Schutter "is indebted to Banks for a commission" as a result of various services performed by Banks under the Authorization. (Doc. 112 at 11). By this count, he seeks to re-assert the theory of relief set out in his original Count One, that he is entitled to a commission as a matter of contract law. He also seeks to assert, for the first time, entitlement under a *quantum meruit* theory. (*Id.*).

With respect to Banks's first theory of entitlement to commission, Schutter filed a motion

for summary judgment on June 9, 2008 (Doc. 105), which we granted on June 30, 2008 after finding that Banks, as a licensed broker, was precluded from recovering any commission under applicable Pennsylvania law due to the lack of a signed written agreement specifying any such entitlement. (Doc. 129) (citing 63 P.S. §§ 455.606a, 455.608a; 49 Pa. Code §§ 35.281, 35.331). We conclude, therefore, that his attempt to re-assert this theory would be futile.

The *quantum meruit* theory which he seeks to assert for the first time also fails for the same reason. Pennsylvania law unequivocally requires that a real estate broker licensed in Pennsylvania is required to obtain a written agreement, signed by the consumer and specifying the services to be performed along with an assurance that the agreement as to the fees and services was "the result of negotiations" between the broker and the customer. *See* 63 P.S. §§ 455.606a, 455.608a; 49 Pa. Code §§ 35.281, 35.331. It follows that, where there is no such signed written agreement, a broker may not, under any theory or cause of action, recoup any "fee, commission or other valuable consideration." *See id.*

It appears that only one Pennsylvania court has passed upon the viability of a *quantum meruit* theory of entitlement to a commission made by a licensed broker. In *Summit Management Co. v. Tow Path Valley Business Park Development Co.*, the Common Pleas Court of Lehigh County stated that:

> to allow [a] claim [for payment a commission] for unjust enrichment to go forward would be inconsistent with § 455.606a(b) of RELRA [the Real Estate Licensing and Registration Act], which precludes a real estate broker from recovering any fee, commission or other consideration for brokerage services in the absence of a written agreement or a written memorandum stating the terms of the agreement. In ascertaining the intention of the General Assembly when it enacted RELRA we must presume that it did "not intend a result that is absurd, impossible of execution or unreasonable."

15

> Therefore, we must find that § 455.606a(b) does not permit the recovery of a real estate brokerage commission on an unjust enrichment theory, which is based on the absence of an express agreement. Any interpretation of this section of RELRA that would allow a broker to recover a commission in the absence of an express agreement would clearly be absurd and unreasonable.

No. 2006-C-1216, 2006 Pa. Dist. & Cnty. Dec. LEXIS 192, *12-13 (Lehigh County Nov. 3, 2006).

We find this rationale persuasive, and agree that the clear mandate contained within the plain language of the applicable statutory and regulatory provisions of Pennsylvania law requiring a detailed and signed written agreement precludes entitlement to fees or commission under a *quantum meruit* theory. We conclude, accordingly, that Banks's attempted assertion of this theory would be futile.

3.    **Counts Two, Three and Six: Attorney's Fees "in Defending the Venue Issue in the District of Columbia" and "in Defending False Accusation to the Real Estate Commissioner," and "Counsel Fees and Costs Pursuant to the Provision of the Agreement of Sale," respectively**

By Count Two of his proposed Amended Counterclaim, Banks seeks to re-assert that he is entitled to reimbursement for attorney's fees incurred in defending the case while it was pending in the District of Columbia prior to its transfer to the Eastern District of Pennsylvania. By Count Three, Banks seeks to re-assert an entitlement to attorney's fees allegedly incurred in defending an accusation of fraud and conspiracy made by Schutter to the Pennsylvania State Real Estate Commission. Finally, by Count Six, Banks seeks to assert a blanket entitlement to reimbursement for all attorney's fees incurred through the duration of this case.

Under the "American Rule," attorneys' fees are generally not recoverable by an opposing party. *See Travelers Casualty & Surety Co. of Am. v. PG&E*, 127 S. Ct. 1199, 1204 (2007). This general rule will not apply, however, where there exists some statutory or enforceable contractual

16

provision allowing for the recovery of such fees. *See id.* In seeking to assert these counts, Banks

invokes the second exception and argues that express language contained within Paragraph 21(B)

of the Agreement in fact entitles him to such reimbursement. (Doc. 112 at 11-12). Indeed, Banks

asserts that this contractual provision entitles him to reimbursement for any and all attorney's fees

incurred in the course of defending this case and prosecuting his counterclaim.

As a general matter, questions of contract interpretation are questions of law to be decided

by the trial court. *See Gene & Harvey Builders v. Pa. Mfrs' Assoc. Ins. Co.*, 517 A.2d 910, 913 (Pa.

1986). We consider them as such and conclude that Banks would not be entitled to reimbursement

of these fees.

It is a well-settled maxim of contract interpretation that, where possible, a contract is to be

read as a whole, with all of its provisions being given effect. *See Kay v. Thrift & Profit Sharing Plan*

*for Employees of Boyertown Casket Co.*, 780 F. Supp. 1447, 1455 (E.D. Pa. Jan. 2, 1992) (citing

*Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1976)). It goes without

saying that each provision within the contract should likewise be read as a whole.

Paragraph 21(B) of the Agreement provides, in full, as follows:

> In the event of a dispute over entitlement to deposit monies, a broker
> holding the deposit is required by the Rules and Regulations of the
> State Real Estate Commission (49 Pa. Code §35.327) to retain the
> monies in escrow until the dispute is resolved. In the event of
> litigation for the return of deposit monies, a broker will distribute the
> monies as directed by a final order of court or the written agreement
> of the parties. Buyer and Seller agree that, in the event any broker or
> affiliated licensee is joined in litigation for the return of deposit
> monies, the attorneys fees and costs of the broker(s) and licensee(s)
> will be paid by the party joining them.

(Agreement *in* Doc. 105-2 at 15). The guiding statutory provision referred to in this contractual

provision, 49 Pa. Code §35.327, provides as follows:

> § 35.327. Procedure when entitlement to money held in escrow is disputed
>
> If a dispute arises *between the parties to a real estate transaction over entitlement* to money that is being held in escrow by a broker, the broker shall retain the money in escrow until the dispute is resolved. If resolution of the dispute appears remote without legal action, the broker may, following 30 days' notice to the parties, petition the county court having jurisdiction in the matter to interplead the rival claimants.

(Emphasis added).

This statutory language specifically referred to in the contract makes clear that the contractual provision pertains to disputes over entitlement to escrow funds between the parties to the transaction, i.e., the Buyer, Schutter, and the Seller, Herskowitz. (*See* Black's Law Dictionary (Seventh Ed.) (defining "party" as "[o]ne who takes part in a transaction") and Agreement *in* Doc. 105-2 at ¶ 1 (stating that "[t]his Agreement is between SELLER(S), David Herskowitz . . . and BUYER(S) Stephen Schutter")). We conclude that this contract language does not contemplate a dispute over entitlement to escrow funds between a broker and a party to the transaction. The broker is not a party to the transaction, and the contract language makes it clear that the broker is only permitted to "retain [deposit monies] in an escrow account *until consummation or termination* of this Agreement . . . ." (*See* Agreement *in* Doc. 105-2 at ¶ 21(A)).

Further, as between the parties to the transaction, it is clear that there is no "dispute over entitlement to deposit monies." (*See* Agreement *in* Doc. 105-2 at ¶ 21(B)). Herskowitz long ago agreed to terminate the Agreement and that "all escrow monies held by Philip Banks [were to have been] released immediately to the Buyer [Schutter]." (*See* Doc. 105-2 at Ex. D). Banks himself admits as much, and concedes that the dispute here is, rather, one over entitlement to payment for

18

services provided by Banks during the course of the transaction.  (See Doc. 10 at 4) (admitting complaint ¶ 22, which asserted Herskowitz's agreement to terminate Agreement and release escrow monies, "as stated"; and denying complaint ¶ 23, which asserted that escrow monies were never returned, and stating that "Banks offered to return the 'escrow' funds held in his account minus the costs of his services including legal fees and expenses.  The Plaintiff refused to pay the Defendant Banks any fees, costs or expenses . . . .").

Accordingly, because Banks is not a party to the transaction and has no entitlement to deposit monies; and because this is not a dispute over entitlement to deposit monies in any event, we conclude, as a matter of law, that Paragraph 21(B) does not apply to the action at hand.  Banks's attempt to assert that this provision obligates Schutter to reimburse him for any and all attorney's fees incurred in this case fails.  Allowing it to go forward would be futile.[4]

### 4.    Count Four: Libel, Slander, Slander Per Se

By Count Four of his proposed Amended Counterclaim, Banks seeks to assert claims for libel, slander and slander per se.  These claims are predicated upon two separate and allegedly "false and malicious communications allegedly made by Schutter: (1) Schutter's complaint filed in the District of Columbia and (2) a "written letter of complaint" addressed to the Pennsylvania State Real Estate Commission[5] ("PSREC").[6]  (Doc. 112 at ¶ 39).  Neither provide grounds for a libel or slander

---

[4] The discussion contained in this subsection applies equally to the claim under Paragraph 21(B) of the Agreement which Banks seeks to assert against Herskowitz within Count Six of the proposed Amended Counterclaim.

[5] In the counterclaim, Banks refers to the Real Estate Commissioner.  We assume he means the Pennsylvania State Real Estate Commission.

[6] Banks has never specified the substance of the statements which are allegedly

(continued...)

claim.

It is well-established in Pennsylvania that communications made in the course of judicial

proceedings are absolutely privileged.  The Pennsylvania Supreme Court held long ago:

> All charges, all allegations and averments contained in regular
> pleadings addressed to and filed in a court of competent jurisdiction,
> which are pertinent and material to the redress or relief sought,
> whether legally sufficient to obtain it or not, are absolutely privileged.
> However false and malicious, they are not libelous.

*Greenberg v. Aetna Ins. Co.*, 235 A.2d 576, 578 (Pa. 1967) (quoting *Kemper v. Fort*, 219 Pa. 85, 93-

94 (1907)).  Importantly, this privilege "does not depend upon the motive of the defendant in making

the allegedly defamatory statement." *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1992).

The rationale for this privilege, the court explained,

> rests on public policy, which allows all suitors . . . to secure access to
> the tribunals of justice with whatever complaint, true or false, real or
> fictitious, they choose to present, provided only that it be such as the
> court whose jurisdiction is involved has power to entertain and
> adjudicate. . . .   [T]he authorities, though differing as to when
> immunity is absolute, are uniform that when alleged libelous matter
> in pleadings is relevant and pertinent, there is no liability for uttering
> it.  Public policy requires this, even if at times the privilege of
> immunity for false and malicious averments in pleadings is abused.
> Justice can be administered only when parties are permitted to plead
> freely in the courts and to aver whatever ought to be known without
> fear of consequences, if a material and pertinent averment should not
> be sustained.  Wrong may at times be done to a defamed party, but it
> is damnum absque injuria.  The inconvenience of the individual must
> yield to a rule for the good of the general public.

*Id.*  The court has also noted that "the privilege exists because the courts have other internal

---

[6](...continued)
defamatory.  The most specification that can be found in the record is in a document filed on
March 13, 2008, in which Banks characterizes the statement as a "false accusation that Banks
violated the law by withholding the payment of the deposit which would have violated both the
terms of the Agreement of Sale as well as the cited Pennsylvania law." (Doc. 51 at 9).

sanctions against defamatory statements, such as perjury or contempt proceedings." *Binder v. Triangle Publications, Inc.*, 275 A.2d 53, 56 (Pa. 1971).

This absolute privilege has been interpreted broadly, and has been extended to cover "statements made preliminary to a criminal proceeding, made solely to the officials who might be responsible for prosecuting the criminal charges, and made by private parties for the purpose of initiating the prosecution of those charges," *Pawlowski*, 588 A.2d at 42, and has even been found to extend to statements made to police and mental health officials for the purpose of having a person involuntarily committed. *Marino v. Fava*, 915 A.2d 121 (Pa. Super. Ct. 2006). In explaining its rationale for such a broad interpretation of the absolute privilege, the court explained:

> [A]ccording absolute privilege to statements made in or preliminary to judicial proceedings aims at ensuring free and uninhibited access to the judicial system. This policy is obviously served by application of the privilege to statements made solely to law enforcement officials for the purpose of initiating criminal charges. Although such statements may ultimately prove to be false or maliciously motivated, the same may be said of statements made by a party who consults with his or her attorney preliminary to instituting a civil action, or of statements made by counsel in preliminary conferences or negotiations on their client's behalf. Nevertheless, such statements are deemed to be absolutely privileged because the policy concerns stated above outweigh the right of the defamation plaintiff to seek redress for harm caused by the statements.

*Pawlowski*, 588 A.2d at 42.

To the extent that Banks predicates his claim for libel and slander upon the complaint filed in the District of Columbia which instituted the present action, the claim fails as a matter of law. It is clear on its face that the communication, which was "relevant and pertinent" to Schutter's claim, *see Pawlowski*, 588 A.2d at 41, falls squarely within the absolute privilege afforded to communications made in the course of judicial proceedings. Re-asserting this claim would thus

21

clearly be futile.

The second communication likewise fails as a matter of law. Banks asserts that the complaint to the PSREC "was not filed for a proper purpose but instead was filed in an effort to extort the funds properly being held in escrow" and that the facts contained therein were false. (Doc. 112 at ¶ 38). Although he fails to provide in the proposed amended count the precise contents which he alleges are false, in his responses to Herskowitz's interrogatories Banks explains that he was contacted by an investigator from the "Bureau of Enforcement and Investigation" named William Driscoll who informed him that the complaint "was based upon an assertion that [Banks] was improperly withholding the disbursement of the escrow money." (Doc. 90 at 24). The statement to the PSREC, which led to an investigation that is apparently still ongoing (*see* Doc. 90 at 24: "There has been no resolution of that complaint"), fits squarely into the absolute privilege defined in *Pawlowski* – it was a statement "relevant and pertinent" to Schutter's complaint and made to a regulatory body that is responsible both for promulgating and enforcing real estate regulations (*see* 63 P.S. §§ 455.305, 404). Allowing this claim to go forward would be futile.[7]

### 5.    Count Five: Punitive Damages

Given our finding of futility as to every other claim that Banks seeks to assert, Banks is left with no plausible claim of entitlement to punitive damages, which simply do not exist absent an underlying cause of action. Quite simply, where "no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is [sic] only an element of damages." *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 214 (Pa. Super. Ct. 2003). We have found

---

[7] We note, additionally, that under our analysis, Banks did not have the right to withhold the escrow funds in order to obtain payment of a commission from Schutter. Schutter, thus, had an entirely legitimate basis upon which to make his complaint to the PSREC.

that every asserted cause of action fails as a matter of law and, accordingly, Banks has no cause of action left. His attempt to assert entitlement to punitive damages is, thus, clearly futile. We are unable to grant him leave to file the proposed amended counterclaim.

### C.    Bad Faith, Undue Delay, Prejudice to Other Parties

The conclusions we have reached with respect to the effect of Judge Brody's dismissal as a prior adjudication on the merits, together with our own analysis as to the futility of the claims to be asserted, gives rise to legitimate questions as to the motives of Banks in seeking leave to amend at this stage. This conclusion is amplified when considered against the backdrop of the procedural history of this case, which demonstrates that Banks, through his counsel, has persistently failed to respond to discovery requests, forced Schutter (and Herskowitz) to file what should have been unnecessary motions to compel, failed to comply with both our Local and Federal Rules of Civil Procedure by repeatedly not signing documents, by failing to respond to motions, and by ignoring two previous direct orders of this Court to pay sanctions. We are left with no basis to conclude other than that this motion has been brought in bad faith. *See Foman*, 371 U.S. at 182. We perceive it to be merely a crude attempt by Banks to re-start his claims. To do so would be an insult to our process and prejudice Schutter and Herskowitz by necessitating further delay.[8]

In addition to these considerations, Herskowitz, who Banks also names in the proposed Amended Counterclaim, points out as to the purported claim against him[9] that he would be severely

---

[8] We also note the Motion for Leave was filed nearly four months after Judge Brody dismissed what were substantially the same claims, and only one month before an agreed upon trial date.

[9] Herskowitz is named by Banks in, and only in, Count Six ("Counsel Fees and Costs Pursuant to the Provision of the Agreement of Sale") of the proposed Amended Counterclaim.

prejudiced if we were to allow amendment to go forward. He argues that amendment would "require time for motions to challenge the amendment under 12(b)(6), or for summary judgment, and further discovery" – time which has already come and gone under Judge Brody's initial scheduling order and our revised scheduling order. (*See* Docs. 11 and 85). Further, Herskowitz points out that he was never named as a defendant to any claims initially made by Banks, and that this factor dictated his strategy for conducting discovery and managing the case in general. Were he to become a defendant to a claim by Banks at this late stage, he argues that he would be entitled to attempt to undertake more extensive discovery, which, in turn, would translate into both further delay and considerable cost.[10] We conclude that those factors weigh in Plaintiff's favor and against granting Banks's motion.

For all of the reasons discussed above, we find that allowing Banks to go forward with his proposed Amended Counterclaim would not further the interests of justice. His Motion for Leave is **DENIED**.

## V.     Preclusion of Evidence

### A.     Legal Standard

As a general matter, where preclusion of evidence "is tantamount to dismissing the claim," a court must provide the same justification that is required for a dismissal or default sanction. *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003) (applying same legal standard applicable to punitive dismissal to exclusion of evidence). For purposes of this opinion, we accept

---

[10] While we will not challenge the Herskowitz argument about how we would have to proceed upon Banks's claim were it to go forward, the argument is of somewhat lesser importance given our futility analysis and its applicability to the claim asserted by Banks against him.

that the preclusion of evidence would effectively prevent Banks from proceeding on his

counterclaims (which we have determined fail in any event).  Given that this is a consequence of our

ruling, we utilize the analysis appropriate to such a result and are accordingly guided by the Third

Circuit's decision in *Poulis v. State Farm Fire and Casualty Company*, 747 F.2d 863 (3d Cir. 1984).

There, in its review of the district court's dismissal of an action for failure to provide discovery and

to comply with other court-imposed deadlines, the court set out six specific factors which a district

court must weigh before imposing such a severe sanction:

> (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice*
> to the adversary caused by the failure to meet scheduling orders and
> respond to discovery; (3) a *history* of dilatoriness; (4) whether the
> conduct of the party or the attorney was *willful* or in *bad faith*; (5) the
> effectiveness of sanctions other than dismissal, which entails an
> analysis of *alternative sanctions*; and (6) the *meritoriousness* of the
> claim or defense.

747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original).

These factors are considered "in order to assure that the 'extreme' sanction of dismissal or

default is reserved for the instances in which it is justly merited." *Poulis*, 747 F.2d at 870.  The court

has made it clear, however, that "not all of the *Poulis* factors need be satisfied in order to dismiss

a complaint." *Mindek*, 964 F.2d at 1373.  In addition, the Supreme Court has held that dismissal

based on the attorney's misconduct is not necessarily unjust.  *See Link v. Wabash Railroad Co.,* 370

U.S. 626 (1962) (reasoning that because a litigant "voluntarily chose this attorney as his

representative in the action, [] he cannot now avoid the consequences of the acts or omissions of this

freely selected agent" and "[a]ny other notion would be wholly inconsistent with our system of

representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and

is considered to have notice of all facts, notice of which can be charged upon the attorney.").

25

**B.     Application of *Poulis* Factors**

We now address the six *Poulis* factors in turn.

### 1.     Extent of Banks's Personal Responsibility

The record before us is not well-developed as to the extent of any personal responsibility by Banks. We observe, however, that at the time of the events at issue here he was a properly licensed real estate broker and presumed to be aware of the regulations pertaining to his profession, including those with respect to agreements with clients and his responsibilities for the handling of escrow funds. While we question under these circumstances how he might have taken some of the positions he did, we are unable to reach any conclusion about what influence this knowledge may have had upon his blatant failure to provide the discovery sought. Accordingly, we disregard any potential significance of this factor.

### 2.     Prejudice to Schutter Caused by Banks's Failure to Respond to Discovery and Meet Scheduling Orders

As an initial matter, we note that the reference to prejudice here "does not mean 'irremediable harm,' but instead, the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Roman v. City of Reading*, 121 Fed.Appx. 955, 959 (3d Cir. 2005). We find that this burden upon Plaintiff is present here. With discovery having closed long ago and given both Banks's failure to provide any discovery to Schutter and his subsequent failure to comply with this Court's order to do so, it is difficult to see how Plaintiff could not have been prejudiced in his ability to properly present his affirmative case or defend against Banks's counterclaims.

We note that Plaintiff has never received any verified answers to *his own* legitimate discovery requests. While Banks did produce untimely Fed.R.Civ.P. 26(a)(3) disclosures pursuant to our order,

these disclosures do not cure the deficiency of his failure to provide any answers to interrogatories or responses to document requests. While we acknowledge that the disclosures provide some guidance for Schutter as to the positions being taken by Banks, they are not a substitute for sworn discovery responses. Likewise, Schutter's access to the responses to Herskowitz's discovery requests are not a substitute for sworn responses to his own discovery requests. We are unwilling to conclude that Schutter should be compelled to rely just upon this discovery, particularly when it was responsive to a party in a very different posture than him.[11] We find that this factor weighs in favor of exclusion.

### 3.    History of Dilatoriness

Banks's history of dilatoriness has been thoroughly set out in our "Relevant Procedural History." (See Section III, *supra*). We emphasize in summary, however, that Banks's conduct with respect to Schutter goes beyond being dilatory. It is, rather, fully non-compliant due to persistent failure to respond to discovery requests and relevant motions to compel, and to even disregard direct court orders imposing sanctions for his failure to comply. Remarkably, Banks has even failed to respond to this Motion to Exclude. This factor weighs heavily in favor of exclusion.

### 4.    Willfulness and Bad Faith in Conduct of Banks and/or his counsel

Willfulness and bad faith can be inferred from the totality of the record. That record reflects that the property transaction which is the subject of this lawsuit was aborted in January 2006, more

---

[11] We also note that neither set of responses from Banks was signed by counsel, as required by Fed.R.Civ.P. 26(g). Accordingly, these responses contain no attorney certification that the disclosures were "complete and correct as of the time [they were] made;" that they were "consistent with [the Federal Rules of Civil Procedure] and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;" and that they were "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed.R.Civ.P. 26(g)(1).

than two and a half years ago. Upon identifying what he believed to be a problem with the transaction, Schutter promptly notified Herskowitz and an agreement was quickly reached between the two that Schutter would be released from any further obligations under the Agreement and the escrow deposit funds would be returned. Banks, a professional real estate broker, however, refused to release any part of the funds, despite the fact that the initial fee or commission he claimed that he was entitled to was only $12,600. Schutter was forced to retain counsel and ultimately bring suit.

While Schutter imprudently brought the case in the District Court for the District of Columbia and must accept responsibility for the delay caused by that decision, he has, once the matter was transferred to the Eastern District, approached the litigation sensibly. He was entitled to receive reasonable cooperation from Banks. He has received precious little. His interrogatories and requests to produce documents, served on January 18, 2008, have *still* not been responded to. Banks has ignored motions to compel; ignored our order compelling him to answer Schutter's interrogatories and produce documents; and ignored our orders directing him to pay attorneys' fees and costs.

Although the Third Circuit has shown a willingness to take into account valid excuses proffered by attorneys who failed to comply with discovery requests, *see, e.g., Bjorgung v. Whitetail Resort*, 197 Fed. Appx. 124, 126 (3d Cir. 2006), the court has counseled that:

> Absence of reasonable excuses may suggest that the conduct was willful or in bad faith. *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224 (3d Cir. 2003). In the face of court-imposed deadlines, repeated failure to observe court imposed deadlines and total failure to pursue a claim beyond the pleadings may constitute willful conduct. *See Wade v. Wooten*, 1993 WL 298715, *4 (E.D. Pa. July 30, 1993).

*Roman*, 121 Fed.Appx. at 960 (parenthetical remarks omitted).

28

Unfortunately, given Banks's failure to respond to the Motion to Exclude or to any other motion pertaining to discovery requests, he has offered us no explanation whatsoever for the failure to provide discovery. Further, the only excuses which can be gleaned from this record as being offered by Banks's attorney, Mr. Marcone, can hardly be deemed "reasonable." In an *ex parte* letter addressed to Judge Brody titled "status report," dated February 19, 2008 and entered onto the docket on February 28, 2008, Mr. Marcone lists excuses as to why the interrogatory responses to Herskowitz were late, including:

> The original Interrogatories filed by Herskowitz were not responded to promptly since be [sic] believed that the case could be settled through the efforts of Judge Strawbridge.
>
> I was required to leave the area for a week and expected to respond to the Interrogatories upon my return. When I returned however, Judge Legrome Davis served me with an Order requiring I prepare a brief justifying a Third Circuit Order imposed upon Judge Davis. He gave me five days to file the brief and I was forced to divert my attention to that demand.
>
> I spoke to [Judge Brody's] office yesterday and expected to fax a copy of the responses to evidence compliance with your Order and believed I had your fax number in my files. I was wrong and I am calling your office this morning to procure the number to facilitate evidence of compliance with your Order.

(Doc. 34 at 3).

We construe two other statements contained in the record as excuses for the failure to provide discovery. The first is found in Banks's response to a "Joint Motion to Strike" (Doc. 45) docket entries 30-35 filed by Schutter and Herskowitz:

> By way of further answer counsel for Banks states that after he received the Order known as Docket Number 28, he called [Judge Brody's] Chambers and spoke to the Clerk to inform her that he had already complied by serving the answers and documents upon counsel

> for both Mr. Herskowitz and by a copy thereof, upon counsel for Mr.
> Schutter. In that conversation, the Clerk instructed counsel for Banks
> that the Order specifically referred to a failure to file a respond [sic]
> on ECF.
>
> In the remaining portion of the conversation, counsel misunderstood
> the instructions, believing he was required to file proof of compliance
> by an ECF filing.   Counsel knew neither Interrogatories nor
> Responses thereto were normally filed with the Court however since
> counsel was concerned with evidencing compliance with the Order
> of the Court, in an "abundance of caution", he sent the Court a letter
> explaining his failure to file a timely Response.  He thereupon filed
> the documents evidencing compliance with the Order of the Court as
> well as an explanation of why he had not responded by an ECF filing.

(Doc. 49 at 3).   The second is found in Banks's "Motion for Extension of Time to Complete

Discovery":

> The Defendant, Herskowitz, has been filing Motions which seem to
> be designed to delay the resolution of this matter and which initially
> appeared to have virtually nothing to do with the resolution of this
> matter.  They have clearly delayed the progression of this case and
> require additional time to respond thereto.

(Doc. 73 at 4).

The fact that a settlement conference was held in February 2008 can hardly serve to excuse

a failure to provide discovery responses to Schutter which were due the same month, especially after

it became apparent that there would be no settlement.  It certainly does not excuse a failure to

provide discovery responses to Herskowitz which were due in December 2007.  Neither can a busy

business schedule serve to excuse such failure.  When it became apparent to Mr. Marcone that he

had other responsibilities which may have required a higher priority, at the time he should have

sought an extension of time for response from the Court.  *See In Re: Richardson Industrial

Contractors, Inc.*, 189 Fed. Appx. 93, 97-98 (3d Cir. 2006).  He never did so.  Finally, Mr.

Marcone's inability to locate the Chambers contact information and misinterpretation of Court

instructions will not serve as an excuse for continued failure to properly provide discovery over four months later. These unreasonable excuses, coupled with the absolute lack of any direct response to the immediate motion offering any other excuse, allow us to determine that the conduct was willful.

Finally, we find extraordinary Banks's justification for his willful failure to pay attorney fees and expenses pursuant to our sanctions orders of May 14, 2008 (Doc. 86) and May 29, 2008 (Doc. 89). After failing to respond to the motions for sanctions, he, for the first time in his response to Schutter's motion for order to show cause (Doc. 111) asserts that these sanctions must be shouldered by Schutter as a result of the language of the initial Agreement. (Doc. 119 at 3). We have carefully considered this argument in the context of Banks's Motion for Leave. (*See supra* at 16-19). We rejected it there and we reject it here. Perhaps more importantly, this argument would make Schutter responsible for Banks's (or his counsel's) own misconduct. It is perverse. It defies logic, and again drives us to conclude that this conduct was taken in bad faith. This factor weighs in favor of exclusion.

### 5.    Effectiveness of Sanctions Other Than Exclusion of Evidence

At this late stage in the case, we conclude that no sanction short of preclusion will suffice. On May 7, 2008, we ordered Banks to provide Schutter with responses to discovery. (Doc. 81). He never did. On May 14, 2008, we ordered Banks to provide Herskowitz with responses to discovery that were signed and verified by an attorney of record. (Doc. 86). He never did. In our sanctions order we provided two explicit cautions:

> In that this is the first round of sanctions imposed upon Banks by this Court, however, we do not find the harsher provisions of Fed.R.Civ.P. 37(b)(2)(A) to be appropriate at this point, although we note that should Banks fail to comply with this Court's orders in a satisfactory manner, these sanctions may well be imposed.

> It is the Court's intention to rigorously apply appropriate sanctions,
> including preclusion of evidence, for a failure to provide discovery in
> this matter.

(Doc. 86 at 6, 8). In the same order, we directed that Banks pay Herskowitz $787.50 in reasonable

attorneys fees and expenses. (Doc. 86). He never did. Finally, on May 29, 2008, we ordered Banks

to pay Schutter $796.90 in reasonable attorneys fees and expenses. (Doc. 89). Once again, he never

did. Rather, in response to Plaintiff's subsequent motion for an order to show cause why Banks

should not be held in contempt for his failure to comply with this order, Banks asserted for the first

time his specious argument that the sanctions must be shouldered by Plaintiff. (Doc. 119 at 3).

Remarkably, he has not even filed a response to the Motion to Exclude. This persistent

failure to comply with direct court orders, with the Local and Federal Rules of Civil Procedure, and

to provide no discovery even now, six and a half months after the discovery was served, leads us to

conclude that no other sanction could be effective. Accordingly, we find that this factor clearly

weighs in favor of exclusion.

### 6.     Meritoriousness of Claims

The counts which Banks seeks to assert against Schutter lack merit and fail as a matter of

law, for reasons set forth later in this opinion. (*See infra* at 13-23). Accordingly, we find that this

final factor also weighs in favor of exclusion.

For all of these reasons, we conclude that the six *Poulis* factors weigh in favor of the extreme

sanction of evidence preclusion. We are thus satisfied that Plaintiff is entitled to, and we accordingly

grant, Plaintiff's motion seeking this relief.

### C.     Relief

Plaintiff has requested that we broadly exclude evidence relating to matters to which Plaintiff

32

sought response in his requests to Banks for discovery. (Doc. 59 at 5-6). More specifically, Plaintiff

has requested that Banks be prohibited from offering any evidence pertaining to the following

"categories of testimony:"

1. Any alleged statements, admissions or declarations against interest, either verbally or in writing, allegedly made by Plaintiff. (Interrogatory No. 5)

2. Any alleged agreement with Plaintiff for compensation to Banks in connection with the proposed purchase and sale of the Property. (Interrogatory No. 6).

3. Any alleged breach of any agreement with Plaintiff for compensation to Banks in connection with the proposed purchase and sale of the Property. (Interrogatory No. 7).

4. Any alleged entitlement to compensation from Plaintiff and/or right to retain for Banks' own benefit, either by way of setoff or as independent claims, any portion of the Escrow Deposit tendered with respect to the proposed purchase and sale of the Property. (Interrogatory No. 9).

5. Any alleged economic damages of any type claimed by Banks due to the actions or inactions of Plaintiff, either by way of setoff or as independent claims. (Interrogatory No. 10)

6. Any alleged facts that Banks contends support any affirmative defense to Plaintiff's claims. (Interrogatory No. 11).

7. Any alleged facts that Bank's contends support any of his counterclaims against Plaintiff. (Interrogatory No. 12).

8. Any and all communications of any type that between Banks and the Plaintiff concerning the allegations in the complaint. (Interrogatory No. 13).

9. Any and all communications of any type that between Banks and Defendant Herskowitz concerning the allegations in the complaint. (Interrogatory No. 13).

10. Any and all communications of any type that between Banks and any person other than Plaintiff or Defendant Herskowitz concerning the allegations in the complaint. (Interrogatory No. 15).

11. Any and all documents or other tangible things not timely produced by the parties in response to discovery requests propounded in this case. (Interrogatory No. 19).

**B. Documentary Evidence**

      1. Any documents not previously identified and timely produced by the parties in response to discovery requests propounded in this case.

      2. Any documents related to the value or alleged value of services rendered by Defendant Banks on behalf of Plaintiff.

      3. Any documents related to the time or nature of services allegedly performed by Defendant Banks on behalf of Plaintiff.

(Doc. 59 at 5-6).

      We find that exclusion of evidence to this extent is an appropriate sanction given the circumstances of this case. We will at the time of our pretrial conference discuss with counsel the ramifications of this order as it relates to specific evidence to be proffered by Banks in defense of Plaintiff's claims.

                    BY THE COURT:

                    DAVID R. STRAWBRIDGE
                    UNITED STATES MAGISTRATE JUDGE