IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | NO. 07-3823 |
| DAVID HERSKOWITZ and PHILIP BANKS | : | |
| Defendants | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                                August     22 , 2008
UNITED STATES MAGISTRATE JUDGE

**I.   Introduction**

  Plaintiff Stephen Schutter (alternatively "Schutter" or "Plaintiff") brought this action against Defendants David Herskowitz ("Herskowitz") and Philip Banks ("Banks"). The complaint was originally filed in the United States District Court for the District of Columbia, but on July 5, 2007 was transferred to this District pursuant to 18 U.S.C. § 1404(a) and (c) and assigned to the Honorable Anita B. Brody.[1] On April 17, 2008, the parties consented to Magistrate Judge jurisdiction and the matter was transferred to this court. (Doc. 75).

  On November 20, 2007, Banks filed an answer to the complaint and a counterclaim asserting claims for services rendered, attorneys fees, libel and slander, and punitive damages. (Doc. 10). Plaintiff, on February 5, 2008, filed a motion to dismiss Counts Two through Five asserted in

---

[1] Subject matter in this case is predicated upon diversity of citizenship under 28 U.S.C. § 1332. Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court must apply the substantive laws of its forum state in diversity actions. *See Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614 (3d Cir. 1992). Accordingly, we apply Pennsylvania law in deciding all substantive legal issues pertaining to this case.

Banks's counterclaim. (Doc. 22). Banks's response to this motion was due on February 22, 2008, but on March 12, 2008, noting that no response had been filed, Judge Brody informed the parties that she considered the motion unopposed and would grant it on that basis. (*See* Doc. 68 at 3; Doc. 72 at 2; Doc. 65). She entered an Order to that effect on March 18, 2008. (Doc. 62). Banks then filed a "Motion to Vacate" that order on March 25, 2008 (Doc. 68), which we denied on June 6, 2008 (Doc. 99). Accordingly, only Count One of Banks's counterclaim, asserting a claim for "a commission as acting as an agent" and reimbursement for hiring counsel "for the purposes of preparing and procuring releases" (Doc. 10 at p. 13, ¶¶ 24, 25) remained before this Court.

Plaintiff filed a motion for summary judgment on this remaining count of Banks's counterclaim on June 9, 2008. (Doc. 105). Banks never responded. On June 30, 2008, we granted Plaintiff's motion. (Doc. 129). Banks has now for the first time set out his argument as to the merits of Plaintiff's motion in a "Motion for Reconsideration" of our June 30, 2008 order which he filed on July 8, 2008. (Doc. 134). Plaintiff filed a response on July 22, 2008. (Doc. 145). That motion is now ripe for review.

## II.   Standard of Review

Banks has filed his motion for reconsideration as provided for in Local Civil Rule 7.1(g). The Third Circuit has articulated in this regard that the party seeking reconsideration must demonstrate "at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[2] *Max's*

---

[2] Where a motion for reconsideration is predicated upon a need to correct a manifest injustice, "the party must persuade the court that not only was the prior decision wrong, 'but that
(continued...)

2

*Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also Jackson v. Rohm & Haas Co.*, No. 06-1540, 2007 U.S. App. LEXIS 4194 (3d Cir. Feb. 26, 2007) (motions for reconsideration granted only to "correct manifest errors of law or fact or to present newly discovered evidence") (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

Importantly, this standard does not allow a litigant a "second bite at the apple." *See Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995). A litigant who fails in his "first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one . . . . [or] to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Kennedy Indus. v. Aparo*, 2006 U.S. Dist. LEXIS 46075, *4-5 (E.D. Pa. July 6, 2006) (quotation omitted). Rather, a litigant seeking reconsideration is limited to demonstrating one of the three express grounds set out by the Third Circuit in *Max's Seafood*. We do not believe Banks has met this difficult burden.

**III. Discussion**

Banks challenges our grant of summary judgment both as to our finding that he is precluded under Pennsylvania law by the lack of a signed detailed writing from recovering a fee or commission for services allegedly performed, and as to our finding that he is precluded from reimbursement of attorneys fees payable to Frank J. Marcone, Esquire in that those legal services which Mr. Marcone

---

[2](...continued)
it was clearly wrong and that adherence to the decision would create a manifest injustice.'"
*Burns v. Slippery Rock Univ. of Pa.*, No. 06-318, 2007 U.S. Dist. LEXIS 63406, *3 (W.D. Pa. Aug. 28, 2007) (quoting *McCloud v. City of Sunbury*, CA No. 04-2332, 2006 U.S. Dist. LEXIS 16560, *4 (M.D. Pa. Apr. 3, 2006) and citing *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir. 1998)).

3

performed were done outside the scope of his admission to practice law before the United States District Court for the Eastern District of Pennsylvania and in violation of the Pennsylvania Rules of Disciplinary Enforcement.  We address the arguments in turn.

    **A.**    **Commission for Services Performed**

Banks asserts for the first time several arguments which, he argues, demonstrate that our grant of summary judgment upon Count One of his counterclaim, as it pertained to his inability to recover a fee or commission for services allegedly performed (*see* Doc. 129 at 6-9), amounted to "a clear error of law or facts" that, unless reconsidered, will force Banks to "suffer manifest injustice." (Doc. 134 at 2).  Against this standard we consider the merits of each of Banks's arguments in turn to determine whether he is entitled to the sought relief.

First, Banks asserts that Schutter, by failing to include any argument regarding Count One of the counterclaim in his motion to dismiss certain counterclaim counts (Doc. 22) and by subsequently filing an Answer to Banks's counterclaim (Doc. 23), waived any right to bring another motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 134 at 3-4).  This argument is puzzling in that the motion which we granted sought summary judgment pursuant to Fed.R.Civ.P. 56 (see Doc. 105 at 1 & 2).  It did not seek relief pursuant to Fed.R.Civ.P. 12(b)(6), as Banks seems to assert that it did.

Banks next proceeds to argue, again for the first time, that

> while Banks was a licensed real estate broker, he was not hired to perform traditional services.  Banks suggests his posture was in fact a hybrid whereby he prepared an Agreement of Sale and then proceeded to procure the financing for his principal, Schutter. Therefore, to characterize Banks in the simplest terms of a Real Estate Broker is far to [sic] simplistic a description.

(Doc. 134 at 5). He thus asserts that, rather than being governed by the Real Estate Licensing and Registration Act (the "RELRA") and the subsequent regulatory enactments (*see* Doc. 129 at 6-9 (citing 63 P.S. §§ 455.606a, 455.608a; 49 Pa. Code §§ 35.281, 35.331)), he is in fact governed by a provision contained within the Mortgage Bankers and Brokers and Consumer Equity Protection Act (the "MBBCEPA"). (Doc. 134 at 5). He concludes that our opinion applying provisions of the RELRA to him constituted clear error because "in that capacity [as mortgage broker] there is no need to put an agreement of fees in writing." (Doc. 134 at 7).

Specifically, Banks claims that he is governed by 63 P.S. § 456.303 of the MBBCEPA. (Doc. 134 at 5). That provision provides, in pertinent part, as follows:

> § 456.303. License requirements and exemptions
> (a) LICENSE REQUIRED.-- On and after the effective date of this act, no person shall act as a mortgage banker, loan correspondent, mortgage broker or limited mortgage broker in this Commonwealth without a license as provided for in this chapter . . . .[3]
>
> (b) EXCEPTIONS.-- The following persons shall not be required to be licensed under this chapter in order to conduct the first mortgage loan business but shall be subject to those provisions of this chapter as specifically provided in this section:
> . . .
>  (3) A person licensed pursuant to the provisions of the act of February 19, 1980 (P.L. 15, No. 9), known as the Real Estate Licensing and Registration Act, who is principally engaged in a third-party real estate brokerage business, but only to the extent that he provides information, verbal or written, to or negotiates or places a mortgage loan for a buyer of real estate and is not compensated by the buyer or any other person for providing such information or negotiating or placing such mortgage loan. If he is compensated for providing such information or negotiating or placing such mortgage

---

[3] Banks does not claim that he possesses such a license.

5

loan, he shall be subject to the provisions of sections 308, 310, 311[4] and 314(b), excluding section 308(a)(1).

Banks concludes that this provision allows him to recover a fee or commission even absent a signed written agreement. (Doc. 134 at 5-6).

Banks's argument is unavailing. The cited provision, rather than broadly permitting a real estate broker to circumvent the regulations governing his own profession by recovering a fee or commission without a detailed signed and written agreement as Banks argues it does, simply allows a licensed real estate broker to perform certain mortgage broker duties without possessing a mortgage broker's license. Although the provision entitles a licensed real estate broker, with some restriction, to recover fees for services without possessing a mortgage broker's license, the provision

---

[4] 63 P.S. § 456.311 provides as follows:
**§ 456.311. Fees.**
. . . .
**(e) Disclosure.**—No real estate broker or salesperson shall receive a fee, commission or other valuable consideration pursuant to this section and the regulations promulgated hereunder unless he makes the following written disclosure to the buyer in at least ten-point boldface capital letters.

The real estate broker in this transaction who has offered to assist me in obtaining a mortgage loan has advised me of the following:

(1) He does not represent any particular mortgage lender; or the name of the mortgage lender he represents is.........

(2) I am not required to obtain the mortgage for the purchase of the real estate from the mortgage banker whom the broker represents.

(3) The real estate broker has a fiduciary obligation to the seller, from whom he will receive a commission.

(4) Should the real estate broker violate any of the provisions of the Real Estate Licensing and Registration Act or the Mortgage Bankers and Brokers Act I may file a complaint with the Pennsylvania Real Estate Commission.

does not purport to obviate a real estate broker's duty to comport with the regulations governing his own profession which require that any agreement as to a fee or commission for services performed by a licensed broker be contained in a detailed and signed writing – namely the Real Estate Licensing and Registration Act found in 63 P.S. §§ 455.606a, 455.608a and the subsequent regulatory enactments found in 49 Pa. Code §§ 35.281, 35.331. Accordingly, to the extent that this provision can be read to in fact apply to Banks, an issue which we do not pass upon,[5] Banks, as a licensed real-estate broker, remains bound by the regulations of his own profession in any event and remains unable to collect a fee or commission for services performed absent a detailed signed written agreement – one which does not exist in this case.[6] (*See* Doc. 129 at 8). Accordingly, notwithstanding the fact that this argument "inexcusably [was] not presented to the court in the matter previously decided" and amounts to little more than an initial response to the underlying motion which we granted and a mere "attempt at a new approach," *see Kennedy Indus.*, 2006 U.S. Dist. LEXIS 46075 at *4-5, his argument here fails to demonstrate any error of law, let alone a *clear* error of law. Accordingly, it provides him with no relief.

Finally, Banks asserts that we committed a clear error of law in that we "failed to consider the law as it applies to a resolution of the amount owed under the theory of Quantum Meruit." (Doc. 134 at 6). Count One of Banks's counterclaim upon which we granted summary judgment, however,

---

[5] We note that, in any event, Banks is precluded from offering any evidence in support of his counterclaim by our Order of July 1, 2008 (Doc. 131) and our Memorandum Opinion filed on July 11, 2008 (Doc. 140).

[6] As Plaintiff points out (Doc. 145 at 4 n.2), even if Banks could somehow show that he performed certain mortgage broker duties, the absence of any detailed signed written fee agreement makes clear that Banks failed to comply with the disclosure requirement contained in 63 P.S. § 456.311(e), and would thus be precluded from "receiv[ing] a fee, commission or other valuable consideration . . . ."

7

did not assert a claim of entitlement to payment of a fee or commission under a *quantum meruit* theory, nor did any other count asserted within his original counterclaim.[7] Banks fails to provide any support for his proposition that a court, in reviewing a motion for summary judgment, is required to address *sua sponte* claims which do not exist upon the record. We believe he would be hard-pressed to find any. This argument clearly fails.

      **B.    Entitlement to Legal Fees Incurred by Mr. Marcone in Preparing the Agreement of Sale and Release Document**

Banks also asserts for the first time several arguments which, he claims, demonstrate that our grant of summary judgment upon Count One of his counterclaim, as it pertained to his inability to recover attorneys fees billed to him by Mr. Marcone for services which constituted unauthorized practice of law in violation of Pennsylvania Rule of Disciplinary Enforcement 217(j)(4) (*see* Doc. 129 at 9-12),[8] has "no basis in law or facts and which must be reversed." (Doc. 134 at 11). We consider this argument against the difficult standard of whether we committed a "clear error of law or fact" or somehow perpetrated a "manifest injustice," *Max's Seafood*, 176 F.3d at 677, in finding that Mr. Marcone's practice of law in connection with the abandoned property transaction at the heart of this case, which occurred some seven months before any litigation and 18 months before the case was before the United States District Court for the Eastern District of Pennsylvania, somehow

---

[7] Banks, rather, only asserted a *quantum meruit* theory of entitlement for the first time in a proposed "First Amended Counterclaim" which he sought leave to file. (Doc. 112). We denied him leave to amend, finding that all of his asserted claims, including his *quantum meruit* claim (*see* Doc. 140 at 14-16 ), were frivolous.

[8] As we noted in the Order which Banks challenges here, at all times relevant to this issue, "under the Pennsylvania Rules of Disciplinary Enforcement, which cover all attorneys admitted to practice in Pennsylvania, Mr. Marcone, [has been] considered a 'formerly admitted attorney' to the extent that he is under suspension." (Doc. 129 at 11) (citing Pa. R.D.E. 102).

constituted a proper practice of law before our court.[9] We conclude that Banks is unable to meet this high burden.

In support of his argument, Banks first directs our attention to *Sperry v. Florida*, 373 U.S. 379 (1963). (Doc. 134 at 13). The United States Supreme Court there found that a state could not prohibit a non-lawyer from the preparation and prosecution of patent applications in that a non-lawyer was expressly authorized to do so by federal statute. *Id.* at 385. Banks argues that this decision "permits full and complete rights to the federally licensed practitioner to practice in any area where the federal law may apply." (Doc. 134 at 13).

Banks also cites in support of his argument the Third Circuit opinion in *Surrick v. Killion*, 449 F.3d 520 (3d Cir. 2006) along with the district court opinion which it upheld, *Surrick v. Killion*, 2005 U.S. Dist. LEXIS 6755 (E.D. Pa. Apr. 18, 2005). (Doc. 134 at 14). There, the court held that Pennsylvania may not "prohibit an attorney admitted to the bar of a federal district court, but suspended from the state bar, from maintaining a legal office for the sole purpose of supporting a practice before the federal court." *Id.* at 531. The court cited *Sperry* for "the general proposition that where federal law authorizes an agent to practice before a federal tribunal, the federal law preempts a state's licensing requirements to the extent that those requirements hinder or obstruct the goals of federal law." *Id.*

While Banks provides us with an argument not advanced in earlier papers, he fails to reveal any clear error of law contained within our grant of summary judgment. *Sperry* does not support Banks's broad interpretation. *Sperry*, rather, simply confirms that where federal law expressly

---

[9] In that Marcone is under suspension from practice in the Commonwealth of Pennsylvania, Banks does not assert that the actions at issue here would constitute a proper practice of state law.

9

allows a non-lawyer to engage in certain specific activity, state law may not prohibit a non-lawyer from engaging in that activity. The *Surrick* decision, rather than allowing Mr. Marcone an unfettered right "to practice in any area where the federal law may apply" (Doc. 134 at 13), clarifies that the question of whether a particular action may be precluded by state law turns on whether that action "is 'reasonably within the scope' of the federally-conferred license to practice law." 449 F.3d at 533. Maintaining an office from which to work is reasonably within that scope. *Id.* Nowhere does *Surrick* purport to suggest, however, that practice of law, which here included a routine matter pertaining to a simple real estate transaction and which occurred at least 18 months prior to any civil action being brought to the Eastern District and at a time when the possibility of litigation was at most remote,[10] is "reasonably within the scope" of Mr. Marcone's admission to practice law before this court. Banks provides us with no authority to suggest it would be.

We outlined in the Order which Banks challenges here the specific actions performed by Mr. Marcone which we found to have constituted unauthorized practice of Pennsylvania law. (See Doc. 129 at 10-13). The actions were set out in Banks's responses to Interrogatories propounded to him by Herskowitz which had inquired into the nature of the attorneys fees for which he sought recovery in this litigation:

> Banks identifies those fees as having been earned for services "following the instructions of Schutter" and pertaining to the termination of the Agreement. They include the $600 invoice and time referred to in undated entries identified in Banks's supplemental answers to interrogatories (Doc. 90) clearly associated with the early

---

[10] At the time of the services performed by Mr. Marcone, there was, at most, a small dispute over Banks's entitlement to fees. The Release document charging Plaintiff $600 for Mr. Marcone's legal services was itself drafted well before any litigation over the funds and, perhaps more importantly, asserted an entitlement by Banks to only $12,600 in fees (*see* Doc. 105-2 at Exs. E & F) – an amount well below the $75,000 jurisdictional minimum. *See* 28 U.S.C. § 1332.

>
> 2006 time period.  The entries involved are:
>
> Original interview of Philip re: how he will get paid . . . 2.5 hours
>
> Preparation of and review of Agreement . . . 1.0 hour
>
> Consultation with Philip re: how to address the issue of returning the deposit money . . . 1.5 hours

(Doc. 129 at 10).  Banks provides us with no authority suggesting that these actions are "reasonably within the scope" of Mr. Marcone's admission to practice law before this court.

We are unable to conclude that admission to practice law before this court allows Mr. Marcone broad latitude to practice law so long as some possibility of future litigation before our court exists.  Admission to practice law in the Eastern District, rather, only allows an attorney "to appear before this court for the representation of clients on federal matters."  *Surrick*, 2005 U.S. Dist. LEXIS 6755 at *37.  More particularly, an attorney admitted to practice law before this court may only "appear on matters properly within the jurisdiction of the Eastern District."  *Id.*

Accordingly, we remain satisfied that the legal services at issue, performed by Mr. Marcone long before this matter proceeded to litigation in this district court, were not performed within the scope of his admission to practice law before the Eastern District, but rather constituted unauthorized practice of Pennsylvania law in violation of the Pennsylvania Rules of Disciplinary Enforcement. We are further satisfied that Banks's assertions in this regard amount to nothing more than a mere "difference of opinion with the Court, which is not an appropriate ground upon which to grant a motion for reconsideration."  *United States v. Phillips*, 2001 U.S. Dist. LEXIS 6540, *4 (E.D. Pa. May 17, 2001).  Banks is unable to show that our decision of June 30, 2008 granting summary judgment as to that aspect of Count One of his counterclaim amounts to an error of law, let alone a

*clear* error of law, as he is required to demonstrate to be entitled to relief.

    An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | NO. 07-3823 |
| DAVID HERSKOWITZ and PHILIP BANKS | : | |
| Defendants | : | |

**ORDER**

AND NOW, this      day of August, 2008, upon consideration of Defendant Philip Banks's "Motion for Reconsideration of the Memorandum Opinion filed by The Court on June 30th, 2008" dated July 8, 2008 (Doc. 134) and Plaintiff's response thereto (Doc. 145), **IT IS HEREBY ORDERED THAT** Defendant Banks's motion is **DENIED**.

BY THE COURT:

/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE