IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-3823 |
| | : | |
| DAVID HERSKOWITZ and | : | |
| PHILIP BANKS | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                                         October    8, 2008
UNITED STATES MAGISTRATE JUDGE

**I.   Introduction**

Presently before the Court is Plaintiff Stephen Schutter's (alternatively "Schutter" or "Plaintiff") motion pursuant to Fed.R.Civ.P. 56(b) (Doc. 100)[1] asserting that he is entitled to judgment as a matter of law against Defendant Philip Banks ("Banks") on Count Three of his complaint, for a breach of fiduciary duty.[2] Noting that Banks has failed to respond, we nonetheless consider the motion on its merits and conclude that there is no genuine issue of material fact as to

---

[1] When citing to pages within Docket Entry 100, with the exception of a direct citation to exhibits ("Ex. __"), we refer primarily to the page numbers as they appear at the top of the page when viewing the document on the Court's Electronic Case Filing system. We recognize, however, that Docket Entry 100 contains several separate components, all of which contain their own individual page numbering schemes: a proposed order ("Order"), a one page motion ("Motion"), a statement of material facts ("Statement"), a set of exhibits, and a memorandum of law ("Memorandum"). For the benefit of the parties, we will secondarily refer to these components and their own corresponding page numbers.

[2] Subject matter in this case is predicated upon diversity of citizenship under 28 U.S.C. § 1332. Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court must apply the substantive laws of its forum state in diversity actions. *See Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614 (3d Cir. 1992). Accordingly, we apply Pennsylvania law in deciding all substantive legal issues pertaining to this case.

Schutter's assertions concerning the breach. Accordingly, and for the reasons set out below, we will enter an Order granting partial summary judgment in Schutter's favor on that claim.

**II.     Undisputed Factual Background**[3]

The abandoned property transaction at issue concerned a potential sale of the Bank Street Hostel (the "Hostel"), a property located at 32 Bank Street in Philadelphia that was owned by David Herskowitz ("Herskowitz"). (Doc. 100 at 5 (Statement at 1); Doc. 10 at 10-11). Schutter at some point came to understand that the Hostel operated with a capacity of 70 beds and, apparently based on this understanding and after some further discussion with Herskowitz, decided to purchase the Hostel. (Doc. 10 at 10-11; Doc. 90 at 4; Doc. 100 at 5-6 (Statement at 1-2)).

To facilitate the sale, Schutter procured the services of Banks, a real estate broker licensed in Pennsylvania and trading as Philip Banks Real Estate. (Doc. 10 at 3, 5, 10; Doc. 100 at 5-6 (Statement at 1-2)). By a document signed on November 30, 2005 (the "Authorization"), Schutter authorized Banks to represent him in the purchase of the Hostel and engaged him to "draft an agreement of sale for the premises and such other professional services as shall be necessary attendant [sic] to the above transaction." (Doc. 10 at 3; Doc. 100 at 5-6 (Statement at 1-2) & Ex. B). Both parties agree that the Authorization created an agency relationship whereby Banks was to act as an agent for Schutter, the principal, with respect to the sought property transaction. (*See* Doc. 100 at 30-31 (Memorandum at 5-6); Doc. 10 at 13).

---

[3] The summary judgment record before us contains undisputed facts as referenced in our previous grants of summary judgment (Docs. 123 & 129), the statement of material facts and the exhibits provided in the present motion (Doc. 100), facts distilled from Banks's answer and counterclaim (Doc. 10), facts contained in the discovery which Banks provided to Herskowitz (Doc. 90), and the Account statements provided in Bryn Mawr Trust's response (Doc. 162). We also note that Banks has failed to respond to this motion and has made no effort to show that there are or may be "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

Banks then drafted the Agreement of Sale (the "Agreement"). It was signed by Schutter on December 7, 2005 and by Herskowitz on December 15, 2005. (Doc. 10 at 9; Doc. 100 at Ex. C). It specified that the purchase price was to be $1.6 million and that Schutter was to place an initial deposit of $100,000 into an escrow account maintained by Banks at Bryn Mawr Trust Company ("BMT"). (Doc. 10 at 10; Doc. 100 at Ex. C, ¶ 3(B)). Schutter, in two tranches, paid the $100,000 to Banks for deposit in a timely manner (Doc. 10 at 10; Doc. 100 at 6 (Statement at 2)), and Banks subsequently deposited the money into his escrow account (Doc. 10 at pg. 10, ¶ 4). BMT records show that a first deposit of $10,000 was made on December 12, 2005 and a second $90,000 deposit was made on January 9, 2006. (Doc. 162 at 40, 38).

Sometime after that payment was made, in or around late January 2006, Schutter discovered, allegedly for the first time, that the Hostel's "certificate of occupancy" issued by the City of Philadelphia authorized the usage of only 54 beds as opposed to the 70 beds that were being used by Herskowitz. (Doc. 10 at 11; Doc. 100 at 6-7 (Statement at 2-3)). Upon discovering this information, Schutter sought to cancel the Agreement. Herskowitz agreed. (Doc. 10 at 11; Doc 100 at 6-7 (Statement at 2-3)). They memorialized this agreement on or about February 1, 2006 in a document entitled "Termination Agreement" (*see* Doc. 100 at Ex. D) which instructed that "all escrow monies held by Philip Banks shall be released immediately to the Buyer [Schutter]." (Doc. 10 at 4 (admitting complaint ¶ 22 "as stated")).[4]

---

[4] Paragraph 22 of the complaint averred as follows:
> On or about February 2, 2006, Defendant Herskowitz acknowledged in writing that the Agreement had been terminated, and promised in writing that "all escrow monies held by Philip Banks shall be released immediately to the Buyer [Plaintiff]."

(Case No. 06-1846, Doc. 1 at 4). The only document in the record containing verbatim the
(continued...)

Schutter then contacted Banks and informed him that he had decided not to complete the transaction. (Doc. 10 at 11; Doc 100 at 7 (Statement at 3)). Banks, however, did not release the funds, but rather prepared a different release document on or about January 30, 2006 or February 2, 2006[5] purporting to memorialize the parties' intention with respect to cancelling the Agreement and releasing the escrow funds with permission granted to Banks to retain $12,000 of the funds for his services and to remit $600 to Frank Marcone, Esq., for his legal services. (Doc. 10 at 11; Doc. 100 at 7 (Statement at 3) & Ex. E).[6] Banks asserts that Schutter "instructed Banks to procure a release of all claims from the seller" (Doc. 10 at 11); Schutter denies this and on the other hand asserts that Banks drafted the second release on his own initiative (Doc. 100 at 7 (Statement at 3)). In any event, Schutter did not agree to these fees and Banks, in turn, refused to release any portion of the escrow funds to Schutter. (Doc. 10 at 12; Doc. 100 at 7 (Statement at 3)). This action followed.

### III. Procedural Background

By his complaint, Schutter alleged breach of contract against Herskowitz (Count I); fraudulent inducement to contract against Herskowitz and Banks (Count II); breach of fiduciary duty

---

[4](...continued)
language quoted therein is the Termination Agreement. (*Compare* Doc. 100 at Ex. D *with* Case No. 06-1846, Doc. 1 at 4).

[5] As Exhibit E of his motion, Plaintiff attaches a document that purports to be Banks's draft release and indicates fax times on both dates. Banks does not dispute the authenticity of this document.

[6] In the draft release, attached as Exhibit E of Plaintiff's motion, Banks asserts that he is entitled to $12,000 as "remuneration of his services" along with $600 for legal services provided by Marcone. In his answer and counterclaim, however, Banks asserts that he actually billed Schutter $14,000 "for the services he rendered" along with $2,600 in legal fees. (Doc. 10 at 11-12 ¶ 13). The reason for this discrepancy is unclear, although given our order granting summary judgment as to this count, it is immaterial to our further consideration of the case.

against Banks alone (Count III); unjust enrichment against both Herskowitz and Banks (Count IV); and fraud and misrepresentation also against both Herskowitz and Banks (Count V).  We granted Herskowitz's motion for summary judgment as to all counts against him on June 23, 2008.  (Doc. 123).  Accordingly, Plaintiff's claims are now advanced only against Banks.

Banks filed both an answer to the complaint on November 20, 2007 and a five count counterclaim for services rendered, attorneys fees, libel and slander, and punitive damages.  (Doc. 10).  Schutter filed a motion to dismiss Counts II through V of this counterclaim.  (Doc. 22).  On March 18, 2008, noting that no response had been filed, Judge Brody granted the motion as unopposed.  (Doc. 62).[7]  On March 25, 2008, Banks filed a "Motion to Vacate" (Doc. 68) that order, which we denied on June 6, 2008 (Doc. 99).  The only remaining count, Count One which asserted a claim for "a commission as acting as an agent" and reimbursement for hiring counsel "for the purposes of preparing and procuring releases" (Doc. 10 at p. 13, ¶¶ 24, 25), was disposed of by our grant of Schutter's motion for summary judgment on June 30, 2008.  (Doc. 129).

In a motion for leave to file an amended counterclaim (Doc. 112) filed on June 16, 2007, Banks sought to re-assert the same five counts set out in his original counterclaim and to assert for the first time a *quantum meruit* claim as part of his first Count, along with a new Count Six setting out a claim for attorneys fees upon the same bases as Counts Two and Three.  By our order of July 1, 2008 (Doc. 131), we refused to permit Banks the opportunity to revive these claims and we denied his motion.  We set out our reasoning in our memorandum opinion of July 11, 2008.  (Doc. 140).

---

[7] The complaint was originally filed in the United States District Court for the District of Columbia, but on July 5, 2007 was transferred to this District pursuant to 18 U.S.C. § 1404(a) and (c) and assigned to the Honorable Anita B. Brody.  On April 17, 2008, the parties consented to Magistrate Judge jurisdiction and the matter was transferred to this court.  (Doc. 75).

By the same July 1 order and July 11 memorandum opinion, we granted Schutter's motion in limine seeking to "Exclude Certain Documentary and Testimonial Evidence" (Doc. 59) which was predicated upon Banks's blatant failure to provide discovery responses, including information as to the status of the escrow fund.

Apparently concerned about the security of the escrow funds, Plaintiff then filed on July 14, 2008, an "Emergency Motion for Order to Deposit Escrowed Monies into Court Registry." (Doc. 142). We granted that motion on August 7, 2008, and ordered Banks to set out a complete accounting of when and where the escrow funds had been deposited and the full extent of any interest accrued, and further ordered Banks to deposit the entirety of those funds with the Clerk of this Court, both by August 14, 2008. (Doc. 147). One day before his compliance with that order was due, Banks notified the Court that he had suffered a slip and fall which apparently caused him to sustain certain head trauma. (*See* Docs. 154-55). Given this circumstance, we granted counsel's motion for a continuance of the Show Cause hearing and for trial, resetting them for October 23 and 24, 2008, respectively. (Doc. 157).

In a recorded telephone conference with counsel held on August 15, 2008, where we discussed scheduling and Banks's failure to make his required deposit in a timely manner, we noted that, although sympathetic to Banks's plight, we deemed the deposit of the funds "a fairly straightforward administerial task" and articulated our concern over Banks's failure to have complied with that order. (*See* Doc. 153 at 6-9). We stressed that compliance remained imperative, and counsel for Banks provided multiple assurances, both in that recorded telephone conference and another held on August 22, 2008, that Banks intended to comply. (*See* Doc. 153 at 6-9, 12; Doc. 164 at 4 ("I've been in daily touch with [Banks] and . . . he has represented to me that he is taking care

6

of it"), 9-10). Despite these assurances, Banks has failed to comply.

On September 15, 2008, more than one month after the funds were to be deposited and an accounting was to be provided, Schutter filed a "Motion for a Rule to Show Cause Why Defendant Banks Should Not be Held in Contempt For Failure to Comply" with our August 7, 2008 order. (Doc. 159). That motion sought, as further relief, a direct order from this Court upon BMT, the entity holding the escrow funds, directing it to remove the funds from Banks's account and to deposit them with this Court. On September 17, 2008, we ordered Plaintiff to serve its motion upon BMT so that it would have an opportunity to respond. (Doc. 160). BMT did so, filing a response on September 26, 2008, containing the sworn affidavit of Andrew Avellino, the bank's Vice President and Security Officer. In the affidavit, Avellino asserted that BMT could not comply with such an order because the account had been fully depleted and closed on December 3, 2007. (Doc. 162). By supplemental memorandum filed later the same day, Schutter incorporated BMT's response into its summary judgment filings. (Doc. 163). We accept it as such, and accordingly consider Mr. Avellino's affidavit and the BMT records in our resolution of this motion.

The BMT account documents,[8] properly verified by Mr. Avellino, demonstrate that account number 8658927 in the name of Philip J. Banks d/b/a Philip Banks Real Estate Escrow Account (the "Account") was opened on December 12, 2005 with a deposit of $10,000. (Doc. 162 at 40). The

---

[8] Included within the response were copies of monthly statements, debit memos, and cancelled checks – none of which had been provided by Banks during discovery despite Schutter's specific request. (*See* Interrogatory 8 *in* Doc 59-2 (Requesting that Banks: "Identify all documents related to the Escrow Deposit, including but not limited to bank accounts in which any portion of the Escrow Deposit in connection with the Property Sale Agreement has been on deposit at any time, and identify all deposits, withdrawals, bank statements, interest or expenses that are associated with such escrow and/or bank accounts. Produce copies of any documents so identified, pursuant to the accompanying Request for Production of Documents.")).

$90,000 balance of the $100,000 escrow fund total was deposited on January 9, 2006. (Doc. 162 at 38). The statements also reflect that starting as early as January 2006 funds were regularly withdrawn from the Account by debit memo, transfer into another account, or by the issuance of checks. (Doc. 162). By February 2007 there had been, by our count, a total of 80 withdrawals in various forms (Doc. 162 at 13-40), the most significant of which was a $75,000 check payable to Philip Banks Real Estate, dated January 26, 2007, leaving the Account with an end-of-month balance of only $1,598.54. By December 3, 2007, the Account was fully depleted and closed. (Doc. 162 at 2, 4).[9] With this more fulsome record before us, we now resolve Plaintiff's motion for summary judgment on the breach of fiduciary duty claim.

IV. **Summary Judgment Standard**

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has done so, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the responding party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). "Where the record taken as a whole could not lead

---

[9] We note that at the time that Banks asserted his various claims against the escrow funds in the counterclaim filed on November 20, 2007 (Doc. 10), the escrow funds had already been depleted. The BMT documents show that on that date, when he specifically asserted that "Plaintiff has forfeited any and all claim to the fund in the possession of Banks" (Doc. 10 at 8, ¶ 43), the Account had a negative a balance of $35.45. (Doc. 162 at 4).

a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (citation omitted). Finally, only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Factual disputes which are "irrelevant or unnecessary" to a proper consideration of the case under applicable law are insufficient to preclude a grant of summary judgment. *See id.*

## V.   Discussion

To establish his breach of fiduciary duty claim, Schutter must prove that Banks, as his agent, had a fiduciary duty to act in good faith and solely for his benefit; that Banks, in refusing to return the escrow monies and ultimately in depleting the Account, failed to do so; and that Schutter suffered injury as a result.

In Pennsylvania, as a general matter:

> 'An agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit.' *Sutliff v. Sutliff*, 515 Pa. 393, 404, 528 A.2d 1318, 1323 (1987), citing Restatement (Second) of Agency § 387 (1958). Thus, in all matters affecting the subject of the agency, the agent must act with the utmost good faith in furthering and advancing the principal's interests . . . . *See Sylvester v. Beck*, 406 Pa. 607, 610-11, 178 A.2d 755, 757 (1962).

*Basile v. H&R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000). As the Pennsylvania Supreme Court has explained, permitting an agent to be "subjected to the demands of conflicting duties, is not only harmful to the business in which he is engaged, but also against sound morals and public policy." *Onorato v. Wissahickon Park, Inc.*, 244 A.2d 22, 26 (Pa. 1968).

The elements which a plaintiff must prove to properly set out a claim for a breach of fiduciary duty were set out in *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998). Specifically, a plaintiff must demonstrate the following:

> (1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed;
>
> (2) that the plaintiff suffered injury; and
>
> (3) that the agents failure to act solely for the plaintiff's benefit . . . was a real factor in bring about plaintiff's injuries.

*Id.* (citing Pa. S.S.J.I. § 4.16 (1991)); *see also Dinger v. Allfirst Fin., Inc.*, 82 Fed. Appx. 261 (3d Cir. Oct. 30, 2008) (citing *McDermott*).

Upon the summary judgment record before us, there is no dispute between the parties that an agency relationship existed between Banks and Schutter. Likewise, there is no dispute that, acting pursuant to that relationship, Banks, the real estate professional, accepted and deposited the $100,000 into his escrow account. Likewise, there is no dispute that Schutter, with the agreement of his prospective seller, Herskowitz, properly presented his demand for the return of the deposit and that Banks failed to effectuate the return and, as is now known, completely depleted the Account without making any return or even any accounting to Schutter. There is no dispute that Banks's conduct caused a clear economic injury to Schutter. The second and third elements of the fiduciary duty claim are satisfied. The remaining question concerns whether there is a genuine issue of material fact with respect to the first element – whether Banks "negligently or intentionally failed to act in good faith and solely for [Schutter's] benefit in all matters for which he was employed." Pa. S.S.J.I. (Civ) § 4.16.

While Banks has failed to file any opposition to the motion, he did assert counterclaims in November 2007 alleging that he was entitled to be compensated for his efforts as Schutter's agent despite the fact that the transaction was not completed.  (*See* Doc. 10 at pg. 4 ¶ 23 (stating, in response to Plaintiff's assertion that Banks failed to return the escrow monies, that "Banks offered to return the 'escrow' funds held in his account minus the costs of his services including legal fees and expenses"); pg. 8 ¶ 43 (stating the position that "Plaintiff has forfeited any and all claim to the fund in possession of Banks")).  Likewise in the filing of his "Motion to File a Second Amended Counterclaim"[10] in June 2008 he sought leave to again assert claims for compensation.  (*See generally* Doc. 112; *id.* at pg. 15 ¶¶ 47-49 (claiming that Schutter was liable for "the assessment of attorney's fees and costs so long as Banks accepted the legal fees and costs billed to him" in an amount in excess of $110,000)).  As the parties are aware, we have determined that none of these claims possess merit.  (*See* Docs. 68, 99, 129, 131, 140, 156).[11]  Banks's retention and ultimate depletion of the escrow funds was clearly not undertaken "solely for the benefit of [Schutter]." Pa. S.S.J.I. (Civ) § 4.16.  We are convinced that no reasonable jury could conclude that what we now know is not just Banks's improper *retention* of the funds but his actual complete *depletion* of them was done for anything other than Banks's *own* benefit.[12]  We are left to conclude that there is no

---

[10] The Amended Counterclaim, if allowed, would in fact have been a *first*, not a second, amended counterclaim.

[11] Specifically, over the course of this litigation, Banks's purported justifications for his continued retention of the funds include: payment for services rendered, attorneys fees, libel and slander, proposed punitive damages, and even a *quantum meruit* theory. (*See* Doc. 10; Doc. 112).

[12] We note that even if Banks attempted to convince us that the first element of the claim, in fact, has two separate and independent elements – requiring Schutter to prove both that Banks failed to act "solely for [Schutter's] benefit" (which we conclude Schutter has done) *and* that

(continued...)

proper triable issue and summary judgment in favor of Schutter and against Banks is appropriate as to this claim. Plaintiff's motion is **GRANTED**.

While Plaintiff has clearly demonstrated as a matter of law that he is entitled to the full return of the $100,000 deposited with Banks, his further entitlement on account of interest, compensatory damages and punitive damages is not appropriate for summary judgment and shall be deferred subject to a trial on damages and Schutter's remaining claims on October 24, 2008.

An appropriate Order follows.

---

[12](...continued)
Banks failed to act in good faith, we are unable to find any support for such an argument. *See McDermott v. Party City Corp.*, 11 F. Supp.2d 612, 626, n.18 (E.D. Pa. 1998); *WIH Mgmt., Inc. v. Heine*, 1999 U.S. Dist. LEXIS 14926, *4-5 (E.D. Pa. Sept. 30, 1999) (finding, albeit in the context of a Fed. R. Civ. P. 12(b) motion, that an assertion that "defendant intentionally failed to act solely for the benefit of the plaintiff" satisfied for pleading purposes the first element of the claim notwithstanding the fact that it made no specific reference to any failure to "act in good faith"). We are thus convinced that Banks's clear and intentional act of retention and later depletion of the fund satisfies the first element of Plaintiff's breach of fiduciary duty claim.

We also note that the various meritless claims against the escrow funds presented by Banks were articulated before he had disclosed to Schutter or to the Court that the funds had not only been retained but had been fully depleted. The BMT account records reveal that Banks attempted to bring his claims against the escrow funds only *after* the Account had been fully depleted, which only bolsters our finding of bad faith on Banks's part. The BMT records, in fact, indicate that the Account balance as of November 20, 2007, the date upon which he first asserted his positions, was *negative* $35.45. (Doc. 162 at 4). We conclude that no reasonable jury could determine that Banks possessed a good faith justification in his continued retention and eventual depletion of the escrow funds.