IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO.  07-3823 |
| | : | |
| DAVID HERSKOWITZ and | : | |
| PHILIP BANKS | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                              November     6, 2008
UNITED STATES MAGISTRATE JUDGE

**I.      Introduction**

Presently before the Court is Plaintiff Stephen Schutter's (alternatively "Schutter" or "Plaintiff") "Motion to Amend Order to Deposit Escrowed Monies Into Court Registry (#147) and Order to Show Cause (Docket #168) (Doc. 184), filed on October 24, 2008.  By our Order entered the same day (Doc. 186), noting our intention to rule on the motion on or after October 30, 2008, we directed Defendant Philip Banks ("Banks") to file any response by October 28, 2008.  Banks filed his timely response on that date.  (Doc. 191).  For the reasons set out below, we will enter an Order granting Plaintiff's motion in part.

**II.     Factual Background**

This matter arises out of an abandoned property transaction in which Schutter was the prospective buyer and Banks, a real estate broker licensed in Pennsylvania and acting pursuant to an Authorization Agreement (the "Authorization"), served as Schutter's agent.  The litigation primarily involves a dispute over an escrow fund of $100,000 which Schutter, pursuant to an

Agreement of Sale (the "Agreement"), deposited with Banks in December 2005.  In that we write for the parties who are well aware of the basic facts of the dispute and that our consideration of this motion is based exclusively upon procedural matters, we need not again set out the full account here, but rather will incorporate the factual background set out in our various memorandum opinions issued in this case.  (*See* Docs. 99, 123, 129, 140).

III.    **Relevant Procedural Background**

Upon the parties consenting to Magistrate Judge jurisdiction the subsequent transfer of this matter to this Court, we issued a series of rulings upon motions filed by Schutter which essentially precluded Banks from bringing forward various counterclaims asserted in his answer to the initial complaint.  (*See* Docs. 99, 123, 129, 140).  One of these rulings, issued on July 1, 2008 (Doc. 131) and supported by an accompanying memorandum opinion issued on July 11, 2008, denied Banks leave to file an amended complaint due, in part, to an extensive history of persistent non-compliant behavior on the part of Banks and/or his counsel.  (*See* Doc. 140 at 6-12, 23-24).  By the same July 1 Order and July 11 memorandum opinion, we granted Schutter's motion in limine seeking to "Exclude Certain Documentary and Testimonial Evidence" (Doc. 59) which was specifically predicated upon Banks's blatant failure to provide discovery responses, including information as to the status of the escrow fund.

Apparently concerned about the security of the escrow funds, Plaintiff then filed on July 14, 2008 an "Emergency Motion for Order to Deposit Escrowed Monies into Court Registry."  (Doc. 142).  We granted that motion on August 7, 2008, and ordered Banks to set out a complete accounting of when and where the escrow funds had been deposited and the full extent of any interest accrued, and further ordered Banks to deposit the entirety of those funds with the Clerk of

this Court, both by August 14, 2008.  (Doc. 147).  One day before his compliance with that Order was due, Banks notified the Court that he had suffered a slip and fall which apparently caused him to sustain certain head trauma.  (*See* Docs. 154-55).  Given this circumstance, we granted counsel's motion for a continuance of the Show Cause hearing and of trial, resetting them for October 23 and 24, 2008, respectively.  (Doc. 157).

In a recorded telephone conference with counsel held on August 15, 2008, where we discussed scheduling and Banks's failure to make his required deposit in a timely manner, we noted that, although sympathetic to Banks's plight, we deemed the deposit of the funds "a fairly straightforward administerial task" and articulated our concern over Banks's failure to have complied with that order.  (*See* Doc. 153 at 6-9).  We stressed that compliance remained imperative, and counsel for Banks provided multiple assurances, both in that recorded telephone conference and another held on August 22, 2008, that Banks intended to comply.  (*See* Doc. 153 at 6-9, 12; Doc. 164 at 4 ("I've been in daily touch with [Banks] and . . . he has represented to me that he is taking care of it"), 9-10).  Despite these assurances, Banks failed to comply.

On September 15, 2008, more than one month after the funds were to be deposited and an accounting was to be provided, Schutter filed a "Motion for a Rule to Show Cause Why Defendant Banks Should Not be Held in Contempt For Failure to Comply" with our August 7, 2008 order. (Doc. 159).  That motion sought, as further relief, a direct order from this Court upon Bryn Mawr Trust ("BMT"), the entity holding the escrow funds, directing it to remove the funds from Banks's account and to deposit them with this Court.  On September 17, 2008, we ordered Plaintiff to serve its motion upon BMT so that it would have an opportunity to respond.  (Doc. 160).  BMT did so, filing a response on September 26, 2008, along with Banks's account documents.

3

The BMT account documents demonstrated that an account in the name of Philip J. Banks d/b/a Philip Banks Real Estate Escrow Account (the "Account") was opened on December 12, 2005 with a deposit of $10,000. (Doc. 162 at 40). The $90,000 balance of the $100,000 escrow fund total was deposited on January 9, 2006. (Doc. 162 at 38). The statements also reflected that starting as early as January 2006, funds were regularly withdrawn from the Account by debit memo, transfer into another account, or by the issuance of checks. (Doc. 162). By February 2007 there had been, by our count, a total of 80 withdrawals in various forms (Doc. 162 at 13-40), the most significant of which was a $75,000 check payable to Philip Banks Real Estate, dated January 26, 2007, leaving the Account with an end-of-month balance of only $1,598.54. By December 3, 2007, the Account was fully depleted and closed. (Doc. 162 at 2, 4).

With this fulsome record before us, we granted Schutter's September 15, 2008 "Motion for a Rule to Show Cause Why Defendant Banks Should Not be Held in Contempt For Failure to Comply" with our August 7, 2008 order. (Doc. 168). By that Order, we not only directed Banks to show cause for his failure to have accounted for or to have deposited the escrow funds as had been required by our August 7, 2008 Order, but also directed him to show cause as to why he should not be compelled to deposit with the Clerk of this Court the sum of $100,000 from whatever source is available to him such that he could put himself in at least partial compliance with our August 7, 2008 Order. (Doc. 168). The hearing on these matters was scheduled for the same time and date as the Show Cause hearing previously scheduled for Thursday, October 23, 2008, pertaining to Banks's failure to comply with other direct Orders from this Court.

On the morning of October 23, 2008, we received a telephone call from counsel for Banks, Michael Yanoff, Esquire, who informed the Court that he had received a telephone call from Banks's

4

significant other, Ms. Margo Zitin.  Ms. Zitin told Mr. Yanoff that Banks was being taken to the

hospital with an unspecified medical condition.   Nonetheless, noting that Banks's former counsel,

Frank Marcone, Esquire, had also been ordered to show cause as to why he should not be held at

least partially responsible for Banks's non-compliance (*see* Docs. 143, 168), and noting that a final

pre-trial conference had been scheduled to take place subsequent to the hearing, the Court informed

the parties that we would proceed on the show cause Order as scheduled, at least for the purpose of

taking testimony from Mr. Marcone.  We also advised the parties that we would not complete the

record of the hearing until Mr. Yanoff had an opportunity to present testimony from Banks and take

further testimony from Mr. Marcone after he had fully consulted with Banks.

Before proceeding with the matter pertaining to Mr. Marcone, however, we raised the

question of Banks's failure to have accounted for or to have deposited the escrow funds.  While Mr.

Yanoff acknowledged that the escrow account had indeed been depleted and closed, he informed the

Court that Banks had represented to him that he (Banks) had still retained the $100,000 escrow but

that was on deposit in a different account at a different bank.  He submitted to us a document

purporting to be an online bank statement from "The PNC Financial Services Group, Inc."  The

statement listed two account numbers, the first ending with the numbers 6764 and indicating an

available balance of $325.58, the second ending with the numbers 5912 and indicating an available

balance of $101,143.63.  The accounts combined for a total available balance of $101,469.21.  While

we have no reason to question Mr. Yanoff in the making of the representation, we do observe that

the document provided is dated September 20, 2007 and even fails to identify the name of the

account holder.

The next matter discussed was Banks's medical condition.  This issue arose in that we were

scheduled to commence the damages trial the next day.  Mr. Yanoff provided the Court with a note

from Robert I. Katz, M.D., F.A.C.C., a doctor at the Penn Presbyterian Medical Center.  The note

stated: "Please excuse Mr. Philip Banks from court as I believe he has a cerebral bleed.  Please don't

hesitate to contact my office if you have any questions."  We, in turn, invited Mr. Yanoff into

chambers for a telephone conference with Dr. Katz.  The doctor confirmed that he was authorized

to speak both to counsel and the Court, and informed us that Banks was scheduled for an MRI later

that evening and that he would inform counsel of the results the following morning.  He did so and

Mr. Yanoff provided us with a note from Dr. Katz which indicated that Banks "should not be

stressed in court and avoid [sic] highly stressful situations for the next 10 days."  For this reason we

again adjourned the trial.  We subsequently learned from counsel via a fax transmitted to us on

October 28, 2008 that Banks had been hospitalized from October 25 through October 28, 2008 due

to a cardiac issue.  The note on a script from "Cardiology Consultants" in Bryn Mawr, Pennsylvania

stated, however, that Banks would be "free/cleared for appearance as of 11/28/08."

On October 24, 2008, Schutter filed a "Motion to Amend Order to Deposit Escrowed Monies

Into Court Registry (#147) and Order to Show Cause (Docket #168)."  The motion seeks an

amendment of our August 7, 2008 so as to include a $500.00 per diem fine for every day that Banks

fails to deposit $100,000 with the Court.  Banks filed his response on October 28, 2008.  (Doc. 191).

The motion is ripe for review, and we address it against this procedural history.

## V.     Legal Standards

### A.     This Court's Authority to Enforce its Orders: Civil Contempt

It goes almost without saying that a district court possesses the "inherent power to enforce

compliance with [its] lawful orders through civil contempt."  *Spallone v. United States*, 493 U.S.

265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *see also Harris v. City of Philadelphia*, Civ. A. No. 82-1847, 1999 U.S. Dist. LEXIS 19846, *21 (E.D. Pa. 1999).  To find a litigant in civil contempt, the court must satisfy itself, through "clear and convincing evidence," that: "(1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order."  *John T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (citing *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995)).

### B.     Appropriate Remedies for Civil Contempt Finding

In fashioning an appropriate remedy for a finding of contempt, a court must be mindful of the dichotomy between criminal contempt and civil contempt.  In contrast to the former, "civil contempt may be employed to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience."  *McDonald's Corp. v. Victory Inv.*, 727 F.2d 82, 87 (3d Cir. 1984).  Compensatory fines may only be assessed "based upon evidence of complainant's actual loss."  *Id.*  On the other hand,

> Coercive sanctions . . . look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction *by setting forth in advance the penalties the court will impose* if the party deviates from the path of obedience.

*Id.* (emphasis in original) (citing *Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336, 1344 (3d Cir. 1976)).

The Supreme Court of the United States has concluded that "penalties designed to compel future compliance with a court order[] are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."  *Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994).  By way of illustration, the Court

7

explained:

> The paradigmatic coercive, civil contempt sanction, as set forth in
> *Gompers*, involves confining a contemnor indefinitely until he
> complies with an affirmative command such as an order . . . 221 U.S.
> at 442; *see also McCrone v. United States*, 307 U.S. 61, 64, 83 L. Ed.
> 1108, 59 S. Ct. 685 (1939) (failure to testify). Imprisonment for a
> fixed term similarly is coercive when the contemnor is given the
> option of earlier release if he complies. *Shillitani v. United States*,
> 384 U.S. 364, 370, n. 6, 16 L. Ed. 2d 622, 86 S. Ct. 1531 (1966)
> (upholding as civil "a determinate [2-year] sentence which includes
> a purge clause"). In these circumstances, the contemnor is able to
> purge the contempt and obtain his release by committing an
> affirmative act, and thus "'carries the keys of his prison in his own
> pocket.'" *Gompers*, 221 U.S. at 442, quoting *In re Nevitt*, 117 F. 448,
> 451 (CA8 1902).

*Id.* at 828. A close analogy to indefinite coercive imprisonment, the Court explained, "is a per diem

fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil

imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed,

the future, indefinite, daily fines are purged." *Id.* at 829.

## VI.    Discussion

While the present motion does not explicitly seek a finding of civil contempt, it seeks a

prospective, *per diem* fine against Banks to coerce him to comply with an Order of this Court with

which, Schutter asserts, Banks has thus failed to comply. We believe that the relief which Schutter

seeks may be granted only upon a finding that Banks is contempt of this Court for a failure to comply

with the Order at issue, and thus analyze the elements set out by the Third Circuit, specifically

whether: "(1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the

defendant disobeyed the order." *John T.*, 318 F.3d at 552.

### A.    Existence of Valid Court Order

Banks nowhere suggests that our August 7, 2008 Order (Doc. 147) directing him to both provide an accounting of and to deposit with the Clerk of this Court the escrow funds at issue in this case was in any way improper, unlawful or invalid.  We are unable to see how he would have any reason to do so.  This element is clearly met.

### B.    Banks's Knowledge of the Valid Court Order

Given certain statements made by Banks in open court on July 11, 2008, we developed serious concerns about the level of communication between Banks and his then-counsel of record, Frank Marcone, Esquire, particularly with respect to certain direct Orders from this Court with which Banks had (and to this day has) yet to comply.  (*See, e.g.* N.T. 7/11/08 at 27-29 ("MR. BANKS: I find myself in court on a contempt citation.  I never knew that this contempt citation existed until last week.  I've never seen the Court's orders to pay or to respond to interrogatories. . . . I've never seen the court orders. . . . Then it says, yet to comply with two court orders.  I've never seen a court order.  I've never been served with a court order and counsel has never shown me one.")).  Accordingly, we informed Banks that we would send him a copy of the next Order which we intended to issue.  (*See* N.T. 7/11/08 at 43 ("[Y]ou'll have a copy of the order in a couple days.  If you want me to send it to you directly, I will, Mr. Banks.")).  We have continued since that time to send Banks personally a copy of every Order which we subsequently issued.

Counsel for Banks has confirmed on several occasions that Banks has indeed received the mailings from this Court.  In a telephone conference held by this Court on the record with counsel for the parties (including Mr. Yanoff who, at that point, had not yet entered his appearance upon the record), the following exchange took place:

9

> MR. LOOTS: . . . . I have a more immediate concern, however. Which is that Mr. Banks's fall and hospitalization happened just 24 hours before he was supposed to have put the money into the Court's escrow.  So that, to the best of my knowledge, has not happened nor has documentation, pursuant to the Court's order of August 7, been produced. . . .

> MR. YANOFF: . . . . I spoke to him [Banks] about your order and it was his intention to comply with that.  At least that's what he told me on the phone. . . . I can only tell you what he tells me and in response to receiving the order, which both Frank and Jim sent to me, I called him immediately and he said it was his intention, obviously, to comply with the order.

(N.T. 8/15/08 at 6-7).

On August 22, 2008, we held another telephone conference on the record with parties of counsel (Mr. Yanoff, at that point, had entered his appearance upon the record), and the following exchange occurred:

> MR. LOOTS: . . . . Mr. Banks has still not complied with the Court's August 7 order to deposit the money with the court depository either.

> THE COURT: Really, I had understood that was to be taken care of early in the week.  Mr. Yanoff?

> MR. YANOFF: Yes, that was my understanding as well, your Honor. I've been in daily touch with my client and what he tells me is that he spent every day in his doctor's offices. . . . He has represented to me that he is taking care of it.  But as of this moment, I have no verification, your Honor, that the money has been deposited. . . . All I can tell you is that my client has continually assured that it is not a problem, but he's taking care of his health issues first. . . . All I know is he continues to tell me that his intent is to comply with that order . . . .

(N.T. 8/22/08 at 4-5).

We are satisfied, based upon this record, that Banks indeed has personal knowledge of our August 7, 2008 Order.  This element is clearly met.

10

### C.      Banks's Continued Disobedience of the Valid Court Order

As set out above, in the August 15, 2008 recorded telephone conference, we noted that, although sympathetic to Banks's medical plight, we believe the deposit of the funds to be "a fairly straightforward administerial task" and articulated our concern over Banks's failure to have complied with that Order.  (*See* N.T. 8/15/08 at 6-9).  We stressed that compliance remained imperative, and counsel for Banks provided multiple assurances, both in that recorded telephone conference and another held on August 22, 2008, that Banks intended to comply.  (*See* N.T. 8/15/08 at 7 ("I will do what I can, starting Monday, to get compliance with that order as quickly as I possibly can"), 8-9, 12; N.T. 8/22/08 at 4 ("I've been in daily touch with [Banks] and . . . he has represented to me that he is taking care of it"), 8-10).  Despite these assurances Banks, up to the date of this order, has failed to comply.

In the interest of offering an alternative solution, we suggested to Mr. Yanoff that perhaps Banks could appoint him with a power of attorney so that Mr. Yanoff could effectuate the deposit of the escrow funds, but apparently Banks was not amenable:

> THE COURT: I would have thought that it would be relatively simple, perhaps, for your client to execute something in the nature of a limited power of attorney for your own benefit, in order to make arrangements to have that done.  Have you discussed something like that with him?
>
> MR. YANOFF: I have, your Honor and so far, he has not been willing to do so.  Well, I shouldn't say willing.  That may not be the point.  He has not been able to do so.

(N.T. 8/22/08 at 5).

Mr. Yanoff also assured us that he had made clear to Banks the consequences of his continued failure to comply with our August 7, 2008 Order:

> THE COURT: . . . But you know . . . some sanction may very well be appropriate and I just am, you know, putting you on notice of that and letting Mr. Loots know that my intention is not to let this pass. . . .
>
> MR. YANOFF: Judge, if I may, I have said that to him two dozen times already. . . . You know, I'm trying to use every ability that I have to get him to understand that.  And I believe he understands it. . . . But I have tried to tell him that, you know, what you risk by not taking care of it in some fashion, the sanctions. . . . I mean, I, obviously, can't take his hand and make him do it.

(N.T. 8/15/08 at 9-10).

These circumstance led to our eventual Order of October 9, 2008, which granted Schutter's motion to add Banks's failure to account for and deposit the funds to the October 23, 2008 Show Cause hearing agenda.  (Doc. 168).  As set out above (*see supra* at 4-6), due to another medical setback, Banks was unable to attend the hearing to give his testimony.  Nonetheless, as set out above, Mr. Yanoff informed us that Banks still possesses the $100,000 amount, only in a different bank and in a different account and submitted to us a document purporting to be an online bank statement from "The PNC Financial Services Group, Inc."  While the statement does contain certain deficiencies, in that it dates back more than a year and does not indicate a named account holder, we fully accept counsel's representations and find that Banks has the means with which to comply, and indeed, to have long ago complied, with our August 7, 2008 Order.

Further, conversations with and notes from Banks's doctors have assured us that he possesses the physical capability of performing, or authorizing his attorney to perform for him, a task as simple as depositing funds.  While Dr. Katz's note of October 24, 2008 indicated that Banks "should not be stressed in court and avoid [sic] highly stressful situations for the next 10 days," it did not indicate that Banks was otherwise mentally or physically incapacitated so as to make him unable to perform

a simple ministerial task such as accounting for and depositing with the Court pertinent funds.  Nor does it indicate that he could not simply authorize someone such as counsel or Ms. Zitin to perform those tasks for him.  Dr. Katz further confirmed in a second telephone conference that Banks suffered no long-term restrictions.  Likewise, while the doctor's note transmitted to us via a fax on October 28, 2008 by Banks's counsel indicated that Banks had been hospitalized from October 25 through October 28, 2008 and stated that Banks would be "free/cleared for appearance as of 11/28/08," it did not indicate that Banks would be unable to take the simple actions with respect to the funds.

Tellingly, in his response to the motion, Banks even admits his continued failure to have complied with our Order.  (*See* Doc. 184 at 2-3 (admitting ¶¶ 2, 5-6 of Doc. 184).  His failure to have done so, even after taking his medical issues into consideration, is inexcusable and it is obvious. There can be no doubt that the third element is met.

We need not await the outcome of a Show Cause hearing with respect to this issue.  All three elements are satisfied.  We find Banks is in civil contempt of this Court for his continued, 83 day failure to comply with our August 7, 2008 Order and proceed to determine the appropriate coercive remedy.

## D.      Coercive Remedy

By his motion, Schutter seeks a coercive *per diem* penalty of $500.00 per calendar day, starting from the date of the issuance of this Order, for each day more that Banks fails to deposit a sum of $100,000 with the Clerk of this Court.  (Doc. 184 at 4-8).  As discussed above, our Supreme Court has approved the use of this sanction in order to gain compliance with an order from a recalcitrant party.  *See Int'l Union v. Bagwell*, 512 U.S. at 828.  By the imposition of a *per diem*

penalty, Banks "carries the key[]" to his release from the sanction, *see id.* – compliance with our August 7, 2008 Order.  Such sanction is clearly appropriate here.

We decline to impose a $500.00 amount, however.  For guidance, we first look to the Pennsylvania statutory interest rate, which provides 6 percent per annum.  *See* 41 Pa.C.S.A. § 202; *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 395-96 (3d. Cir. 2000).  Multiplying this amount by the $100,000 escrow amount, we come to $6,000 per year, or $16.44 per day.  The penalty need not equate the actual harm suffered, however.  Application of that sum, while appropriate for compensatory purposes, would not have the desired effect of coercing compliance with our Order.  A sum substantially in excess of that amount is required.  We conclude that a *per diem* sanction of $100.00 per day is appropriate.

###     E.       Compensatory Remedy

Plaintiff additionally seeks an award of his attorneys fees, costs and expenses incurred in preparing the present motion, in preparing the motion seeking the Order to show cause, and in participating in the hearing on October 23, 2008. (Doc. 184 at 5).  Compensatory fines are also an appropriate remedy upon a finding of contempt, so long as such a fine is "based upon evidence of complainant's actual loss." *McDonald's Corp.*, 727 F.2d at 87.  We find that Schutter is entitled to the compensatory relief he seeks, save for compensation pertaining to the October 23, 2008 hearing which, in fact, dealt primarily with several other separate and independent issues that will be dealt with in due course.

Plaintiff, as a result of a previous award of attorneys fees, costs and expenses due to Banks's failure to provide discovery, has previously submitted to us a sworn verification as to the appropriate costs associated with the filing of a motion.  (*See* Doc. 88).  Specifically, Plaintiff submitted to us

14

that attorney James Loots, Esquire has a regularly established and standard billable rate of $285.00 per hour and expended 1.1 hours in the supervision and preparation of the motion (establishing a total sum of $313.50).  Plaintiff likewise submitted to us that attorney Kelle Kilgarriff, Esquire, has a regularly established and standard billable hourly rate of $150.00 per hour, and expended 3.1 hours for various functions performed (establishing a total sum of $465.00).  Plaintiff finally submitted $18.40 in copying and postage costs.  Added together, these costs totaled $796.90.

While we realize that we are dealing here with different motions and we might normally ask counsel to submit an affidavit, we are mindful of the costs incurred with that process, and perceive that the effort and costs incurred in bringing the two motions that this Order effectively disposes of (Schutter's September 15, 2008 motion seeking the show cause order (Doc. 168) and the present motion (Doc. 184)) bears rough comparability.  We accept that this determination of fees is not an exact science, and with a view toward efficiency award a comparable sum of $850.00 for each of the two motions.  Schutter is entitled to an award of $1,700.00 to pay for the cost of bringing these motions.

By this ruling we do not foreclose Schutter from further pursuit of his other compensatory damage claims at the Show Cause hearing and at trial.

An appropriate Order follows.

15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-3823 |
| | : | |
| DAVID HERSKOWITZ and | : | |
| PHILIP BANKS | : | |
| | : | |
| Defendants | : | |

**ORDER**

AND NOW, this   6th       day of November, 2008, upon consideration of Plaintiff Stephen Schutter's ("Schutter") "Motion for a Rule to Show Cause Why Defendant [Philip] Banks Should Not be Held in Contempt for Failure to Comply with the Court's Order of August 7, 2008," dated September 15, 2008 (Doc. 159), Schutter's "Motion to Amend Order to Deposit Escrowed Monies Into Court Registry (#147) and Order to Show Cause (Docket #168)" dated October 24, 2008 (the "Present Motion") (Doc. 184) and the response thereto from Defendant Philip Banks ("Banks") dated October 28, 2008 (Doc. 191), **IT IS HEREBY ORDERED THAT** the Present Motion is **GRANTED IN PART** as follows:

1.  Banks is hereby found in civil **CONTEMPT OF COURT** for his failure to comply with our Order of August 7, 2008 (Doc. 147);

2.  **On or before Monday, November 10, 2008**, Banks **SHALL DEPOSIT** to the Clerk of this Court the sum of $100,000.00[1] ;

---

[1] Pursuant to Local Civil Rule 67.2(a), payment of these funds shall, unless otherwise determined by the Clerk of this Court, be made in cash, money order, certified or cashier's check. Banks is referred to the Clerk's Office Procedural Handbook, found online at

(continued...)

3.    For every day subsequent to **Monday, November 10, 2008** that Banks fails to comply with Paragraph 2 of this Order, Banks **SHALL PAY** to Schutter a *per diem* fine of $100.00 per day;

4.    Pursuant to Fed.R.Civ.P. 67(b) and upon receipt of Banks's deposit, the Clerk of this Court **SHALL SUBSEQUENTLY DEPOSIT** the funds turned over by Banks into an interest bearing account where they shall remain subject to further order of this Court;[2]

5.    Banks **SHALL PAY** to Schutter reasonable attorneys fees, costs and expenses associated with the bringing of the motions which we dispose of here, in the amount of $1,700.00, on or before **Monday, November 17, 2008**.

6.    The Present Motion is **DENIED** in all other respects.


                              BY THE COURT:



                               /s/ David R. Strawbridge
                              DAVID R. STRAWBRIDGE
                              UNITED STATES MAGISTRATE JUDGE

---

[1](...continued)
http://www.paed.uscourts.gov/documents/handbook/handbook.pdf, for further assistance as to the procedure regarding the deposit of funds into the Court registry.

[2] The parties are reminded that, as set out in page 78 of the Clerk's Office Procedural Handbook, a fee in the amount of 10% of the annual interest accrued is charged to cover the Court's costs in handling registry funds.