IN THE UNITED STATES FEDERAL DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN SCHUTTER : | NUMBER 2:07 CV 03823 - AB |
|     Plaintiff : | |
| vs. : | |
| : | |
| DAVID HERKOWITZ : | |
|     Defendant : | |
| : | |
| and : | |
| : | |
| PHILIP BANKS : | |
|     Defendant : | |
|     Plaintiff on the Counterclaim : | |
|     against Schutter and Herskowitz : | |

ORDER

AND NOW, this          day of                        ,2008, upon consideration of the Motion filed by  seeking Sanctions and after a review of the record related to turning the file over to Michael Yanoff, Esquire, it is hereby ORDERED and DECREED that the Motion for Sanctions filed in behalf of Philip Banks is Denied and the Show Cause is Dismissed with Prejudice. and all the requests for discovery are GRANTED, and Michael Yanoff, Esquire is ORDERED to disclose evidence he has in his possession related to the claims made by Philip Banks regarding his medical condition as well as his reasons for seeking to withdraw as counsel for Philip Banks

By the Court;

_____

David R. Strawbridge, Judge

IN THE UNITED STATES FEDERAL DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN SCHUTTER | : NUMBER 2:07 CV 03823 - AB |
|     Plaintiff | : |
| vs. | : |
| | : |
| DAVID HERKOWITZ | : |
|     Defendant | : |
| | : |
| and | : |
| | : |
| PHILIP BANKS | : |
|     Defendant | : |
|     Plaintiff on the Counterclaim | : |
|     against Schutter and Herskowitz | : |

**MOTION TO DISMISS THE RULE TO SHOW CAUSE
AND FOR DISCLOSURE OF THE INFORMATION PROVIDED TO THE COURT
REGARDING THE PHYSICAL CONDITION OF PHILIP BANKS**

Frank J. Marcone, Esquire, files this Motion seeking a Dismissal of the Rule to Show Cause filed by the Court and to Disclose any and all information provided to the Court regarding the physical condition of Philip Banks and in support of This Motion avers the following:

    1. On March 17th, 2008 Jay Herskowitz, Esquire joined by James T. Loots, Esquire and Charles Curley, Esquire, as well as Kellie Kilgarriff, Esquire, filed a Motion in which they falsely accused Frank J. Marcone, Esquire, of being "disbarred".

    2. Thereafter, This Court has taken various steps which have included refusing to chastise those attorneys for falsely claiming Marcone was disbarred and further for violating the Rules of Professional Conduct for intentionally lying to the Court.

    3. During Discovery in the above case, Marcone filed Answers to Interrogatories filed by Jay Herskowitz, Esquire, and subsequently responded to the finding by the Court that Philip Banks had failed to respond to the second set of Interrogatories filed by Herskowitz.  That response asserted that by contract provisions contained in the Agreement of Sale, any costs or attorneys fees incurred by Banks during any lawsuit wherein he was joined as a party would be the responsibility of the person who brought him into the lawsuit, namely, Stephen Schutter.

4. Those responses were the product of a refusal by Banks to contribute to any of the information sought by the Defendant, Herskowitz as well as by the Plaintiff, Schutter.

5. Marcone had sought the cooperation of Banks by seeking his assistance in procuring information from the Real Estate Commission of the Commonwealth of Pennsylvania. When Marcone attempted to procure the information from Investigator Driscoll, he was told the only person who could procure the information was Mr. Banks. This apparently was due to the "privacy" standards of the Commission. When Marcone attempted to enlist Mr. Banks' assistance, at first he was told Banks would cooperate and procure the records. As time passed and it became apparent he had not complied arguments began to occur between Banks and Marcone.

6. Banks began to exhibit irrational "anger" at the suggested assistance and insisted that Marcone do everything to prevent the case from going to trial until October of 2008 at the earliest. When asked why, Banks angrily responded that it was personal and then intimated his health was a partial reason. When asked what was the health problem, Banks refused to explain claiming he was a "private person" and the information was his and his alone.

7. Marcone continued to contact Banks on an almost daily basis pressing him to provide Marcone with a list of the services he claimed was the basis for his claim against Stephen Schutter for the work he accomplished in his behalf.

8. Banks finally relented and provided a sparse list of services but when Marcone reviewed them he told Banks it was inadequate and needed to be more specifically itemized.

9. Banks became more "annoyed" and actually screamed at Marcone making derogatory remarks and suggesting that he should "make up" records. When Marcone refused, Banks again angrily demanded Marcone do all he could do to postpone the trial. Banks had worked in his father's law office and also with his brother, who was a lawyer and he claimed he knew a case could be continued at any time by a "good lawyer" and demanded that Marcone act as he was instructed.

10. Finally, after prolonged telephone contacts with Banks, he relented and provided a list of services he claimed he provided to Stephen Schutter. At that point, the Interrogatory responses were provided to Herskowitz and by sending a copy to Schutter's attorneys, to

Schutter.

11. When asked to come to Marcone's office to review and sign the Answers to Interrogatories, Banks responded he was either to "busy" or that Marcone should sign them himself and submit them.  Banks refused to cooperate in providing "Signed" answers and stated he felt "put out by the request to review and sign them".

12 Upon being pressed by Marcone, he agreed to come to Marcone's office to review the documents and discuss any errors.  When he did come to the office he insisted they first have lunch at a local Bar/Restaurant known as the "Little Inn" wherein Banks would proceed to consume multiple Martinis and then when they returned to the office he refused to enter the Office claiming he had something he had to do.

13. The arguments between Banks and Marcone became increasingly ugly and Marcone began to threaten that he would have to withdraw due to the acrimony and lack of cooperation by Banks.

14. Shortly before July 10, 2008 and in the throes of an almost violent argument between Marcone and Banks, at Marcone's office, Banks finally confessed his reason for his intentional lack of cooperation with Marcone and to doing everything he could to sabotage the progression of this case.  He informed Marcone that he had been invading the escrow account and it had a balance of approximately $35,000 left in the account.  He further explained that he and his friend Margo Zitin had been working on a large loan for a massive building project in the Pocono Mountains and he expected the "deal" to be completed by October and then he would have sufficient funds to replace the $65,000 of the escrow fund he had purloined.

15. Marcone told Banks he intended to consult other lawyers and fully expected to file a Motion to withdraw as his counsel.

16. After discussing the above with associates, including Samuel Stretton, Esquire, Marcone prepared and filed a Motion to Withdraw as Bank's attorney.  That filing was on July 10, 2008.

17. Both Banks and Marcone appeared before the Court at a Show Cause hearing on July 14, 2008 but Marcone was unable to inform the Court of the invasion of the funds since Banks

demanded Marcone remain silent under the privilege of lawyer /client relationship.

18. During the hearing on the Motion to Withdraw, the Court noted that it was clear both Banks and Marcone had reached an impassable point in the lawyer/client relationship however when the Court asked Banks if he was aware of the sanctions against him for his failure to respond to the Interrogatories he said he was "unaware" of them.

19. On the basis of that remark, the Court entered an Order to Show Cause upon Marcone.

20. When Marcone wrote to the Court requesting clarification of the subject of the Order to Show Cause, the Court refused to respond.

21. On the day the Motion to Withdraw was addressed, Schutter filed a Motion seeking to have the funds in the escrow account turned over to the Court. That Motion did not suggest the account had been pilfered.

22. Banks immediately began to "blame" Marcone asserting that if he had not chosen to withdraw, the Motion for the turn over would not have been filed.

23. Banks then asserted he would procure new counsel as instructed by the Court and he apparently contacted Michael Yanoff, Esquire, who asserts he is a "friend" of Margo Zitin. Marcone also has had a long relationship with Ms. Zitin.

24. Marcone began an effort to have Mr. Yanoff enter his appearance so that Marcone could disclose to new counsel the fact Banks had pilfered the escrow account. The record evidences that between July and late August, 2008, when Yanoff finally entered his appearance, Marcone placed 19 calls to Yanoff and only had one response. Further, Marcone volunteered to drive to Yanoff's Office (Over a hundred miles round trip.) for the purpose of determining if Yanoff had all of the file necessary to prepare to enter his appearance. Marcone traveled to Mr. Yanoff's office offering full cooperation in the transition.

25. During the transition period, Banks claimed he did not have copies of the evidence in the case and although he had the evidence originally, he claimed he needed copies from Marcone's files. Marcone immediately faxed the 55 pages which had been given Banks earlier/

Banks claimed his fax machine would not accept that many copies.  Marcone suggested that Banks drive to Marcone's Office to pick up copies but Banks stated that would be "inconvenient" and demanded that Marcone mail them to him, offering to pay the expense of mailing.  (Banks lives approximately 10 miles from Marcone's Office.)   He never paid.

26. Marcone complied but when he met with Mr. Yanoff he found items 17 on had not been delivered to Mr. Yanoff.   Marcone immediately sent those copies to Mr. Yanoff and offered to provide any other documents requested.  Marcone also cooperated with Mr. Yanoff by providing him information and research which was used by Mr. Yanoff after he entered his appearance.

27. When Mr. Yanoff inquired regarding where was the money, Marcone disclosed what he had been told.

28. On the day scheduled for Banks to appear for the purpose of explaining the status of the escrow fund he claimed he fell in his bathtub suffering a head injury which has never been substantiated.   Banks did not appear.

29. Marcone appeared with counsel and explained the above.

30.  Another hearing was scheduled and once again Banks claimed his physical condition prevented his appearance.   He did not disclose that he had pilfered the escrow account.

31. Upon Motion, Bryn Mawr Bank notified the Court that the escrow fund had been withdrawn and there were no funds available pursuant to the Agreement of Sale.

32. Banks was directed by the Court to deposit the escrow fund with the Court and he has ignored that Order once again asserting health reasons for the refusal to comply.

33.  A hearing was scheduled to address the Show Cause on December 1, 2008 after a telephone conference call the week before.   Marcone had Samuel Stretton Esquire, enter his appearance at the cost of $1,200.  Marcone also spent the weekend following the Thanksgiving Holiday preparing for the Hearing and also upon instructions by the Court spent most of Friday reviewing the file looking for any documents not surrendered to Mr. Yanoff.   Only a few innocuous documents were found and immediately surrendered by hand delivering copies to Mr.

Yanoff's office.

34. In the interim, upon a specious accusation by Mr. Banks that Marcone had made no effort to contact him during the representation, Marcone delivered to the Court proof of at least 128 telephone calls to and from Banks between January and July, 2008. Marcone has also located proof of fax communications to Banks during that period. Banks wrote to Marcone attempting to demean him but in that letter admitted to at least six (6) visits to Marcone's Office for "lunch".

35. On the day for the Show Cause hearing, Banks once again claimed he was hospitalized that morning with an undisclosed ailment. On the same date, Mr. Yanoff made an oral motion to withdraw as counsel and Marcone seeks complete disclosure of his reasons for making the request. This was the fourth failure by Banks to appear since the hearing held on July 10, 2008.

36. The Court has thusfar refused to dismiss the Show Cause entered upon Marcone even though over 120 days have transpired with no specific allegations being made by Banks. The Court is holding this matter open and causing Marcone an extreme loss of time and money in attempting to defend against this unspecified contempt.

37. There has been absolutely no credible evidence that Marcone was the cause of the failure to respond and it has been evidenced that the failure to cooperate was a designed, deceptive effort to delay the trial for purposes of hiding the actions of Banks in purloining the escrow funds.

38. Under the present state of the record, it was the Court and not Banks who claimed Marcone was in Contempt and further, the Court has absolutely no evidence either presented nor credible that the delays in this case were caused by Marcone who clearly was faced with a client who was deceptively attempting to cover up a criminal act and who lied to Marcone as well as the Court in an effort to protect himself. Further, it appears those lies and deceptions continue on this date and require the Order to Show Cause must be Vacated and Dismissed.

39. Marcone has been accused without any basis whatsoever and now proof has been presented that Banks had purposefully, intentionally and deceitfully caused the failure of discovery and the proceedings have been delayed once again by his purposeful, intentional and

deceitful acts.  Right and justice require the Order to Show Cause be Dismissed and/or Vacated.

      40.  The Court has indicated that it is the intention of the Court to prolong this by holding another hearing or hearings for the purpose of resolution however without credible testimony nor evidence, the Order to Show Cause must be abandoned.

      41. Most important is the fact that the accusation has been made directly by the Court and it is inappropriate for the person making the accusation to sit in judgment on the facts and issues.

      42.  The actions involved in the Order to Show Cause have been a major distraction in the life and practice of Marcone who has fallen far behind in his obligations to both his clients as well as the Courts and seeks relief so he may return to his normal schedule and comply with the requirements of his practice.  He has cancelled business in Florida and was forced to hire counsel to take his place at another cost of $2,500.00. He has thusfar expended $3,700 and does not wish to expend more in the defense of a false accusation which begs to be dismissed.

      43. It may not be ignored that the Show Cause is based upon a "casual remark" made by Banks asserting he did not know of his responsibilities to the Court.  He never actually accused Marcone of not informing him of his obligations.

      43. It would be naive to accept the fact that Banks coincidentally suffered injuries and illnesses on the dates he had to appear in Court to answer to his actions regarding the escrow fund and his deceptive actions evidence a complete disregard for the truth thereby requiring the Court to act appropriately in dismissing this Show Cause.  Even mail sent to him by the Court has been returned unclaimed.

      WHEREFORE, Marcone respectfully prays the Order to Show Cause be Dismissed and or Vacated forthwith and also that he be provided with any and all medical records of Banks as well as the reasons given by Mr. Yanoff seeking to withdraw as counsel.

                                  Respectfully submitted,
                                  *S/ Frank J. Marcone*

                                  _____
                                  Frank J. Marcone
                                  Respondent, Pro Se.

December 3, 2008

CERTIFICATE OF SERVICE

Frank J. Marcone, Esquire does hereby state that on December 3, 2008, he caused a true and correct copy of the above Motion to Dismiss and to provide information together with a proposed Order to be served upon the following by electronic filing:

| | |
|---|---|
| Samuel C. Stretton, Esquire<br>301 South High Street<br>West Chester, Pennsylvania 19381-3231 | Michael Yanoff, Esquire<br>1800 Pennbrook Parkway<br>Suite 200<br>Lansdale, Pennsylvania 19446 |
| Kelle A. Kilgarriff, Esquire<br>1100 E. Hector Street<br>Suite 425<br>Conshohocken, Pa 19428 | Jay Herskowitz, Esquire<br>181 Cypress Court<br>Marlton, New Jersey 08053 |
| James T. Loots, Esquire<br>236 Massachusetts Avenue, NE<br>Washington, D.C. 20002 | |

S/ Frank J. Marcone
_____
Frank J. Marcone, Esquire
Pro Se Respondent

December 3, 2008