IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN SCHUTTER | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | NO.  07-3823 |
| | : | |
| DAVID HERSKOWITZ and | : | |
| PHILIP BANKS | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE                                         February     20, 2009
UNITED STATES MAGISTRATE JUDGE

## I.        Introduction

A trial of this matter, limited to the single issue of Plaintiff Stephen Schutter's (alternatively "Schutter" or "Plaintiff") entitlement to an award of punitive damages on his breach of fiduciary duty claim against Defendant Philip Banks ("Banks") took place on December 10, 2008.   Upon consideration of the evidence presented, the arguments of counsel, and the Court's charge, the jury found in favor of Schutter, by answering affirmatively the interrogatory: "Do you find that the conduct of Mr. Banks was outrageous, such as to warrant the imposition of punitive damages?" (Doc. 228).  They then assessed those damages at $30,000.  (Doc. 228).  Presently before the Court is Schutter's "Supplemental Memorandum in Support of Damages Arising From Interest, Costs, and Attorneys Fees," filed on December 29, 2008.  (Doc. 239).  Banks was given until January 12, 2008 to file any response.  As of the date of this Order, he has not done so.  We now enter an Order resolving Plaintiff's final damage claims and award judgment in his favor.

II.    **Discussion**

In his supplemental memorandum, Plaintiff seeks two forms of additional relief – interest upon the $100,000 escrow amount and reimbursement for attorneys fees and costs. We address each assertion in turn.

A.    **Prejudgment Interest**

Plaintiff asserts that he is entitled to interest upon the $100,000 escrow amount as "an element of Plaintiff's damages." (Doc. 239 at 1). We agree. By our October 6, 2008 grant of summary judgment, we found that Banks had breached his fiduciary duty to Schutter by virtue of his improper retention and unauthorized depletion of the escrow funds at the heart of this dispute. (Doc. 165). We thus found that Schutter was entitled to a return of the full $100,000. We left the question of interest to be dealt with after trial and upon consideration of further submissions from counsel.

In this diversity case, Pennsylvania law controls the question of how to determine interest. 41 Pa.C.S.A. § 202 provides a statutory rate of interest of 6% per annum where there exists "an obligation to pay a sum of money 'with interest' without specification of the applicable rate." We find it appropriate to apply this provision under the circumstances here.[1] Applying that interest rate against the $100,000 escrow funds at issue here, we conclude that Schutter is entitled to 6% interest

---

[1] We note that while it appears that the Bryn Mawr Trust Company account was interest-bearing, neither party has provided us with a calculation to indicate what that interest would have amounted to. We question in the context of this case whether that rate would have been the proper measure of interest in any event. We also recognize that Plaintiff has suggested two other possible provisions, Pa.R.Civ.P. 238 and 42 Pa.C.S.A. § 8371, for us to consider in determining the appropriate measure of interest. (*See* Doc. 239 at 4-5). It is the case, however, that Pa.R.Civ.P. 238 only applies to "actions for bodily injury, death or property damage." Likewise, 42 Pa.C.S.A. § 8371, otherwise known as the bad faith statute, only applies to "[a]ctions on insurance policies." We conclude, as Plaintiff seems to concede (*see* Doc. 239 at 4), that neither are applicable to the facts of this case.

2

per year from the date that Banks deposited the funds with Bryn Mawr Trust Company ("BMT").

We note that the escrow funds, in fact, were deposited into Banks's BMT escrow account in two tranches – $10,000 on December 12, 2005 and $90,000 on January 9, 2006.  (*See* Doc. 162 at 38 & 40).  As of the date of this Order, 3 years and 71 days, of interest are due upon the $10,000 deposit.  As such, $1,916.72 in interest is due upon that deposit.[2]  As of the date of this Order, 3 years and 43 days of interest are due upon the $90,000 deposit.  As such, $16,836.19 in interest is due upon that deposit.[3]  All told, we find that Schutter is owed a total of $18,752.91 in interest upon the escrow funds.

### B.    Attorneys Fees and Costs of Litigation

#### 1.    Schutter's Entitlement

Plaintiff asserts that he is further entitled to reimbursement for all fees and expenses incurred over the course of this litigation.  (*See* Doc. 239 at 11).  We note, at the outset and as a general matter, that in this diversity case, Pennsylvania law governs a party's entitlement to such reimbursement.  *See First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*, 803 F.2d 1308, 1317 (3d Cir. 1986) (citing *Alyeska Pipeline Service v. Wilderness Society*, 421 U.S. 240, 259 n. 31 (1975) and *Montgomery Ward & Co. v. Pacific Indemnity Co.*, 557 F.2d 51, 56 (3d Cir. 1977)).  Generally, Pennsylvania law permits the recovery of such fees and expenses only where there exists a clear agreement to that end between the parties, or an express statutory provision providing for such an entitlement.  *See, e.g., Corace v. Balint*, 210

---

[2] The interest rate is applied as a simple, rather than a compounding, interest rate.  *See Bohm v. Horsley Co. (In re Groggel)*, 333 B.R. 261, 299 (Bankr. W.D. Pa. 2005).  Interest upon this specific deposit accrues at a rate of $600.00 per year, and $1.644 per day.

[3] Interest upon this deposit accrues at a rate of $5400.00 per year, and $14.795 per day.

A.2d 882, 887 (Pa. 1965) (citations omitted); *see also First State Underwriters*, 803 F.2d at 1318;

*Fortney v. Tennekoon*, Civ. A. No. 95-4685, 1998 U.S. Dist. LEXIS 3926, *36 (E.D. Pa. Mar. 13,

1998).

Here, there is no agreement between the parties providing Plaintiff with a basis for the

reimbursement of litigation costs and attorneys fees.  As such, we turn to statutory authority, 42

Pa.C.S. § 2503, which provides, in pertinent part:

> § 2503.  Right of Participants to receive counsel fees
> The following participants shall be entitled to a reasonable counsel
> fee as part of the taxable costs of the matter:
> . . .
> (7) Any participant who is awarded counsel fees as a sanction against
> another participant for dilatory, obdurate or vexatious conduct during
> the pendency of a matter.
> . . .
> (9) Any participant who is awarded counsel fees because the conduct
> of another party in commencing the matter or otherwise was arbitrary,
> vexatious or in bad faith.

A "participant" is defined simply as "[l]itigants, witnesses and their counsel." 42 Pa.C.S. § 102.  We

are satisfied that § 2503 entitles Schutter, a litigant, to a "reasonable counsel fee" as a sanction

against Banks, also a litigant, if we find that Banks's conduct during the pendency of this matter was

"dilatory, obdurate or vexatious," or that his filing of the counterclaim or defense against Schutter's

claims was "arbitrary, vexatious or in bad faith."   We find, with little hesitation, that Banks's

conduct meets these standards.

Here, the record before us in this case clearly demonstrates that Banks's conduct, not only in

defending this matter, but in commencing his counterclaim, was undertaken in bad faith.  Account

statements provided by BMT revealed that at the time that Banks asserted his claim upon the escrow

fund by Count One of his counterclaim filed on November 20, 2007 (Doc. 10), where he asserted

4

that "Plaintiff has forfeited any and all claim to the fund *in the possession of Banks*" (Doc. 10 at 8, ¶ 43) (emphasis added), there were no funds in the account and it in fact had a *negative* a balance of $35.45. (Doc. 162 at 4). As we observed in granting Plaintiff summary judgment upon his breach of fiduciary duty claim, "no reasonable jury could determine that Banks possessed a good faith justification in his continued retention and eventual depletion of the escrow funds." (Doc. 165 at 11 n. 12). We conclude that Banks is subject to sanction pursuant to 42 Pa.C.S. § 2503(9).

Banks's false testimony concerning the escrow funds did not abate as the case progressed. On December 4, 2008, in open court, he asserted that the escrow funds had merely been "transferred to another bank" – namely, PNC Bank ("PNC") (N.T. 12/4/08 at 5). He offered a PNC account statement, dated Thursday, September 20, 2007, which indicated a total available balance of $101,469.21 (*see* N.T. 12/4/08 at 12) and testified that that balance contained the escrow funds at issue. That representation prompted the following exchange:

> THE COURT: All right. Are you telling me that that account then is one which does reflect even today a deposit that is at or in excess of $103,000?
>
> MR. BANKS: It was at 103. This is 101.
>
> THE COURT: Okay. Is that sum of money still there with whatever interest might have accrued?
>
> MR. BANKS: Yes sir.

(N.T. 12/4/08 at 12-13).

After Banks failed to have the funds in that account deposited with the Clerk of this Court as we had instructed him to do (*see* N.T. 12/4/08 at 13, 16), we issued an Order directly upon PNC directing them to provide the Court with any information pertaining to any accounts held in the name

of Philip Banks or Philip Banks Real Estate.  (Doc. 217).  PNC, in response, provided documents revealing that two accounts existed in the name of "Philip Banks DBA Philip Banks Real Estate", totaling a mere $6,906.82 – over $94,000 *less than* he had testified to in court.  (*See* Doc. 223 at 4).  Monthly statements subsequently provided (but not electronically filed) in response to our Order of December 3, 2008 (Doc. 217) also showed a systematic depletion of those funds.  These statements also showed that Banks's testimony regarding the PNC account containing a balance of approximately $101,000 in December 2008 was patently false.

In addition to Banks's false statements on this central point, he repeatedly failed over the course of the litigation of this matter to provide discovery, to comply with direct Orders of the Court, and to pay ordered sanctions (*see* summaries of Banks's history in Doc. 140 at 6-12; Doc. 168; Doc. 183; Doc. 234; Doc. 237).  As was set out in our memorandum opinion of July 11, 2008 where we denied Banks leave to file his amended counterclaim and precluded him from offering certain evidence at trial, Banks and former-counsel Frank J. Marcone, Esquire, had already exhibited a consistent pattern of dilatory and non-compliant behavior.  (*See, e.g.*, Doc. 140 at 6-12, 23-24).

These problems became manifest on July 10, 2008, a mere five days before trial was to begin, when Marcone filed a motion seeking to withdraw citing irreconcilable differences.  We denied the request at that time, but over Schutter's objection granted Banks a continuance so as to give him the opportunity to secure substitute counsel, noting that we would be open to Plaintiff's request for counsel fees associated with any delays.  (*See* N.T. 7/11/08 at 53).

As it turned out, however, this was to be only the first continuance of several sought by Banks on the eve of subsequent trial settings.  Trial was re-scheduled for August 27, 2008 (Doc. 144), but two weeks prior to that date we had to set a new date due to a report that Banks had

suffered a medical emergency.  (*See* Docs. 153-55, 157).  Trial was re-scheduled for October 25, 2008.  (Doc. 57).  Banks was again hospitalized, however, this time on the day before trial was scheduled to commence.  We once again postponed trial, this time until December 2, 2008.  (Doc. 193).  On the day before that new trial date, Banks once again caused himself to be hospitalized.  We again continued the trial setting, this time for December 10, 2008.  (Doc. 217).

On the morning of December 10, 2008, we were advised by Banks's counsel that once again Banks caused himself to be admitted to the hospital.  While we confirmed that he had, in fact, been so admitted, our urgent phone call to his physician was not responded to.  Given the extensive history of difficulties associated with getting this matter to trial, and noting that Banks's counsel expressly stated that he had no intention to seek another continuance (*see* N.T. 12/10/08 at 9), we proceeded with trial without Banks.  While we accept that Banks did have some issues in the Fall of 2008 which required medical attention, the record as a whole, culminating in the blatant deception practiced before us on December 4, 2008, satisfies us that Banks is subject to sanction pursuant to 42 Pa.C.S. § 2503(9) and (7), and that Schutter is entitled to relief.[4]  We turn to a consideration of the appropriate remedy.

## 2.    Appropriate Remedy

Under the combination of these circumstances, Plaintiff asserts that he is entitled to the costs

---

[4] We note one additional circumstance of record which we find telling regarding Banks's behavior during this litigation.  Given Banks's representations on the record on July 11, 2008 regarding his lack of communication with Marcone, we informed Banks that we would send directly to him a hard copy of every Order issued from that point forward.  Certain Orders, given their significance, we sent via certified mail.  The docket sheet reflects, however, that those Orders were returned as unclaimed.  (*See* Docket entry of December 2, 2008 (reflecting certified mailing of memorandum opinion dated November 6, 2008) & Doc. 242 (reflecting certified mailing of Order dated December 22, 2008)).

of defending against Banks's counterclaim and more specifically for the costs associated with these delays.  While we do find that Banks is subject to sanction for fees and costs, we do not view as proper a remedy that extends back to the commencement of his counterclaim.  We believe we have adequately dealt with the issues related to his conduct from that point through July 11, 2008, when we entered our Order precluding him from offering extensive categories of evidence in his defense of the Schutter claims and denying his motion to amend his counterclaim.

We do believe, however, that Schutter is entitled to reimbursement for the expenses and fees incurred by being forced to prepare for trial on four separate occasions.  While we granted Banks's July 11, 2008 request for a continuance to seek replacement counsel, we stressed at that time our our concern about the effect of this delay upon Schutter.  Specifically, we stated:

> THE COURT: . . . I am going to allow you [Plaintiff] to provide me, at the time of the completion of this case, with a statement of those costs that you think would be or are attendant to having to, you know, re-ramp this case . . . .  It's not my intention that . . . Mr. Schutter should have to suffer in connection with this circumstance.

(N.T. 7/11/08 at 53).

We are also mindful that the subsequent continuances granted to Banks which created the later delays would, of course, not have occurred but for the continuance sought and obtained by Banks on July 11.  Had trial commenced as scheduled on July 16, 2008, Banks's later medical issues, even assuming they were legitimate, would never have come into play.  It is only appropriate under these circumstances that Banks also bear the costs that these further delays imposed upon Schutter.

As a general matter, the party seeking the payment of counsel fees and costs has the burden of establishing the reasonableness of its request.  *Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990).  In order to meet this burden, that party must "submit evidence supporting the hours worked

and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424 (1983).  The district court is to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant or otherwise unnecessary." *Loughner v. University of Pittsburgh*, 260 F.3d 173 (3d Cir. 2001) (citing *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179 (3d Cir. 1995)).  Once this has been done, the responding party will then have the burden of challenging the reasonableness of the fee.  *Rode*, 892 F.2d at 1183.

Schutter's counsel has provided us with detailed documentation of the hours spent working on the case since the time that we granted Banks's first motion for a continuance on July 11, 2008.  (*See* Doc. 239).  Those submissions show that from August 15, 2008 through December 9, 2008, James M. Loots, counsel for Schutter, billed a total of 45.5 hours for time substantially related to trial preparation and dealing with the difficulties of scheduling.  (*See* Doc. 239-6-9).  We accept the reasonableness of the work performed by Mr. Loots as well as his $285 hourly fee.  As such, multiplying the 45.5 hours by the $285 hourly rate, we find that Schutter is entitled to $12,967.50 for the work performed by Mr. Loots.

We have also received the invoices submitted by Halberstadt Curley which after July 11, 2008 reflect only 6.7 hours of attorney time.  (Doc. 239-3 at 15).  Although at an entirely reasonable hourly rate of $165, we are unable to conclude that the work of that firm – apparently acting as local counsel – dealt with the issues associated with the trial delays.  Accordingly, they will not be assessed against Banks.

An appropriate Order follows.